T 206.623.7292  F 206.623.0594

**HB   HAGENS BERMAN**

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1918 EIGHTH AVENUE, SUITE 3300
SEATTLE, WA 98101
www.hbsslaw.com
Direct (206) 268-9320
steve@hbsslaw.com

July 24, 2015

*Via UPS Next Day Delivery to the
Clerk of the Court for Filing*

The Honorable Anthony J. Trenga
United States District Court
Eastern District of Virginia (Alexandria)

Re:   In Re: *Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices and Prods. Liab. Litig.*, Case No. 1:15-md-02627-AJT-TRJ (This Document Relates to All Cases), Application for Lead Counsel

Your Honor:

As the founder and managing partner of Hagens Berman, I appreciate the opportunity to express the reasons our firm is best able to represent the interests of the class as Lead Counsel in this action and respectfully request that appointment. Cases such as this are the life's blood of our firm and the people who work here. We enjoy what we do. Many have found that, as leaders, our energy and high standards make life easier for the parties and the court in significant and complex litigation such as this.

We believe the appropriate leadership structure should be tailored to the needs of the case with an eye toward facilitating efficient litigation and to returning the maximum benefit to the class if the plaintiffs prevail. While consensus among plaintiffs is important, agreement between firms competing for leadership positions is often reached by promising roles that result in a bloated and unwieldy structure. We avoid bulky plaintiff structures with multiple committees that tend to slow the progress of the case with redundancies and bloat the attorneys' lodestar.

While this MDL is large, prominent, and important, it does not in our experience require litigation by a large committee. The cases consist of a common set of claims against a single defendant. We therefore suggest a lean leadership made up of two co-lead counsel and liaison counsel. We leave to the Court's discretion the firms best suited to serve in each position based on the applications submitted.[1]

This structure will provide diversity and capitalize on the resources and expertise these firms have developed in litigating these and related cases, while preserving Plaintiffs' ability to litigate efficiently. We will draw on other firms who are willing to do substantive work and will ask the Court to appoint committees _if_ the need arises.

---

[1] If appointed as Lead Counsel, we suggest that the Court affirm that all firms serving in a leadership capacity, or otherwise performing work at the direction of Lead Counsel, be subject to the same agreement regarding attorney's fees set out in Section 3 below. We have discussed with Bailey & Glasser LLP working with them as liaison counsel if we are appointed Co-Lead Counsel.

SEATTLE   BOSTON   CHICAGO   COLORADO SPRINGS   LOS ANGELES   NEW YORK   PHOENIX   SAN FRANCISCO   WASHINGTON, D.C.

010503-11 793836 V1

The Honorable Anthony J. Trenga  
July 24, 2015

Page 2

### 1. Knowledge and Experience in Prosecuting Complex Litigation, Including MDLs and Class Actions

Hagens Berman's stock-in-trade is the litigation of complex class actions and MDLs on behalf of plaintiffs throughout the country. We have been co-lead counsel in the largest recoveries of record at their time in securities (*WPPSS*), antitrust (*VISA*), automobile (*Toyota*), ERISA (*Enron*), and the largest settlement ever (*Tobacco*). We believe class members would want a firm with such a record to lead this case. Our firm abides by a rule developed from years of leading complex class actions: vigorous and efficient prosecution with a lean leadership team, clear lines of responsibility, and a commitment to "live and breathe" a case. We become experts in the facts, the law, and the science of the case and marshal a counsel team committed to doing the same.

We know this area of law as well as, or better than, any other firm. We have successfully litigated class actions across a wide range of defective products. For example, our firm has served, and is currently serving, as lead counsel in some of the largest nationwide class actions on behalf of consumers based on defective and dangerous products. Like this case, causes of action include claims under the Magnuson-Moss Warranty Act, breach of express and implied warranty, and violation of the respective consumer protection laws of fifty states.[2]

We have also had significant experience with claims involving defective wood products. We served as lead counsel in a case against Louisiana-Pacific involving defective wood siding and secured a record-setting settlement. More recently, we served as lead counsel in a nationwide class action against Trex Co. based on defective wood products containing harmful mold. We achieved a settlement that returned significant value to class members – including repair and replacement for those who chose this relief – all while avoiding the company's threats of insolvency.[3]

Our leadership has achieved substantial, often unprecedented results for class members. A few examples are summarized in Exhibit A, attached hereto. The balance can be found on our website at hbsslaw.com. Recently, Judge Jesse Furman, presiding over the *In re General Motors LLC Ignition Switch Litigation* MDL, *sua sponte* appointed me to serve as co-lead counsel for economic loss cases and confirmed that appointment after receiving written applications from dozens of law firms.

Additionally, we have received numerous court acknowledgments of our class action leadership. For example, in the landmark *Toyota* MDL regarding unintended vehicle acceleration, Judge James V. Selna commented: "Class counsel has consistently demonstrated extraordinary skill and effort."[4] In appointing the firm as Interim Class Counsel in an MDL involving Stericycle, Inc. – with whom Lumber Liquidators has contracted to manage part of its air testing program – Judge Milton I. Shadur noted that our "track record" was "impressive," and

---

[2] *See, e.g., In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 10-ml-2151 (C.D. Cal.); *In re General Motors LLC Ignition Switch Litig.*, No. 14-md-2543 (S.D.N.Y.), summarized in Exhibit A.

[3] *See Ross v. Trex Co.*, No. 09-cv-00670, 2013 WL 6622919 (N.D. Cal. Dec. 16, 2013).

[4] *Toyota*, Dkt. No. 3933 at 12.

The Honorable Anthony J. Trenga  
July 24, 2015

Page 3

that the firm had "a substantial number of really outstanding big-ticket results."[5] And in selecting our firm as sole lead in an MDL regarding antitrust claims in the use of optical disk drives, Chief Judge Vaughn Walker found that: "[a] clear choice emerges. That choice is the Hagens Berman firm."[6]

### 2. Willingness and Ability to Commit to a Time-Consuming Process

We are not afraid to take cases to trial, unlike many class action firms. In lead roles, we did so in the *Attorney Generals Tobacco Litigation*, in the successful three-month trial in the *AWP* MDL, and the successful trial in the *In re Neurontin Litigation*, No. 04-cv-10981 (D. Mass.). We settle only if we position the case to a point where consumers obtain real relief.

If appointed Lead Counsel, as founder and managing partner, I will dedicate whatever time is personally necessary to successfully manage and prosecute this case. Our firm will also dedicate other senior partners and younger lawyers to the case – including at least one partner who will designate this case as a primary responsibility at all times the case requires.

### 3. Willingness to Commit the Necessary Time and Resources to Prosecute the Litigation in a Timely Manner and Commitment to Limit Fees

Our track record demonstrates that we commit the full power of our firm, with over 65 attorneys in nine offices across the country, to prosecute cases in the best interests of all plaintiffs and proposed classes. We are fortunate to have the ability to fund litigation costs over many years of litigation and trial, often alone.

If our cases settle, we ensure that real value is provided to the class. It is a defining characteristic of our firm and demanded of all our attorneys. Where feasible, we calculate each individual class member's recovery and mail them a check without the use of claim forms. This ensures that all class members participate in the settlement and avoids the low claims rate typical of many class actions. Unlike many class action firms, our priority is to maximize the return to the class – often at the expense of attorney's fees.

If appointed, we will commit to limiting attorney's fees in this case to the lesser of 17 percent of the common fund or 2.5 times the lodestar – a level below the 25-30 percent "benchmark" commonly used in this District.[7] We believe this will ultimately serve the interests of the class both by maximizing the return to the class and by incentivizing counsel to work efficiently.

---

[5] *In re Stericycle, Inc., Steri-Safe Contract Litig.*, No. 13-md-2455, Dkt. No. 56 at 5 (N.D. Ill.).

[6] *In re Optical Disk Drive Prod. Antitrust Litig.*, No. 10-md-2143, Dkt. No. 96 at 4-5 (N.D. Cal.).

[7] In calculating attorney's fees, courts in the Fourth Circuit establish "benchmark" percentages from which the court can begin its analysis, coupled with a cross-check using the lodestar method. Courts in this district have regularly approved multipliers of 3-5 times the lodestar. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 684 (D. Md. 2013) (citing *Manual for Complex Litig.*, § 14.121 at 207); *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 261 (E.D. Va. 2009); *In Re Microstrategy, Inc.*, 172 F. Supp. 2d 778, 781, 788-90 (E.D. Va. 2001) (citing cases); *Newberg on Class Actions*, § 14.6 at 550. Indeed, the legislatures of some states with whom we have worked have enacted guidelines and statutes limiting the attorney's fees available in contingent agreements with the states. Florida, for example, recently passed a statute that limits attorney's fees in contingent agreements with the Attorney General to 25% of the first $10 million, and to decreasing percentages for higher recoveries. *See* Fla. Stat. § 16.0155(5).

The Honorable Anthony J. Trenga Page 4
July 24, 2015

### 4. Willingness and Ability to Work Cooperatively With Others

In several landmark cases, Hagens Berman has enjoyed working effectively with many of our colleague firms when occupying a lead or co-lead position, including a number of firms involved in this litigation. Courts have recognized this in appointing our firm to leadership positions. For example, in *Toyota*, we managed a large executive committee and multiple other firms while closely watching costs and fees. We are currently doing the same in the litigation against General Motors, in which we are working co-operatively with two other firms as co-lead counsel and managing the participation of dozens of other law firms. Indeed, most of the cases listed in Exhibit A required us to work cooperatively with a number of other law firms – often in cases that spanned several years.

### 5. The Work Hagens Berman Has Done in Identifying, Investigating, or Prosecuting Potential Claims in the Action

Our cases against Lumber Liquidators currently name eighteen proposed class representatives from seven states.[8] We have spent real time understanding our clients' issues. We have commissioned tests on multiple flooring samples and tests of the ambient air in many plaintiffs' homes. We filed a motion in the Northern District of California to enjoin Defendant from representing to putative class members that the do-it-yourself air testing kits it is offering are a reliable method to test for formaldehyde present in a home.[9] We retained a clinical industrial hygienist, and a professor of industrial hygiene and former director of the World Health Organization. Working with these experts, we presented the reasons Lumber Liquidators' do-it-yourself testing kits do not comply with industry standards and are inherently unreliable. We detailed the danger posed by tests that are likely to under-report the amount of formaldehyde as they will lead people to forego immediate measures they should take to reduce their health risks.

Judge Tigar granted our request to take limited discovery. In cooperation with other firms, Hagens Berman deposed the Lumber Liquidators executive in charge of its home air testing program, and the representative of the company with whom Lumber Liquidators contracted to analyze the air samples. Judge Tigar heard argument in which he considered the deposition testimony, expert declarations, and several declarations from Plaintiffs and lay witnesses. Judge Tigar ultimately stayed the motions pending a decision by the JPML. The motion is now ripe for decision and we will soon note it for a hearing before the Court.

We thank the Court for its consideration of our application for Lead Counsel.

Sincerely,

HAGENS BERMAN SOBOL SHAPIRO LLP

Steve W. Berman

---

[8] Those states are California, Colorado, Florida, Massachusetts, Michigan, New Jersey, and Pennsylvania.
[9] *Washington et al. v. Lumber Liquidators*, No. 15-cv-01475 (N.D. Cal.).

## EXHIBIT A

- *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, No. 10-ml-2151 (C.D. Cal.). Judge Selna appointed me co-lead *sua sponte* and affirmed that appointment after over 50 firms applied. I had never appeared before Judge Selna. As co-lead counsel for the economic loss classes in this successful, complex MDL, I and the firm challenged a defect causing dozens of models spanning an eight-year period to undergo sudden, unintended acceleration. The resulting $1.6 billion settlement included $500 million in cash payments to class members, many of whom received checks for thousands of dollars; installation of a safety-enhancing brake override system on millions of vehicles; and a program that substantially extended warranties to millions of consumers. To our knowledge this was the largest automobile class settlement in U.S. history.

- *In re General Motors LLC Ignition Switch Litig.*, No. 14-md-2543 (S.D.N.Y.). Judge Furman appointed me co-lead *sua sponte*. I had never appeared before Judge Furman. The appointment was affirmed after the submission of applications, including applications by many prominent New York City firms. *General Motors* is a nationwide MDL involving defective ignition switches that cause cars to stall and disable features integral to safety. Causes of action include breach of warranty, violation of the Magnuson-Moss Warranty Act, and violation of the consumer protection statutes of various states.

- *In re Elec. Books Antitrust Litig.*, No. 11-md-2293 (S.D.N.Y.). We pioneered this litigation as lead counsel against Apple and the largest brick-and-mortar publishers for antitrust violations. Judge Cote appointed me lead over the applications of many firms, including those in New York. I asked, and Judge Cote agreed, to allow Cohen Milstein to be co-lead. Demonstrating our ability to work well with others, we worked in novel partnership with the Department of Justice and 33 Attorneys General, representing purchasers of e-books in 19 states and four U.S. territories. Now that the Second Circuit has affirmed the district court's ruling and rejected Apple's appeal, the class is due to receive up to $560 million to resolve price fixing allegations, on single damages of $270 million.

- *In re Louisiana-Pacific Inner-Seal Siding Litig.*, No. 95-cv-00879 (D. Or.). We served as co-lead counsel in a nationwide class involving defective siding installed on 800,000 homes that soaked up moisture, resulting in swelling and cracking. More than 130,000 claims were paid, exceeding $500 million, which at the time was the largest product liability settlement in Pacific Northwest history.

- *Ross v. Trex Co., Inc.*, No. 09-cv-00670 (N.D. Cal.). Appointed sole lead counsel in a nationwide case against a distributor and manufacturer of composite wood decking products that were found to be defective and to be susceptible to harmful mold. We ultimately achieved a class-wide settlement that included damages and specific performance valued at over $10 million, along with a commitment to cease the sale and distribution of the products alleged to be defective.

- *In re Charles Schwab Corp. Sec. Litig.*, No. 08-cv-01510 (N.D. Cal.). Appointed sole lead counsel in this class action, we alleged that Schwab falsely marketed its YieldPlus

Fund as a safe money market alternative. A $235 million class settlement was reached shortly before trial – with checks mailed directly to members in what may be a first in a securities case.

- *New England Carpenters Health & Benefit Fund v. McKesson Corp. et al.*, No. 05-cv-11148 (D. Mass.). As co-lead we pioneered these racketeering cases alleging a conspiracy to increase by four percent the list price on most brand-name drugs. After certification of a nationwide class, the case settled for $350 million and a roll-back of drug prices for all brand-name drugs. Our work led to follow-on litigation by federal, state and local governments that netted another $500 million in recoveries. The States we represented in those actions received three to nine times the settlement amounts received by States not represented by us.

- *Commonwealth of Virginia et al. v. McKesson Corp. et al.*, No. 08-cv-10483 (D. Mass.). Hagens Berman also represented the Commonwealth of Virginia against McKesson, alleging that McKesson's scheme caused Virginia's Medicaid agency to overpay pharmacies for the brand drugs dispensed to Virginia's Medicaid beneficiaries. The action resulted in a $37 million settlement, which represents the largest recovery by any state Medicaid Fraud Control Unit against McKesson. In a previous settlement, which Virginia refused to join, 29 states, including California and New York, shared a total of $151 million. Virginia's recovery represents more than nine times what other states with a comparable impact to their Medicaid programs received from the multistate settlement.

- *In re Enron Corp. Erisa Litig.*, No. 01-cv-3913 (MDL 1446) (S.D. Tex.). Hagens Berman served as co-lead counsel for Enron employees whose retirement accounts were wiped out by Enron's fraud. The litigation required the unshrouding of numerous shell companies in which Enron secured its decaying assets. We ultimately secured a settlement of more than $250 million, which at the time was recognized as the largest ERISA settlement in U.S. history.

- *In re Pharm. Indus. Avg. Wholesale Pricing Litig. (AWP)*, No. 01-cv-12257 (D. Mass.). As co-lead counsel in this MDL, and me as lead trial counsel, we proved that the nation's major pharmaceutical companies fraudulently inflated their prices. A bellwether trial resulted in a plaintiffs' verdict against three of the four defendants. The cases concluded with $338 million in settlements and consumers received three times actual damages (unprecedented, to our knowledge).

- *In re Visa/Check Master Money Antitrust Litig.*, No. 96-cv-5238 (E.D.N.Y.). Our firm, as co-lead, challenged Visa and MasterCard tying arrangements between their debit card business and their dominant credit card business. Just before trial, it settled for over $3 billion in cash and injunctive relief valued in the billions.

- *Attorneys General Tobacco Litigation*. In the historic litigation against the tobacco industry, we represented 13 states and advanced ground-breaking legal claims to secure a global settlement of all cases for $260 billion, still the largest recovery in history. Only two law firms, including Hagens Berman, went to trial in these Attorneys General actions, and I served as co-lead trial counsel.