# Exhibit 14

Dear Judge Jones:

Defendant Lumber Liquidators, Inc. responds to your questions as follows:

1(a)  Defendant has agreed to notify plaintiffs as to which witnesses will assert the Fifth Amendment by June 30th, and those depositions will be completed by July 15th. It would be helpful if the Court could set a deadline for submission of the questions plaintiffs propose to ask the witnesses so that any objections can be resolved before the depositions.

1(b)  Lumber Liquidators opposes the reopening of the CARB depositions on four grounds:

1. **Fact discovery has closed; there is no good cause to reopen.**

   The depositions of the two CARB witnesses (Lynn Baker and Virginia Odom) were taken March 15, 2016. Both were noticed pursuant to Lumber Liquidators' subpoena. Plaintiffs cross-served their deposition subpoena only after Lumber Liquidators initiated.

   During class counsel's examination, CARB's attorney (Stacey Roberts of the California Attorney General's office) instructed Mr. Baker and Ms. Odom not to answer seven specific questions (total) on grounds of the official information/attorney-client privileges. (*See* Exhibit A.) At the close, class counsel concluded his examination by stating categorically, "no further questions." (Baker Depo., 163:2-7; Odom Depo., 40:13-15.) He did not reserve the right to reopen, nor did he adjourn to seek a court order challenging the Attorney General's instructions.

   A week later, on March 21, 2016, Lumber Liquidators and CARB settled the CARB administrative investigation, through a public settlement agreement that was posted on CARB's website. (*See* http://www.arb.ca.gov/newsrel/newsrelease.php?id=799.) Yet, class counsel never mentioned the need to reopen given that the CARB "investigation is now concluded." Fact discovery subsequently closed March 25, 2016.

   In the two months since the CARB settlement was made public, plaintiffs never mentioned needing to reopen those depositions. Their first request came on Friday afternoon, June 3. No good cause exists to reopen these depositions because plaintiffs were aware of the situation before the close of discovery, and chose not to act. *See e.g., In re C.R.B. Bard, Inc. Pelvic Repair Sys. Prod. Liability Litig.,* Civil Action Nos. 2:10-cv-01224, 2:11-cv-00012, 2:11-cv-00114; 2-11-cv-00195, 2013 WL 1857195, at *3 (S.D.W.VA May 2, 2013). To allow these additional depositions of CARB would unfairly prejudice Lumber Liquidators because Defendant relied on the record as developed for its defense expert

positions. Plaintiffs' experts and Defendant's experts have all been deposed, and new evidence could impact those opinions.

2. **These matters are privileged, hence, any reopening would be futile.**

Plaintiffs' stated reason for reopening these depositions is that because the CARB administrative case has ended, the privileges asserted by the Attorney General —"official information," governmental investigation, and attorney-client— have lapsed. This is incorrect. As we will demonstrate, the matters about which Plaintiffs seek further inquiry from CARB concern its investigative files and deliberations. These are protected from disclosure by statute, and as the California Supreme Court has held, that protection remains even after the agency's investigation has closed.

In addition, based on June 6th discussions Will Stern had with Diane Kiyota, CARB's counsel, CARB is opposed to reopening these depositions and will object.

**"Official information" privilege, generally.** This issue of privilege is governed by California law. Fed. Rule Evid. 501, 502. Under California law, there is a statutory privilege for "official information." See Cal. Evid. Code § 1040. Section 1040 provides:

> (a) As used in this section, "official information" means information acquired in confidence by a public employee in the course of his or her duty and not open, or officially disclosed, to the public prior to the time the claim of privilege is made.
>
> (b) A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing official information, if the privilege is claimed by a person authorized by the public entity to do so and:
>
>> (1) Disclosure is forbidden by an act of the Congress of the United States or a statute of this state; or
>>
>> (2) Disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice; but no privilege may be claimed under this paragraph if any person authorized to do so has consented that the information be disclosed in the proceeding. In determining whether disclosure of the information is against the public interest, the interest of the public entity as a party in the outcome of the proceeding may not be considered.

The California courts sometimes refer to this privilege as the "deliberative process" privilege and as being part of Cal. Gov't. Code § 6255(a), California's Public Records Act ("CPRA"). Section 6255(a) states in relevant part, "The agency shall justify withholding any record by demonstrating that the record in question is exempt under express provisions of this chapter or that on the facts of the particular case the public interest served by not disclosing the record clearly outweighs the public interest served by disclosure of the record." *Times Mirror Co. v. Superior Court*, 53 Cal. 3d 1325, 1336 (Cal. 1991) (stating that the deliberative process privilege is subsumed under the public interest exception of § 6255).

"Under the deliberative process privilege, senior officials of all three branches of government enjoy a qualified, limited privilege not to disclose or be examined concerning not only the mental processes by which a given decision was reached, but the substance of conversations, discussions, debates, deliberations and like materials reflecting advice, opinions and recommendations by which government policy is processed and formulated." *Citizens for Open Gov't v. City of Lodi*, 205 Cal. App. 4th 296, 305 (Cal. Ct. App. 2012) (internal quotations omitted).

**Specific Exemption For Agency Investigative Files.** In this case, and specifically with respect to the information Plaintiffs seek, there is a statutory exemption against this disclosure.

Section 6254(f) provides in pertinent part that the CPRA "does not require the disclosure of any of ... [r]ecords of complaints to, or investigations conducted by ... or any investigatory ... files compiled by any other state ... agency." In *Williams*, the Supreme Court held that the statory term "files" means exactly that, namely, that "[t]his statutory language protects materials that, while not on their face exempt from disclosure, nevertheless become exempt through inclusion in an investigatory file." 5 Cal. 4th at 354. As the *Williams* court put it, "otherwise nonexempt materials can become exempt [from disclosure] through inclusion in an investigatory file." *Id.*

**The privilege against disclosure of "investigatory files" continues even after the investigation is closed.** *Williams* also holds that "the exemption for law enforcement investigatory files does not end when the investigation ends. While there may be reasons of policy that would support a time limitation on the exemption for investigatory files, such a limitation is virtually impossible to reconcile with the language and history of subdivision (f)." *Id.* In this regard, the CPRA is very different than the federal Freedom of Information Act ("FOIA"), in which some courts have held that the privilege ends once the investigation is over. *See e.g. Bristol–Myers Company v. F.T.C.*, 424 F.2d 935, 939 (D.C.Cir. 1970). California's Supreme Court expressly declined to follow the federal approach. Instead, as the *Williams* court held:

> For these reasons, we shall enforce [Cal. Gov't. Code section 6254] subdivision (f) according to its terms by holding the exemption for investigatory files does not terminate with the conclusion of the investigation. Once an investigation, as defined in *Uribe* (*supra*, 19 Cal.App.3d at pp. 212–213, 96 Cal.Rptr. 493), has come into being because there is a concrete and definite prospect of enforcement proceedings at that time, materials that relate to the investigation and, thus, properly belong in the file, remain exempt subject to the terms of the statute.

5 Cal. 4th at pp. 361-62; accord, *State Office of Inspector General v. Superior Court*, 189 Cal. App. 4th 695, 709 (Cal. Ct. App. 2010)(holding that report of the Department of Corrections and Rehabilitation and the Office of the Inspector General into the parole supervision of a parolee was protected from disclosure as an "investigative file.")

**The privilege, as applied to our facts.** The questions that drew instructions from the Attorney General concern the agency's investigation into Lumber Liquidators, specifically, whether its products were CARB-compliant and the agency's conclusions and deliberative processes regarding that investigation. (*See* Ex. A.) There is no question that at the time these materials were generated, there was a "concrete and definite prospect of enforcement proceedings"; indeed, that proceeding was initiated in October 2013. The matters for which Plaintiffs seek disclosure are all within CARB's "investigatory files." As such, they are privileged, and under *Williams* that privilege endures even though the investigative file has been concluded by settlement.

**Conclusion:** Even if this request was timely and good cause was shown, reopening the CARB depositions would be futile. It would merely draw further instructions not to answer, consistent with the authority of *Williams*.

3. **The bulk of the information Plaintiffs seek postdates the relevancy cutoff date.** Lumber Liquidates has already produced the communications to and from CARB that predate the July 2015 cutoff for relevancy. What Plaintiffs seek are materials post-dating that cutoff, which this Court has already determined are not subject to discovery.

4. **Any reopening should be limited to the seven questions.** If this Court is nevertheless inclined to allow the reopening of these depositions, the examination should be limited to the seven questions that drew the Attorney General's instruction. The Court should not allow a wholesale retaking of these depositions. For the Court's convenience, attached as Exhibit A to this response is a list of the seven specific questions that drew instructions not to answer.

## Lynn Baker deposition/instructions

1. **Page: 136:8-25:**

MR. BROWN: So assuming for a moment that the e-mail [Ex. 28] is meant to say MDF rather than HDF, can you answer me whether this is the problem you identified earlier with fake certificates coming out of suppliers?

MS. ROBERTS: I am going to object, to the extent that could be privileged and confidential. As we have stated numerous times, ARB cannot comment on active investigations. This really is assuming and you're having
also the question, you're asking completely different, MDA should be in the place of HDA – HDF – excuse me, HDF – MDF in place of HDF.

MR. BROWN: That's not what I'm asking. The HDF we are assuming is a typo, because this is the attached certificate.

MS. ROBERTS: My objections stand and I am instructing him not to answer.

2. **Page: 149:10-17:**

MR. BROWN: : Without asking whether you – whether – well let me just ask the question. Has CARB been made aware that testing has shown various noncompliant materials of composite laminate materials from Lumber Liquidators?

MS. ROBERTS: Objection. Privileged and confidential and instruct him not to answer anything regarding an active investigation.

3. **Page: 151:5-15**

MR. BROWN: The scenario, you have a single product. There is deconstructive testing done on that product and the results come back above .11. The response is then to retest the product using finished product testing that has no exposed parts of the core, the sides are sealed with paraffin wax and only the laminate itself is exposed, and when the results come back below .11, is it legitimate to, therefore, declare that it likely passes CARB limits?

MS. ROBERTS: Same objections

## Virginia Odom deposition/instructions

1. **Page: 24:5-17**

MR. BROWN: Has ARB been informed of a refusal – of a particular manufacturer's refusal to sign a supplier manual and vendor agreements?

MS. ROBERTS: I am going to object on the grounds that ARB cannot comment on any active investigations, for the same reasons I have already repeated: It's confidential and also would violate a number of privileges.

sf-3661192

MR. BROWN: So, okay. I am just getting it on the record. Are you instructing her not to answer?

MS. ROBERTS: I am instructing her not to answer on those grounds.

2. **Page: 25:11-18**
MR. BROWN Q: Ms. Odom, has it been – has Lumber Liquidators represented to ARB that all suppliers must sign manual -- supplier manual and vendor agreements?

MS. ROBERTS: Objection, privileged and confidential.

MR. BROWN: And instruction not to answer?

MS. ROBERTS: Yes.

3. **Page: 34:14-23**
MR. BROWN Q: My question is: In general, is this a fact, is this the type of fact that where a core board was found to exceed CARB limits, is this a fact that you would expect to be relevant in a CARB investigation?
A: Yes.
Q Now, the question -- now the question is have you been made aware of this fact?

MS. ROBERTS: Objection, the question is confidential.

4. **Page: 39:2-9**
MR. BROWN Q: Along the same lines, is the level of whether documentation is real -- I am sorry -- -- whether CARB compliance certificates are real, does that go to reasonably prudent – whether Lumber Liquidators has taken prudent precautions?

MS. ROBERTS: Exceeds the scope of the matters, and also same objections. Ms. Odom will not respond.

sf-3661192