**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | | |
|---|---|---|
| IN RE: LUMBER LIQUIDATORS | ) | |
| CHINESE-MANUFACTURED FLOORING | ) | |
| PRODUCTS MARKETING, SALES | ) | **MDL No.: 1:15-md-02627-AJT** |
| PRACTICES AND PRODUCTS LIABILITY | ) | |
| LITIGATION | ) | |
| _____ | ) | |

**THIS DOCUMENT RELATES TO ALL CASES**
_____

**DEFENDANT LUMBER LIQUIDATORS, INC.'S MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT
ON PLAINTIFFS' FIRST AMENDED REPRESENTATIVE COMPLAINT**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................... 1

PROCEDURAL HISTORY ...................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS ......................................... 3

    I.      Background ................................................................................... 3

    II.    Facts Pertaining to the Named Plaintiffs ..................................... 4

          A.      The Washingtons (California) ................................... 4

          B.      The Ronquillos (California) ...................................... 6

          C.      Mr. Balero (California) ............................................. 6

          D.      The Brandts (Florida) ............................................... 7

          E.      The Cloudens (New York) ........................................ 9

          F.      The Parnellas (Texas) ............................................. 10

          G.      The Burkes (Illinois) .............................................. 10

APPLICABLE STANDARD .................................................................................. 11

ARGUMENT ......................................................................................................... 12

    I.      There is no genuine dispute that Lumber Liquidators did not violate the ATCM, such that all claims (Counts I-XII) fail as a matter of law. .................... 12

    II.    Plaintiffs do not have Article III standing to pursue most of their claims. .......... 14

    III.   Lumber Liquidators is entitled to summary judgment on the California consumer-protection claims (Counts II-IV). ......................................... 14

          A.      Any presumption of reliance based on allegedly material misrepresentations is rebuttable on summary judgment. ......................... 15

          B.      Any presumption of reliance is rebutted here. ........................................ 17

    IV.   Lumber Liquidators is entitled to summary judgment on the other states' consumer-protection claims (Counts V-VIII). .................................... 18

V.    Lumber Liquidators is entitled to summary judgment on the fraudulent-
      concealment claims (Count I). ............................................................. 19

      A.    The alleged nondisclosure was not material as to any Plaintiff, and
            CARB compliance could not be material to any consumer outside
            of California. ..................................................................................... 20

      B.    Lumber Liquidators was under no special duty to the non-
            California Plaintiffs to disclose whether its laminate flooring
            complied with CARB........................................................................... 22

      C.    Plaintiffs neither relied on nor were damaged by the alleged
            nondisclosure. ..................................................................................... 23

VI.   Lumber Liquidators is entitled to summary judgment on the remaining
      negligent-misrepresentation claim (Count XI). ..................................... 24

VII.  Lumber Liquidators is entitled to summary judgment on the implied-
      warranty and Magnuson-Moss claims (Counts IX and X). ................... 24

      A.    Plaintiffs' implied-warranty claims fail for want of evidence of any
            breach. ................................................................................................ 24

      B.    Plaintiffs' Magnuson-Moss claims fail under the text of the federal
            statute and because the underlying warranty claims are
            unsupportable. .................................................................................... 25

VIII. Lumber Liquidators is entitled to summary judgment on the declaratory-
      relief claim (Count XII). ....................................................................... 28

CONCLUSION......................................................................................................... 30

CERTIFICATE OF SERVICE

## INTRODUCTION

This is a media-generated and lawyer-driven case.  The theory on which all of Plaintiffs' claims turn is that Defendant Lumber Liquidators, Inc. (Lumber Liquidators) deceived them by misrepresenting that the Chinese-made laminate flooring it sold was compliant with the formaldehyde standards issued by the California Air Resources Board (CARB) in the Airborne Toxic Control Measures regulations (ATCM).  As an initial matter, Plaintiffs cannot show that this statement was deceptive, for only CARB can test for and declare violations of the ATCM.

In any event, deception requires reliance, and no Plaintiff actually relied on any representation of CARB compliance when deciding to purchase laminate flooring from Lumber Liquidators.  Prior to their purchases, no Plaintiff saw the label at the heart of this case, which reads "CARB [number] CALIFORNIA 93120 Phase 2 Compliant for Formaldehyde."  And even once he or she did see the label, no Plaintiff fully understood it.  That is not surprising: no state besides California requires such labeling or compliance with CARB standards.  Indeed, no Plaintiff was familiar with CARB's regulation of laminate flooring before viewing an inflammatory and, in many respects, inaccurate television report—or, in one instance, before seeing a lawyer's advertisement—many months or even many years after their purchases.  In short, the evidence shows that no Plaintiff relied on the CARB-compliance label.  A person cannot be deceived or injured by something that he or she does not see or understand.

Plaintiffs' admissions in their sworn deposition testimony do more than demonstrate an absence of genuine disputes of material facts: they conclusively establish that Plaintiffs lack *any* evidence to prove certain elements of their claims.  On the undisputed record, and for the reasons below, Lumber Liquidators is entitled to summary judgment on each and every claim.

## PROCEDURAL HISTORY

On June 12, 2015, the U.S. Judicial Panel on Multidistrict Litigation transferred this case

and numerous others to this Court for consolidated pretrial proceedings.  Transfer Order (Dkt. 1).

On September 18, 2015, Plaintiffs filed their First Amended Representative Class Action

Complaint (the Complaint).  Compl. (Dkt. 562).  This Complaint covers the claims of seven

named Plaintiffs cherry-picked by their counsel.  *See* Pretrial Order No. 1, ¶ 14 (Dkt. 10).

The named Plaintiffs seek to represent classes drawn from five states: California, Florida,

Illinois, New York, and Texas.  The Complaint asserts the following 12 causes of action under

various state statutory and common-law causes of action, as well as one federal claim:

| Count | Claim | Claimants |
|---|---|---|
| I | Fraudulent concealment | All plaintiffs, all classes |
| II | Violation of the California Unlawful, Unfair, or Fraudulent Business Acts and Practices Law (the "UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.* | Washingtons, Ronquillos, Balero, California classes |
| III | Violation of the California False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.* | Washingtons, Ronquillos, Balero, California classes |
| IV | Violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.* | Washingtons, Ronquillos, Balero, California classes |
| V | Violation of the Florida Deceptive and Unfair Trade Practices Act ("DUTPA"), Fla. Stat. § 501.201 *et seq.* | Brandts, Florida class |
| VI | Violation of N.Y. Gen. Bus. Law § 349 *et seq.* | Cloudens, New York class |
| VII | Violation of the Texas Deceptive Trade Practices Act ("DTPA"), Tex. Bus. & Com. Code § 17.50 *et seq.* | Parnellas, Texas class |
| VIII | Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act ("CFDBPA"), 815 Ill. Comp. Stat. § 505/1 *et seq.* | Burkes, Illinois class |
| IX | Breach of implied warranty | All plaintiffs, all classes |
| X | Violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq.* | All plaintiffs, all classes |
| XI | Negligent misrepresentation | All plaintiffs, all classes |
| XII | Declaratory relief | All plaintiffs, all classes |

Compl. ¶¶ 156-268.  The crux of Plaintiffs' claims is that Lumber Liquidators "misrepresents to

consumers on its website, product packaging, and warranties that its composite laminate flooring

products meet the CARB standards for formaldehyde emissions."  *Id.* ¶ 44.

On December 11, 2015, the Court granted Lumber Liquidators' Motion to Dismiss with

respect to the negligent-misrepresentation claims (Count XI) of all Plaintiffs besides the Brandts

(Florida) on the basis of the economic-loss doctrine.  Pretrial Order No. 8 (Dkt. 722) at 26.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### I.    Background

1.    Lumber Liquidators is a flooring retailer committed to providing its customers high-quality flooring through environmentally conscientious practices.  About Us, http://www.lumberliquidators.com/ll/flooring/about-us?WT.ad=GLOBAL_FOOTER_AboutUs (last visited July 28, 2016).  Lumber Liquidators sold more than 100 different laminate flooring products manufactured by multiple Chinese fabricators over the seven-year period at issue here.  *See* Ex. 1 (Dep. Tr. for Lumber Liquidators Rule 30(b)(6) witness Christopher Crowe) at Ex. 74.  Lumber Liquidators marketed and sold laminate flooring to consumers in the Plaintiffs' states of California, Florida, Illinois, New York, and Texas, and in others.  *See* Compl. ¶¶ 1, 7.

2.    Laminate flooring is made with a medium-density fiberboard (MDF) core.  *See id.* ¶¶ 1-2.  This core is fabricated by combining wood fiber with a glue or resin binder.  *See id.* ¶ 2. Attached to the core is a laminate layer with a photorealistic image of hardwood.  *See id.*

3.    In 2007, CARB issued the ATCM, Cal. Code Regs. tit. 17, § 93120 *et seq.*, which took effect in 2009.  The ATCM regulates certain formaldehyde emissions, including from MDF cores in laminate flooring.  It does not apply to products marketed outside of California.  *Id.* § 93120(d).  No other state or federal agency regulates formaldehyde in laminate flooring or MDF cores.  CARB, Frequently Asked Questions (Feb. 2016), http://www.arb.ca.gov/toxics/ compwood/implementation/faq.htm (¶ 88).  Only CARB can determine ATCM compliance.  *Id.* (¶ 31); Ex. 2 (Dep. Tr. for CARB scientist Lynton Baker) at 51:14-52:21, 101:19-102:7.

4.    By letters dated October 8, 2013; May 7, 2015; and July 2, 2015, CARB notified Lumber Liquidators that it had tested certain products and further inquired about nine.  *See* Ex. 3 (Settlement Agreement and Release between CARB and Defendant) 3 (¶ 15).   There is no

evidence that CARB tested, let alone found an ATCM violation for, the flooring of Mr. Balero, the Brandts, the Burkes, the Parnellas, and the Washingtons.  *See id.*

5.      In March 2015, the television "news magazine" *60 Minutes*, About Us, http://www.cbsnews.com/60-minutes/about-us/ (last visited July 28, 2016), accused Lumber Liquidators of selling Chinese-made laminate flooring with formaldehyde levels exceeding CARB standards.  *See* Compl. ¶¶ 10-12.  This accusation was based on "deconstructive testing," which involves "separating or cutting the finished good into component parts so that pieces of the underlying panel may be accessed in order to remove the coating or laminate."  Ex. 4 (CARB "Standard Operating Procedure for Finished Good Test Specimen Preparation Prior to Analysis of Formaldehyde Emissions from Composite Wood Products") at 1.

6.      CARB first published a deconstructive-testing protocol in September 2013.  *Id.* When CARB conducts such testing, it applies an "uncertainty factor" to which the public is not privy.  Ex. 2 at 79:4-20.  Anyone other than CARB attempting to conduct such testing cannot apply this factor and cannot produce reliable or legitimate results.  *See id.* at 52:13-20; *see also* Lumber Liquidators Inc.'s Memorandum in Support of Motion to Exclude Expert Reports and Testimony of [Certain Witnesses] as Related to Deconstructive Testing (filed concurrently with this Memorandum).  Thus, CARB has never required retailers to perform deconstructive testing and does not base enforcement action on deconstructive testing commissioned by third parties.

## II.     Facts Pertaining to the Named Plaintiffs

### A.      The Washingtons (California)

7.      Plaintiffs Lila and Laura Washington's claims arise from Lila's purchase of St. James Brazilian Koa laminate flooring in October 2014.  Ex. 5 (Fact Sheet for Pls. Lila & Laura Washington) at 1 (Q10, Q11).

8.      Before her purchase, Lila did not see or hear any statements in advertising, on the

Lumber Liquidators website, in the Lumber Liquidators store, on Lumber Liquidators packaging, or otherwise stating that the flooring was CARB compliant. Ex. 6 (Dep. Tr. for Pl. Lila Washington) at 39:2-5, 41:12-42:6. Nor did she see or hear any statements about formaldehyde in Lumber Liquidators flooring. *Id.* at 42:16-19. Lila did not see the labels on the flooring boxes until after they were delivered. *Id.* at 43:13-17. She has never read the labels in detail and still does not know what they mean. *Id.* at 43:24-44:3, 52:23-53:18. Lila first heard about CARB on *60 Minutes*, six months after her purchase, but still does not know what CARB is. *Id.* at 42:20-43:1. CARB compliance was not one of the factors that was important to her in purchasing the flooring. *Id.* at 44:16-22. Indeed, Lila does not try to avoid products that are not compliant with CARB standards. *Id.* at 55:23-56:1. She has never heard of the ATCM. *Id.* at 58:22-25.

9.      Lila's daughter, Laura, did not contribute financially or personally spend any money on Lila's flooring. Ex. 6 at 33:6-8; Ex. 7 (Dep. Tr. for Pl. Laura Washington) at 28:23-25, 28:2-4, 136:11-16. They do not have a joint checking account. Ex. 7 at 28:5-7. Lila decided which flooring to purchase and told Laura about her decision afterward; Laura had no role in making the purchasing decision. Ex. 6 at 49:6-11; Ex. 7 at 34:3-8, 136:18-20.

10.     Pre-purchase, Laura neither saw nor heard any statements about formaldehyde in Lumber Liquidators' flooring or about whether it complied with CARB standards. Ex. 7 at 29:5-10, 32:5-12. She first saw the CARB label after the purchase. *Id.*at 30:11-20, 33:2-7. Laura first heard about the connection between Lumber Liquidators and formaldehyde on *60 Minutes*. *Id.* at 53:3-6. She does not know anything about CARB other than what she learned from her lawyers and has never heard of the ATCM. *Id.* at 38:5-21, 44:7-10. She does not check whether products are CARB compliant before buying them. *Id.*at 46:8-11.

11.     Like all Plaintiffs, Lila's invoice included a warranty disclaimer. Ex. 6 at Ex. 130.

5

12.     Lila and Laura agree that the flooring functioned as a useable floor.  *Id.* at 85:12-21; Ex. 7 at 103:24-104:15.

**B.     The Ronquillos (California)**

13.     Plaintiffs Maria and Romualdo Ronquillo's claims arise from their purchase of Dream Home St. James Golden Acacia 12mm laminate flooring in August 2014.  Ex. 8 (Fact Sheet for Pls. Maria & Romualdo Ronquillo) at 1 (Q10, Q11).

14.     Maria made the decision to purchase the flooring.  Ex. 9 (Dep. Tr. for Pl. Maria Ronquillo) at 54:13-56:12.  She did not see or hear any statement about formaldehyde or whether it complied with CARB before her purchase.  *Id.* at 23:18-24:15.  She made her decision based on quality, choice, and price.  *Id.* at 25:22-26:3.  She did not read the box labels until after she saw *60 Minutes*.  *Id.* at 96:18-97:9, 100:16-19.  They still do not mean anything to her, and she has never heard of the ATCM.  *Id.* at 98:7-99:23, 110:16-18.  She does not consciously avoid CARB-noncompliant products and does not know what CARB regulates.  *Id.* at 109:9-110:15.

15.     Pre-purchase, Romualdo did not see or hear any statement about CARB compliance, compliance with California toxic-chemical or formaldehyde regulations, or formaldehyde in Lumber Liquidators flooring.  Ex. 10 (Dep. Tr. for Pl. Romualdo Ronquillo) at 12:14-13:13.  He saw the box label only after the purchase but did not read it.  *Id.* at 13:14-14:23.  He first learned that formaldehyde might be in his flooring by watching *60 Minutes* post-purchase.  *Id.* at 12:14-14:23.  He still does not know what CARB is.  *Id.* at 12:14-17, 15:6-11.

16.     The Ronquillos' flooring continues to function as a floor.  Ex. 9 at 168:13-19.

**C.     Mr. Balero (California)**

17.     Plaintiff Joseph Balero's claims arise from his purchase of Dream Home Nirvana French Oak laminate flooring in March 2013.  Ex. 11 (Fact Sheet for Pl. Joseph Balero) at 1 (Q10, Q11).

18.     Before buying his flooring, Balero did not see or hear any statements in advertising, on the Lumber Liquidators website, or otherwise about CARB or stating that the flooring was compliant with CARB standards or formaldehyde regulations.  Ex. 12 (Dep. Tr. for Pl. Joseph Balero) at 18:10-22, 21:13-22:1.  Balero did not see CARB-compliance labels on the flooring boxes until after he bought them.  *Id.* at 18:23-19:23, 44:8-12.  Balero did not know about CARB before his purchase, and CARB compliance was not a consideration for him.  *Id.* at 14:7-24, 57:8-15.  He first heard of CARB in August or September 2014, more than a year post-purchase, when he looked into a lawyer's advertisement.  *Id.* at 47:16-48:18.  He has never checked whether products are CARB compliant before purchasing them.  *Id.* at 56:5-9.  He has never heard of the ATCM.  *Id.* at 62:5-8.

19.     The allegedly elevated levels of formaldehyde did not prevent Balero's use of the flooring.  *Id.* at 118:4-8.

**D.     The Brandts (Florida)**

20.     Plaintiffs Kristin and Ryan Brandt's claims arise from their purchase of St. James Burnet Russet 12 mm laminate flooring in August 2014.  Ex. 13 (Fact Sheet for Pls. Kristin & Ryan Brandt) at 1 (Q10, Q11).

21.     Kristin did not see the box label pre-purchase and did not research the flooring's CARB compliance.  Ex. 14 (Dep. Tr. for Pl. Kristin Brandt) at 75:7-9, 102:1-13.  She does not recall statements that the product met or exceeded California standards.  *Id.* at 100:12-17.  Kristin did not know what CARB meant at the time of her purchase and did not hear about CARB until she watched *60 Minutes* eight months afterward.  *Id.* at 70:17-71:2, 74:8-12, 75:2-10.  She still does not know what the ATCM is.  *Id.* at 76:14-77:5.  She does not try to purchase products that comply with California standards.  *Id.* at 84:8-17.

22.     Ryan does not recall seeing anything about CARB compliance on the Lumber

Liquidators website.  Ex. 15 (Dep. Tr. for Pl. Ryan Brandt) at 50:15-19.  He does not recall any

specific Lumber Liquidators' advertisements.  *Id.* at 51:8-12.  He does not recall speaking with a

Lumber Liquidators sales associate about California safety requirements in particular.  *Id.* at

84:6-85:3.  Ryan was not familiar with CARB pre-purchase and did not learn about CARB or the

ATCM until becoming involved in litigation.  *Id.* at 43:7-44:14, 53:4-5.  He still does not know

what CARB means.  *Id.* at 10:15-19.  He was not looking for CARB-compliant flooring.  *Id.* at

44:7-14.  In fact, despite knowing that formaldehyde was in the flooring pre-purchase, *id.* at

111:1-11, he did not look into its CARB compliance, *id.* at 46:5-8, 100:2-8, 113:15-114:11.

Ryan does not avoid products that are not CARB compliant, *id.*at 45:16-18, and does not

research whether products comply with regulatory standards before buying them, *id.* at 59:18-21.

23.     On the Plaintiff Fact Sheet, Kristin swore under penalty of perjury that she

decided which flooring to purchase based on the recommendation of a sales associate as to her

family's "lifestyle"—in particular, that "this flooring . . . was durable with dogs nails [*sic*] and

children."  Ex. 13 at 2 (Q16); *id.* at 2 (Q18) ("When the sales rep recommended the laminate

flooring due to the durability, we choose [*sic*] that flooring.").  She likewise testified that, from

reviewing Lumber Liquidators' website prior to the purchase, she recalled that "they took pride

in their products, high quality standards, [and] they offered the best flooring."  *Id.* at 2 (Q23).

The fact-sheet responses made no mention of formaldehyde, safety, or state-law compliance

being seen on any website or discussed with any employee.  *See id.* at 2.

24.     Kristin contradicted these responses when deposed, stating that before purchasing,

she researched product safety and saw something on the Lumber Liquidators website that made

her "satisfied to know the floors were safe with formaldehyde levels" as to California.  Ex. 14 at

48:1-5, 108:17-109:5; 114:16-115:8.  Ryan adopted the fact-sheet responses, Ex. 15 at 24:17-

26:3, but also contradicted them, *see id.* at 46:9-15 (stating that "the gentleman at Lumber Liquidators that talked us into laminate flooring" said that "it was compliant with all state laws" and "safe"); 117:16-118:13 (stating that sales associate said that "formaldehyde is used when they are making laminate floors" and that "they fell within all of the compliance").

25.    The Brandts' flooring has functioned as a floor.  Ex. 14 at 92:17-20.

**E.    The Cloudens (New York)**

26.    Plaintiffs Sarah and Devin Clouden's claims arise from their purchase of St. James Golden Acacia laminate flooring in January 2013.  *See* Ex. 16 (Fact Sheet for Pls. Sarah & Devin Clouden) at 1 (Q10, Q11).

27.    Sarah made the purchasing decision.  Ex. 17 (Dep. Tr. for Pl. Devin Cloud) at 80:13-17.  She does not recall any website representation, advertisement, or statement by a sales associate about CARB compliance.  Ex. 18 (Dep. Tr. for Pl. Sarah Cloud) at 151:12-25, 152:12-20, 155:5-8.  She did not rely on any documents.  *Id.* at 36:18-23.  Sarah first heard about the ATCM from *60 Minutes* in March 2015 and did not previously know about CARB emissions standards for laminate flooring.  *Id.* at 79:22-81:9.  Indeed, she concedes that she did not rely on CARB compliance or any representation about CARB compliance to select flooring because she had never heard of CARB at the time.  *Id.* at 80:18-85:11, 151:12-15.  Instead, she made the decision based on the flooring's aesthetic value and durability.  *Id.* at 150:14-151:11.  She has never purchased a consumer product based on CARB compliance.  *Id.* at 81:20-82:3.

28.    Devin did not personally visit the Lumber Liquidators website before buying the laminate and did not advise his wife regarding the decision based on any advertising.  Ex. 17 at 142:19-143:16.  He saw the box label only post-purchase and did not research what it meant.  *Id.* at 82:4-83:10.  Devin concedes that he did not research or rely on CARB compliance when purchasing the flooring.  *Id.* at 128:9-12, 130:23-131:8.  In fact, he has never relied on CARB

compliance to make any purchasing decision, *id.* at 128:13-129:19, and had never heard of

CARB or California's regulation of formaldehyde until his mother watched *60 Minutes* and

contacted him more than two years after his flooring purchase, *id.* at 78:25-79:4, 160:19-161:5.

29.     The Cloudens' flooring has continued to function as a floor without any problems.
*Id.* at 121:3-13; Ex. 18 at 136:3-12, 141:10-22, 161:9-13.

### F.     The Parnellas (Texas)

30.     Plaintiffs Julie and Kevin Parnella's claims arise from their purchase of Dream

Home Royal Mahogany laminate flooring in December 2013.  Ex. 19 (Fact Sheet for Pls. Julie &

Kevin Parnella) at 1 (Q10, Q11).

31.     Kevin controlled the purchasing decision.  Ex. 20 (Dep. of Tr. of Pl. Julie

Parnella) at 28:21-29:6.  He did not see any website or advertisement stating that the product was

CARB compliant.  Ex. 21 (Dep. of Tr. of Pl. Kevin Parnella) at 82:17-84:11.  No one at Lumber

Liquidators told him that it was CARB compliant.  *Id.* at 82:17-19.  He did not rely on any

statements concerning CARB compliance pre-purchase because he had never heard of CARB.

*Id.* at 70:8-73:5.  He bought the flooring because he liked the look, price, selection, and service,

it holds up well with dogs, and he had a good experience with Lumber Liquidators.  *Id.* at 87:5-

11, 216:4-15.  Kevin first heard about CARB when he watched *60 Minutes*, 14 months after his

purchase.  *Id.* at 68:22-69:12.

32.     Julie did not read, hear, or see any information that led her to believe that Lumber

Liquidators' laminate flooring was CARB compliant.  Ex. 20 at 103:13-104:6.

33.     Kevin remains satisfied with the functioning of the flooring as a floor.  Ex. 21 at

84:19-85:7, 135:6-10, 238:13-16.

### G.     The Burkes (Illinois)

34.     Plaintiffs Tanya and Shawn Burke's claims arise from their purchase of St. James

Dream Home Chimney Rock Charcoal 12mm laminate flooring in October 2014.  Ex. 22 (Fact Sheet for Pls. Tanya & Shawn Burke) at 1 (Q10, Q11).

35.     Shawn did not see any CARB label before the purchase: indeed, he did not see the CARB label before becoming involved in this lawsuit.  Ex. 23 (Dep. Tr. for Pl. Shawn Burke) at 252:19-23, 253:24-254:9, 256:11-18.  He does not recall any marketing from the Lumber Liquidators website, the television, print advertisements, or sales associates about CARB compliance.  *Id.* at 288:17-23.  He also does not recall seeing anything about safety.  *Id.* at 217:10-13.  He admits that he did not rely on any CARB certification or emissions standard at the time of the purchase.  *Id.* at 151:7-16, 290:7-14.  Shawn was not aware that CARB regulated MDF in laminate flooring until he saw the box label after his purchase.  *Id.* at 133:9-134:9

36.     Tanya did not see a CARB-related label before purchasing, did not rely on any advertising, and is not sure whether she looked at flooring on the Lumber Liquidators website.  Ex. 24 (Dep. Tr. for Pl. Tanya Burke) at 95:5-97:13, 104:21-109:13, 176:1-10.  She does not recall buying the flooring based on CARB compliance and does not buy products based on California regulations.  *Id.* at 110:21-111:4, 192:15-22.  She did not know that CARB regulates laminate flooring before she saw *60 Minutes* six months after the purchase.  *Id.* at 111:21-112:2.

37.     The Burkes' flooring continues to function as a floor.  Ex. 23 at 178:3-8.

## APPLICABLE STANDARD

Summary judgment is appropriate where "there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Although the facts must be viewed in the light most favorable to the non-moving party, *Anderson v. Liberty Lobby*, 477 U.S. 252, 255 (1984), where a motion has been properly supported, the non-moving party bears the burden of showing that a genuine dispute exists, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

The "mere existence of *some* alleged factual dispute between the Parties will not defeat

an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphases in original); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) ("[T]here can be no genuine issue as to any *material* fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." (internal quotation marks omitted) (emphasis added)). The non-moving party must "rely on more than conclusory allegations, mere speculation, the building of one inference upon another, the mere existence of a scintilla of evidence, or the appearance of some metaphysical doubt concerning a material fact." *Lewis v. City of Va. Beach Sheriff's Office*, 409 F. Supp. 2d 696, 704 (E.D. Va. 2006) (internal quotation marks omitted).

## ARGUMENT

### I. There is no genuine dispute that Lumber Liquidators did not violate the ATCM, such that all claims (Counts I-XII) fail as a matter of law.

As the Court has made clear, all of the Complaint's 12 counts are premised on the contention that Lumber Liquidators sold Chinese-made laminate flooring that failed to comply with CARB's formaldehyde standards, as set forth in the ATCM. *See* Pretrial Order No. 8 at 7. This premise collapses under the law and the record evidence.

After this Court's ruling on Lumber Liquidators' Motion to Dismiss, CARB clarified that only CARB can (a) use deconstructive testing to enforce the ATCM and (b) ultimately determine whether any product complies with the ATCM. This clarification produces two consequences.

First, Plaintiffs have no qualifying evidence of noncompliance. Lumber Liquidators sold more than 100 different laminate flooring products manufactured by multiple Chinese fabricators over the seven-year period at issue here. *See* Ex. 1 at Ex. 74. CARB tested a limited subset of products and further inquired about nine. *See* Ex. 3 at 3 (¶ 15). There is no evidence, however,

that CARB has ever tested, let alone made any determination of noncompliance with respect to, the products purchased by a majority of the Plaintiffs—Mr. Balero, the Brandts, the Burkes, the Parnellas, and the Washingtons.  And for the product purchased by the Cloudens and the Ronquillos, CARB never declared an ATCM violation.  *See id.* at 4 (¶¶ 23-25), 5 (¶¶9, 11). These facts are undisputed and defeat all claims in this case.

Second, only CARB—not Plaintiffs, and not a jury—can declare an ATCM violation. "[W]hen regulatory statutes provide a comprehensive scheme for enforcement by an administrative agency, the courts ordinarily conclude that the [California] Legislature intended the administrative remedy to be exclusive unless the statutory language or legislative history clearly indicates an intent to create a private right of action." *Farmers Ins. Exch. v. Super. Ct.*, 40 Cal. Rptr. 3d 653, 658 (Cal. Ct. App. 2006).  This principle proscribes repackaging legal theories without a private right of action into otherwise cognizable claims (at least beyond the UCL context).  *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 324 (Cal. Ct. App. 2008).  Thus, whether the Court views this issue as involving improper attempts to transform far-flung legal theories into a private ATCM enforcement right or as involving primary jurisdiction in CARB, *see generally Farmers Ins. Exch. v. Super. Ct.*, 826 P.2d 730, 735-39 (Cal. 1992), Plaintiffs' claims are untenable.  This Court should not do something that California has deliberately and exclusively entrusted to CARB and that no court appears to have done before—administer the ATCM, a highly complex and technical state scheme.  This, too, defeats all claims.

It also bears emphasizing that the ATCM does not apply outside of California.  Cal. Code Regs. tit. 17, § 93120(d).  Accordingly, Lumber Liquidators could not have failed to comply with CARB standards in marketing products to the non-California Plaintiffs.

In short, Plaintiffs' inability to present any evidence of an ATCM violation renders their

13

claims entirely unsupportable and appropriately resolved on summary judgment. Even assuming some violation arguendo, however, all of Plaintiffs' claims fail for multiple additional reasons.

## II. Plaintiffs do not have Article III standing to pursue most of their claims.

"[T]he irreducible constitutional minimum of standing contains three elements"—injury in fact, causation, and redressability. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). For reasons discussed below, Plaintiffs—other than, arguably, the Brandts (Florida)—cannot offer evidence that Lumber Liquidators' alleged misrepresentations concerning CARB compliance *caused* them any injury. Lumber Liquidators is thus entitled to summary judgment on all claims in this case not concerning the Brandts.

In addition, Laura Washington—who, like all Plaintiffs, alleges only economic harm— lacks standing because she has no "concrete and particularized" injury. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016). Laura did not "personally" spend any money on the flooring, Ex. 7 at 28:23-25; "the financial responsibility of the purchase was all on [Lila]," *id.* at 28:2-4; *see also id.* at 136:11-16. Indeed, Laura admits that she is suing on behalf of Lila and others. *Id.* at 136:24-137:1. She thus fails the requirement that "named plaintiffs who represent a class must allege and show that they *personally* have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976) (internal quotation marks omitted) (emphasis added).

## III. Lumber Liquidators is entitled to summary judgment on the California consumer-protection claims (Counts II-IV).

Plaintiffs assert three causes of action grounded in California consumer-protection statutes: the UCL, the FAL, and the CLRA. Compl. ¶¶ 165-93. Each contains a reliance requirement. Even if a presumption of reliance arises where a claim rests on a material misrepresentation, this presumption is—consistent with the very definition of a "presumption"—

rebuttable.  All California Plaintiffs admitted that they did not rely on Lumber Liquidators' alleged misrepresentations.  Therefore, the record facts rebut any presumption of reliance and doom Plaintiffs' California consumer-protection claims.[1]

> ### A.   Any presumption of reliance based on allegedly material misrepresentations is rebuttable on summary judgment.

The UCL prohibits "unlawful, unfair or fraudulent business act[s] or practice[s] and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  This provision "establishes three varieties of unfair competition—acts or practices which are unlawful, or unfair, or fraudulent."  *Podolsky v. First Healthcare Corp.*, 58 Cal. Rptr. 2d 89, 98 (Cal. Ct. App. 1996).  The UCL further provides that, for private persons, only those who have "suffered injury in fact and . . . lost money or property as a result of [the challenged conduct]" have standing to sue.  Cal. Bus. & Prof. Code § 17204.  As this Court has observed, "the UCL imposes an 'actual reliance' requirement on private citizens prosecuting a claim under the 'unfair' and 'fraud' prongs . . . and also under the 'unlawful' prong to the extent that the substance of the unlawful conduct is a misrepresentation claim."  Pretrial Order No. 8 at 13-14 (citing *Hale v. Sharp Healthcare*, [108 Cal. Rptr. 3d 669, 678-79 (Cal. Ct. App. 2010)]; *Mazza v. Am. Honda Motors Co.*, 666 F.3d 581, 591 (9th Cir. 2012)).

The FAL prohibits making certain statements that are "untrue or misleading."  Cal. Bus. & Prof. Code § 17500.  The CLRA proscribes certain "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services."  Cal. Civ. Code § 1770(a).  Again, only consumers who have suffered injury "as a result of" allegedly unlawful conduct may bring suit.

---

[1] In the interest of efficiency, Lumber Liquidators focuses on reliance here but does not concede sufficient evidence on any other element.  The same generally holds true for other causes of action where Lumber Liquidators elects to concentrate on specific elements.  Likewise, any discussion of elements that overlap between claims pertains to all such claims.

Cal. Bus. & Prof. Code § 17535 (FAL); Cal. Civ. Code § 1780(a) (CLRA).  This language requires reliance.  *Kwikset Corp. v. Super. Ct.*, 246 P.3d 877, 887-88 (Cal. 2011).

At the motion-to-dismiss stage, this Court stated that "'a presumption . . . of reliance arises wherever there is a showing that a misrepresentation was material,'" where materiality requires that "'a reasonable man would attach importance to [the misrepresentation's] existence or nonexistence in determining his choice of action in the transaction in question.'"  Pretrial Order No. 8 at 14 (quoting *In re Tobacco II Cases*, [207 P.3d 20, 39 (Cal. 2009)]).  Even assuming that Lumber Liquidators' alleged misrepresentations were material with respect to the California Plaintiffs, any presumption of reliance is rebuttable on summary judgment.

As one federal court has explained, "Evidence of materiality only establishes a presumption of reliance, and a presumption cannot survive if the evidence establishes an actual lack of reliance."  *Lanovaz v. Twinings N. Am., Inc.*, Case No. C-12-02646-RMW, 2014 WL 46822, at *3 (N.D. Cal. Jan. 6, 2014) (citing *Tobacco II*, [207 P.3d at 39]; *Engella v. Permanente Med. Grp., Inc.*, [938 P.2d 903, 919 (Cal. 1997)]).  Other courts are in accord.  *See, e.g.*, *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, Civ. A. No. 10-10154-NMG, MDL No. 09-2067-NMG, 2014 WL 3908126, at *7 (D. Mass. Aug. 8, 2014) ("[A] defendant is entitled to summary judgment . . . if the misrepresentation was material but the defendant rebuts conclusively the presumption of reliance."); *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1027 (N.D. Cal. 2013) ("[A]t summary judgment, Plaintiffs must be able to provide *some* evidence that they saw one or more of [Defendant's] alleged misrepresentations, that they actually relied on those misrepresentations, and that they were harmed thereby." (emphasis in original)).  This principle is consistent with the very definition of a "presumption."  Black's Law Dictionary (10th ed. 2014) ("Most presumptions are rules of evidence calling for a certain result

in a given case unless the adversely affected party overcomes it with other evidence.").

In sum, any presumption of reliance applicable to material misrepresentations can be rebutted by a defendant on summary judgment.  The next section proceeds to do so.[2]

### B.      Any presumption of reliance is rebutted here.

Reliance requires that "the representation . . . played a substantial part, and so [was] a substantial factor, in influencing [the plaintiff's] decision." *Tobacco II*, 207 P.3d at 39 (internal quotation marks omitted); *Kwikset*, 246 P.3d at 888.  A person cannot rely on something—here, a website, product packaging, and alleged warranties—that he or she does not see or understand. *Cf. Rice v. Fox Broad. Co.*, 330 F.3d 1170, 1181-82 (9th Cir. 2003); *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1112 (S.D. Cal. 2011); *Dvora v. Gen. Mills, Inc.*, No. CV 11-1074-GW(PLAx), 2011 WL 1897349, at *8 (C.D. Cal. May 16, 2011).  And where a plaintiff "unequivocally admit[s] in her deposition that she did not rely on [the defendant's alleged misrepresentations] in her purchasing decisions," "her lack of reliance rebuts any presumption of reliance arising from the alleged materiality of [the statements]." *Lanovaz*, 2014 WL 46822, at *3.

---

[2] At the motion-to-dismiss stage, the Court also quoted statements that plaintiffs need not demonstrate reliance on "specific" misrepresentations.  Pretrial Order No. 8 at 14-15 (citing *Gold v. Lumber Liquidators, Inc.*, Case No. 14-cv-05373-THE, 2015 WL 7888906, at *15 (N.D. Cal. Nov. 30, 2015); *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 978 (N.D. Cal. 2015)).  The reference to "specific" misrepresentations in each of the cited cases occurs in a quotation from *Tobacco II*.  That case makes clear that this principle applies only where the challenged statements "were part of an extensive and long-term advertising campaign," like the decades-long assurances of safety and saturation advertising by the cigarette industry in years past. *Tobacco II*, 207 P.3d at 40-41 ("[W]e conclude that a plaintiff must plead and prove actual reliance to satisfy the standing requirement of section 17204 but . . . is not required to necessarily plead and prove individualized reliance on specific misrepresentations or false statements where, as here, those misrepresentations and false statements were part of an extensive and long-term advertising campaign.").  Here, Plaintiffs cannot offer evidence of any extensive and long-term advertising campaign.  *See Haskins v. Symantec Corp.*, No. 14-16141, 2016 WL 3391237, at *1 (9th Cir. June 20, 2016) (affirming dismissal where plaintiff "did not allege that she read and relied on a specific misrepresentation" and "failed to establish that the *Tobacco II* standard is applicable to her pleadings because the misrepresentations at issue here were not part of an extensive and long-term advertising campaign like . . . in *Tobacco II*").

Here, the California Plaintiffs all conceded in their depositions that Lumber Liquidators'

alleged misrepresentations regarding CARB compliance did not play a substantial part in

influencing their decisions to purchase laminate flooring.  They did not see statements

concerning CARB compliance before the sale, did not understand such statements when they did

see them, and did not even know that CARB regulated laminate flooring before watching *60

Minutes* long after their purchases.  Accordingly, the California consumer-protection claims fail.[3]

## IV.  Lumber Liquidators is entitled to summary judgment on the other states' consumer-protection claims (Counts V-VIII).

Plaintiffs' other consumer-protection claims—under the laws of Florida, Illinois, New

York, and Texas—also fail as a matter of law.  For the reasons discussed above, Lumber

Liquidators has not committed any unlawful acts or practices within the meaning of the Florida

DUTPA.  *See* Fla. Stat. § 501.204(1).  Plaintiffs' other consumer-protection claims fail on

similar grounds as well as on the elements of reliance/deception and causation.

The Texas DTPA requires actual reliance, providing a cause of action where "a false,

misleading, or deceptive act or practice" is, inter alia, "relied on by a consumer to the

consumer's detriment."  Tex. Bus. & Com. Code § 17.50(a)(1)(B).  There is no genuine dispute

that Lumber Liquidators' alleged misrepresentations regarding CARB compliance did not factor

into the decision of the Parnellas (the Texas Plaintiffs) to purchase laminate flooring.

Similarly, the Illinois CFDBPA and New York General Business Law § 349 require

personal deception.  *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 160 (Ill. 2002); *Solomon v. Bell*

---

[3]Additionally, Plaintiffs attempt to premise UCL claims on alleged violations of California's Proposition 65, Cal. Health & Safety Code § 25249.6, and "Greenwashing" Statute, Cal. Bus. & Prof. Code § 17580.5.  These claims fail because Lumber Liquidators won the Proposition 65 case that it recently faced, *see Global Cmty. Monitor v. Lumber Liquidators, Inc.*, Case No. RG 14733979, Statement of Decision (Cal. Super. Ct. June 13, 2016) (attached as Ex. 25), and because a statement regarding formaldehyde content is not an actionable representation under the Greenwashing Statute, *see Dodson v. Tempur-Sealy Int'l, Inc.*, No. 13-cv-04984-JST, 2014 WL 1493676, at *3 (N.D. Cal. Apr. 16, 2014).

*Atl. Corp.*, 777 N.Y.S.2d 50, 55 (N.Y. App. Div. 2004).  Of course, one cannot be deceived by a statement that he does not perceive or deem important before making the decision in question. Here, both the Burkes and the Cloudens concede that they did not see and/or rely on any information concerning CARB compliance in purchasing laminate flooring.

Finally, all of these statutes allow suit only where the defendant's challenged actions *caused* the plaintiffs' damages.  *See Oliveira*, 776 N.E.2d at 160; *Solomon*, 777 N.Y.S.2d at 55; Tex. Bus. & Com. Code § 17.50(a).  Because these Plaintiffs can offer no evidence of reliance or even deception, there is no causation.  At the motion-to-dismiss stage, Plaintiffs argued (under the rubric of Article III standing) that a misrepresentation can cause injury without reliance via some sort of price-distorting effect.  But the law of this District—and others—says otherwise. *See Campbell ex rel. Equity Units Holders v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 469 (E.D. Va.), *aff'd sub nom. Campbell v. Am. Int'l Grp., Inc.*, 616 F. App'x 74 (4th Cir. 2015), *cert. denied*, 136 S. Ct. 1467 (2016); *see also, e.g.*, *Estrada v. Johnson & Johnson*, No. 2:14-CV-01051-TLN-EFB, 2015 WL 1440466, at *4 (E.D. Cal. Mar. 26, 2015); *iPhone*, 6 F. Supp. 3d at 1015; *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012); *In re Activated Carbon-Based Hunting Clothing Mktg. & Sales Practices Litig.*, MDL No. 09-md-2059 (RHK/JJK), 2010 WL 3893807, at *2 (D. Minn. Sept. 29, 2010); *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 177 (D.D.C. 2003).

Consequently, all of Plaintiffs' consumer-protection claims fail as a matter of law, rendering summary judgment in favor of Lumber Liquidators appropriate.

## V.     Lumber Liquidators is entitled to summary judgment on the fraudulent-concealment claims (Count I).

Plaintiffs contend that Lumber Liquidators "concealed and suppressed material facts concerning the content of formaldehyde" in its Chinese-made laminate flooring.  Compl. ¶ 158.

Each state's fraudulent-concealment cause of action includes the same five minimum elements (with some states imposing additional requirements): (1) failure to disclose a material fact, (2) a duty to disclose, (3) intent to induce reliance and/or defraud, (4) reliance, and (5) resulting damages. *See Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 76 Cal. Rptr. 3d 325, 332 (Cal. Ct. App. 2008); *R.J. Reynolds Tobacco Co. v. Martin*, 53 So. 3d 1060, 1068 (Fla. Dist. Ct. App. 2010); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591, 593 (Ill. 1996); *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1108 (N.Y. 2011); *United Teacher Assocs. Ins. Co. v. Union Labor Life Ins. Co.*, 414 F.3d 558, 566-68 (5th Cir. 2005) (synthesizing Texas law). These claims fall short on multiple elements.

### A.  The alleged nondisclosure was not material as to any Plaintiff, and CARB compliance could not be material to any consumer outside of California.

At the threshold, the outrageous overreach of Plaintiffs' fraudulent-concealment theory merits attention. The Complaint contends that Lumber Liquidators was required to disclose "the true content of formaldehyde" in its Chinese-made laminate flooring. Compl. ¶ 159. This fact was material, Plaintiffs say, because it supposedly "directly impact[s] the safety of the flooring products." *Id.* "Whether composite flooring was manufactured with levels of formaldehyde that can pose significant health risks is a material safety concern," they conclude. *Id.*

That logic would subject all manufacturers of all products containing any amount of formaldehyde—or, indeed, any other substance that allegedly "can pose significant health risks"—to a blanket and unprecedented disclosure obligation. Indeed, according to the federal government, the list of products potentially containing formaldehyde encompasses dozens upon dozens of everyday consumer goods. *See* U.S. Health & Human Servs., Household Products Database: Formaldehyde, https://hpd.nlm.nih.gov/cgi-bin/household/search?tbl=TblChemicals &queryx=50-00-0 (last visited July 28, 2016) (listing various brands of glue, deodorant,

insulation, caulk, spackling, laundry detergent, body wash, hand soap, pet shampoo, lotion, and fertilizer—among other things—as containing formaldehyde); U.S. Consumer Prod. Safety Comm'n, An Update on Formaldehyde, https://www.cpsc.gov/PageFiles/121919/AN%20 UPDATE%20ON%20FORMALDEHYDE%20final%200113.pdf (last visited July 28, 2016) (listing wallpaper, paints, wood and natural-gas combustion, personal computers, laser printers, photocopiers, and carpets—again, among other things—as emitting or reemitting formaldehyde either alone or through chemical reactions). This cannot be the measure of materiality.

Throughout the Complaint, Plaintiffs' real quarrel is with Lumber Liquidators' failure to disclose that Chinese-made laminate flooring allegedly failed to comply with CARB standards. Plaintiffs thus improperly seek to impose the ATCM on 49 states that have elected not to regulate formaldehyde in flooring products at all.

In any event, whether laminate flooring complied with CARB standards could not have been material to any consumer (at least outside of California). Just last Term, the Supreme Court articulated a two-pronged standard for materiality:

> In tort law, . . . a "matter is material" in only two circumstances: (1) "[if] a reasonable man would attach importance to [it] in determining his choice of action in the transaction"; or (2) if the defendant knew or had reason to know that the recipient of the representation attaches importance to the specific matter "in determining his choice of action," even though a reasonable person would not.

*Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002-03 (2016) (quoting Restatement (Second) of Torts § 538); *see also Kwikset*, 246 P.3d at 892 (adopting Restatement test); *Kleinwort Benson N. Am., Inc. v. Quantum Fin. Servs., Inc.*, 673 N.E.2d 369, 375 (Ill. App. Ct. 1996) (same), *aff'd*, 692 N.E.2d 269 (Ill. 1998). The test is even stricter under Texas law, which limits materiality to the reasonable-person prong. *See Jones v. Zearfoss*, 456 S.W.3d 618, 623 (Tex. App. 2015). New York and Florida law appear the same. *See Mar-Cone Appliance Parts Co. v. Mangan*, 879 F. Supp. 2d 344, 382 (W.D.N.Y. 2012); *Nourachi v. First*

*Am. Title Ins. Co.*, 44 So. 3d 602, 616 n.6 (Fla. Dist. Ct. App. 2010); *see also Banque Franco-Hellenique de Commerce Int'l et Mar., S.A. v. Christophides*, 106 F.3d 22, 26 (2d Cir. 1997).

Plaintiffs cannot offer evidence of materiality under either prong. As the Restatement section on which the Supreme Court relied makes clear, "reasonable" in this context means "ordinary" and "normal"—that is, not "idiosyncra[tic]." Restatement (Second) of Torts § 538 cmts. d, f. The first prong thus requires that people *commonly* attach importance to the matter in question. CARB compliance never even entered Plaintiffs' minds when assessing whether to purchase laminate flooring from Lumber Liquidators. If people who ultimately chose to sue based on CARB compliance were unconcerned with CARB compliance when they shopped for flooring, then ordinary citizens (especially outside of California) do not commonly consider such information important to their purchasing decisions. As a matter of law, the non-California Plaintiffs cannot establish materiality as to CARB compliance.[4]

### B. Lumber Liquidators was under no special duty to the non-California Plaintiffs to disclose whether its laminate flooring complied with CARB.

Liability for fraudulent concealment attaches only where the defendant breaches a duty of disclosure to the plaintiff. Such a duty arises in a limited set of circumstances, none of which apply here with respect to the Florida, Illinois, New York, and Texas Plaintiffs.

In Texas, "[g]enerally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship." *Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

---

[4] Even if materiality is generally reserved for the trier of fact, "[t]he court may withdraw the case from the jury if the fact misrepresented is so obviously unimportant that the jury could not reasonably find that a reasonable man would have been influenced by it." Restatement (Second) of Torts § 538 cmt. e; *see also Engella*, 938 P.2d at 919 (adopting Restatement test and stating that plaintiffs were required to "make a showing that the misrepresentations were material . . . in order to survive this summary-judgment-like proceeding"); *cf. Direct Auto Ins. Co. v. Beltran*, 998 N.E.2d 892, 901 (Ill. App. Ct. 2013); *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214, 216-17 (N.Y. App. 1976), *aff'd*, 366 N.E.2d 1361 (N.Y. 1977); *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719, 744 (Tex. App. 2012).

"Fiduciary duties arise as a matter of law in certain formal relationships, including attorney-client, partnership, and trustee relationships," and "confidential relationships may arise when the parties have dealt with each other in such a manner for a long period of time that one party is justified in expecting the other to act in its best interest." *Id.* Florida and Illinois law follow the same framework. *See TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879-80 (Fla. Dist. Ct. App. 2000); *Miller v. William Chevrolet/GEO, Inc.*, 762 N.E.2d 1, 13-14 (Ill. App. Ct. 2001). No evidence supports the existence of a fiduciary or confidential relationship here.

In New York, "[a] duty to speak cannot arise simply because two parties may have been on opposite sides of a bargaining table when a deal was struck between them." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "[F]or under New York law the ancient rule of *caveat emptor* is still alive and well." *Id.* Instead,

> New York recognizes a duty by a party to a business transaction to speak in three situations: first, where the party has made a partial or ambiguous statement . . . ; second, when the parties stand in a fiduciary or confidential relationship with each other . . . ; and third, where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.

*Id.* (internal citations and quotation marks omitted). The Cloudens' claims fail this test. They do not allege any partial or ambiguous statements; they did not stand in a fiduciary or confidential relationship with Lumber Liquidators; and no evidence demonstrates that Lumber Liquidators knew that the Cloudens were acting on the basis of any mistaken knowledge regarding CARB compliance (and, indeed, they were not).

Thus, the Florida, Illinois, New York, and Texas Plaintiffs cannot establish the duty element of their fraudulent-concealment claims as a matter of law.

### C.   Plaintiffs neither relied on nor were damaged by the alleged nondisclosure.

For reasons already discussed, Lumber Liquidators' alleged nondisclosure neither

influenced nor caused injury to any Plaintiff other than, arguably, the Brandts.  Plaintiffs claim

only economic—not personal—harm.  Thus, where CARB compliance did not factor into the

decision to purchase laminate flooring, a Plaintiff has no evidence as to reliance or causation.

## VI.   Lumber Liquidators is entitled to summary judgment on the remaining negligent-misrepresentation claim (Count XI).

The only negligent-misrepresentation claim that survived Lumber Liquidators' Motion to

Dismiss was the Brandts'.  In Florida, negligent misrepresentation requires: (1) that the

defendant made a statement concerning a material fact that it believed to be true but that was in

fact false; (2) negligence because the defendant should have known that the statement was false;

(3) intent to induce reliance; (4) justifiable reliance; and (5) loss, injury, or damage as a result.

*In re Standard Jury Instructions in Civil Cases—Report No. 12-01*, 130 So. 3d 596, 610 (Fla.

2013).  For the reasons detailed above concerning—at a minimum—Plaintiffs' lack of evidence

regarding CARB noncompliance, the Brandts cannot establish that Lumber Liquidators made

any misrepresentation.

## VII.   Lumber Liquidators is entitled to summary judgment on the implied-warranty and Magnuson-Moss claims (Counts IX and X).

Plaintiffs contend that Lumber Liquidators breached the implied warranty of

merchantability under state law and violated the Magnuson-Moss Warranty Act, 15 U.S.C.

§ 2301 *et seq.*, which provides a federal cause of action for various breaches of warranty.  For

several reasons, Plaintiffs' evidence cannot reasonably establish these claims.

### A.   Plaintiffs' implied-warranty claims fail for want of evidence of any breach.

Plaintiffs invoke the implied warranty of merchantability under the laws of California,

Cal. Civ. Code § 1790 *et seq.*; Florida, Fla. Stat. § 672.314; Illinois, 810 Ill. Comp. Stat. 5/2-314;

New York, N.Y. U.C.C. Law § 2-314; and Texas, Tex. Bus. & Com. Code § 2.314.  Compl.

¶¶ 239-47.  Although there is variation between state law, this claim fails for the same reason as

to each.  "The core test of merchantability is fitness for the ordinary purpose for which such goods are used."  *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 289 (Cal. Ct. App. 2009) (internal quotation marks omitted).  "Such fitness is shown if the product is in safe condition and substantially free of defects."  *Id.* (internal quotation marks omitted).  This standard sets a high bar: only a product that "was not minimally safe for its expected purpose" falls short.  *Hollman v. Taser Int'l, Inc.*, 928 F. Supp. 2d 657, 681 (E.D.N.Y. 2013) (internal quotation marks omitted); *see also Mocek v. Alfa Leisure, Inc.*, 7 Cal. Rptr. 3d 546, 549 (Cal. Ct. App. 2003) (stating that product must lack "even the most basic degree of fitness for ordinary use").

Plaintiffs cannot clear this high hurdle.  All acknowledged their product's adequate functioning as a floor.  None are claiming personal-injury damages.  Even if their flooring failed to comply with the ATCM, Plaintiffs have no evidence of unsafety to such a degree that all states at issue would penalize its sale.  Again, CARB compliance was not a requirement for sale of the flooring in any state except California, such that any failure to follow the ATCM cannot render a product "unmerchantable" in other states.  And again, Plaintiffs' theory essentially—and improperly—seeks to export the ATCM far beyond the borders of California and therefore fails.

### B.  Plaintiffs' Magnuson-Moss claims fail under the text of the federal statute and because the underlying warranty claims are unsupportable.

Magnuson-Moss provides a federal cause of action to consumers who are "damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract."  15 U.S.C. § 2310(d)(1).  For several reasons, Plaintiffs' evidence cannot establish a Magnuson-Moss claim.

Any reference to CARB compliance on flooring-box labels does not constitute a "written warranty" under Magnuson-Moss, which defines that term more narrowly than do the common law and Uniform Commercial Code.  A "written warranty" for purposes of Magnuson-Moss is

> (A) any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time, or
>
> (B) any undertaking in writing in connection with the sale by a supplier of a consumer product to refund, repair, replace, or take other remedial action with respect to such product in the event that such product fails to meet the specifications set forth in the undertaking, which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product.

15 U.S.C. § 2301(6)(A)-(B).

The relevant language here reads, in its entirety: "CARB [number] CALIFORNIA 93120 PHASE 2 Compliant for Formaldehyde." *See, e.g.*, Ex. 7 at Ex. 101. This is a mere "product description," which "does not constitute a written warranty under [Magnuson-Moss]." *Kosta v. Del Monte Corp.*, No. 12-CV-01722-YGR, 2013 WL 2147413, at \*13 (N.D. Cal. May 15, 2013). A product description does not "affirm[] or promise[] that [the] material or workmanship [of a product] is defect free or will meet a specified level of performance," as the statute's text requires. *See Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 898 (C.D. Cal. 2013); *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1003 (N.D. Cal. 2012); *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW (DTBx), 2012 WL 1893818, at \*6 (C.D. Cal. May 18, 2012); *Chatham v. Sears, Roebuck & Co. (In re Sears, Roebuck & Co.)*, No. MDL-1703, 05 C 4742, 05 C 2623, 2006 WL 1443737, at \*4 (N.D. Ill. May 17, 2006). The cursory label statement here cannot support a Magnuson-Moss claim.

Moreover, the label's complete lack of a "temporal element," such that it does not promise anything "over a specific period of time," is independently dispositive. *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at \*3-5 (W.D. Wash. Sept. 10, 2007) ("'A product information disclosure without a specified time period to which the disclosure

relates is . . . not a written warranty.'") (quoting 16 C.F.R. § 700.3(a)); *see also Skelton v. Gen. Motors Corp.*, 660 F.2d 311, 316 n.7 (7th Cir. 1981) (same); *In re Shop-Vac Mktg. & Sales Practices Litig.*, 964 F. Supp. 2d 355, 361 (M.D. Pa 2013); *Viggiano*, 944 F. Supp. 2d at 898; *Hairston*, 2012 WL 1893818, at *6.

On these points, the observations of the Seventh Circuit bear consideration:

[T]he need for a clearly circumscribed definition in the statutory scheme before us is apparent since, to comply with the Act's obligations, manufacturers and suppliers must know in advance exactly which representations are subject to those obligations. Moreover, it is quite plausible that the Act's draftsmen defined "written warranty" in [§ 2301(6)] so as to exclude general descriptions of consumer products or their components from the reach of the Act, since it would be excessively cumbersome to impose the Act's disclosure rules on every advertisement containing a description of a product or its components.

*Skelton*, 660 F.2d at 316 n.7.

Plaintiffs' Magnuson-Moss claims also fall short for the same reasons as their implied-warranty claims. An "implied warranty" under Magnuson-Moss "aris[es] under"—and thus incorporates—"State Law." 15 U.S.C. § 2301(7). *See, e.g.*, *Carlson v. Gen. Motors Corp.*, 883 F.2d 287, 291-92 (4th Cir. 1989); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1013-14 (D.C. Cir. 1986). Because Magnuson-Moss claims are "subject to the same pleading requirements and defenses as . . . state law warranty claims," *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 624 (M.D.N.C. 2005), Count X fails for the same reasons as Count IX.[5]

---

[5] The Complaint also states that "Lumber Liquidators' purchase order come [*sic*] with a warranty stating that the customer's purchased flooring products comply 'with all applicable laws, codes and regulations,' and 'bear all warnings, labels, and markings required by applicable laws and regulations.'" Compl. ¶ 47. The evidence shows that this language was not directed at Plaintiffs but, rather, comes from a purchase order between a Lumber Liquidators entity and its suppliers. *See* Ex. 26 (Purchase Order Terms and Conditions) at ¶¶1, 9. It thus does not constitute a "written warranty" under Magnuson-Moss, which excludes warranties made for resale purposes. *See* 15 U.S.C. § 2301(6). Moreover, the warranty disclaimer on the invoice, to which all Plaintiffs agreed, would bar some or all of Plaintiffs' warranty claims.

**VIII.   Lumber Liquidators is entitled to summary judgment on the declaratory-relief claim (Count XII).**

The Complaint's final count demands a judicial declaration that Lumber Liquidators' "sale of composite laminate flooring products do [*sic*] not comply with the CARB standards." Compl. ¶¶ 267-68.  "[D]istrict courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions."  *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998).  The Court should reject this claim for numerous reasons.

First, Plaintiffs' claim is misplaced.  Declaratory judgments are remedies (not independent causes of action) and thus belong in the prayer for relief.  *See Diviacchi v. Affinion Grp., Inc.*, Civ. A. No. 14-10283-IT, 2015 WL 3631605, at *18 (D. Mass. Mar. 11, 2015); *Rivard-Crook v. Accelerated Payment Techs., Inc.*, No. 2:10-cv-02215-MMD, 2012 WL 6138229, at *2 (D. Nev. Dec. 10, 2012); *see also Campbell*, 86 F. Supp. 3d at 470.

Second, as discussed above, CARB has exclusive authority to determine ATCM compliance.  The Court should yield adjudication of this issue to CARB.

Third, and relatedly, the premise of Plaintiffs' demand fails: because CARB has exclusive authority to determine ATCM compliance and has not declared any violation here, Plaintiffs cannot corroborate their assertion that Lumber Liquidators disobeyed CARB standards.

Fourth, the scope of Plaintiffs' demand—which apparently seeks a judgment that *any* "sale of composite laminate flooring" violates CARB standards—sweeps far too broadly for two reasons.  First, the ATCM applies to California-connected conduct only—and cannot extend any further for constitutional reasons, *see Carolina Trucks & Equip., Inc. v. Volvo Trucks of N. Am., Inc.*, 492 F.3d 484, 489-90 (4th Cir. 2007).  Second, no Plaintiff has Article III standing to assert claims concerning sales not occurring in the five states covered by the Complaint.

Fifth, the Fourth Circuit long ago made clear that declaratory relief "should not be

accorded . . . to try a controversy by piecemeal, or to try particular issues without settling the entire controversy." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937).  Here, whether Lumber Liquidators violated the ATCM would plainly not "settl[e] the entire controversy."  Liability on Plaintiffs' litany of claims would still depend on numerous other issues, including (for example) materiality, reliance, and causation.

Sixth, a declaratory judgment "is only appropriate when it would serve a useful purpose in clarifying and settling the legal relations in issue to guide the parties in the future"—for example, "in continuing to perform under [a] contract." *Beazer Homes Corp. v. VMIF/Anden Southbridge Venture*, 235 F. Supp. 2d 485, 494 (E.D. Va. 2002) (internal quotation marks omitted).  A declaratory judgment is "not an appropriate remedy" to adjudicate only "past misconduct." *Id.* (internal quotation marks omitted).  Here, the parties do not have any ongoing relationship, and Plaintiffs seek to adjudicate the propriety of past actions only.[6]

Last but not least, "[b]ecause the declaratory judgment claim seeks the resolution of legal issues that will, of necessity, be resolved in the course of the litigation of the other causes of action, the claim for declaratory relief is duplicative and permitting the claim to proceed will not serve a useful purpose." *Great Am. Ins. Co. v. GRM Mgmt., LLC*, Civ. A. No. 3:14CV295, 2014 WL 6673902, at *10 (E.D. Va. Nov. 24, 2014) (internal quotation marks omitted).  Courts often apply this rule to dismiss declaratory-judgment demands that replicate issues addressed by other claims. *See, e.g.*, *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 936 n.93 (9th Cir. 2011); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095,

---

[6] In any event, Lumber Liquidators has stopped selling the challenged products, rendering any issue as to future conduct moot. *See* U.S. Consumer Prod. Safety Comm'n, Lumber Liquidators Agrees to Not Resume Sales of Inventory of Chinese-Made Laminate Flooring, http://www.cpsc.gov/en/Recalls/2016/Lumber-Liquidators-Laminate-Flooring/ (last visited Aug. 1, 2016).

1100 (2d Cir. 1993); *Johnson v. Brock & Scott, PLLC*, No. 5:11-CV-474-F, 2012 WL 4483916, at *3 (E.D.N.C. Sept. 27, 2012); *Fleisher v. Phoenix Life Ins. Co.*, 858 F. Supp. 2d 290, 302 (S.D.N.Y. 2012); *Gibson v. Liberty Mut. Grp., Inc.*, 778 F. Supp. 2d 75, 80 (D.D.C. 2011).

For all of these reasons, the Court should reject Plaintiffs' declaratory-judgment claim as a matter of law and award summary judgment to Lumber Liquidators.

## CONCLUSION

For the foregoing reasons, as well as those stated in Lumber Liquidators Inc.'s Memorandum in Support of Motion to Exclude Expert Reports and Testimony [of Certain Witnesses] as Related to Deconstructive Testing, Lumber Liquidators respectfully requests that the Court grant summary judgment in its favor on all claims in the Complaint.

DATED:  August 1, 2016                    Respectfully submitted,

LUMBER LIQUIDATORS, INC.
By Counsel

*/s/ Diane P. Flannery*
Diane P. Flannery (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)
*Defendants' Co-Lead Counsel*

*/s/ William L. Stern*
William L. Stern (Pro Hac Vice)
E-mail: wstern@mofo.com
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
415.268.7000 (Telephone)
415.268.7522 (Facsimile)
*Defendants' Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2016, a true and correct copy of the foregoing was filed electronically with the clerk of this Court using the CM/ECF system, and in accordance with Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A.  This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record in this matter who have consented to electronic service.

I also hereby certify that, on the same day, a true and correct copy of the foregoing was served by U.S. Mail upon the remaining unrepresented party (in *Karriem v. Lumber Liquidators, Inc.*, No. 1:15-cv-2765):

Elijah Karriem
1404 Asbury Court
Hyattsville, Maryland 20782

*/s/ Diane P. Flannery*
Diane P. Flannery, Esq. (VSB No. 85286)
E-mail: dflannery@mcguirewoods.com
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219-3916
804.775.1015 (Telephone)
804.698.2047 (Facsimile)
*Defendants' Co-Lead Counsel*