IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION | MDL No. l:15-md-02627 (AJT/TRJ) |
| This Document Relates to ALL Cases | |

## PLAINTIFFS' OPPOSITION TO DEFENDANT LUMBER LIQUIDATORS, INC.'S MOTION FOR SUMMARY JUDGMENT

**[REDACTED]**

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................ 1

II. PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE ........................... 2
    A.  Defendant Knew Its Chinese Vendors Used Cheaper Non-CARB
        Compliant Cores ................................................................................... 2
    B.  Defendant Knew That Formaldehyde Levels in Flooring Could Impact
        Sales ....................................................................................................... 5
    C.  Defendant Did Not Disclose CARB Investigation to Customers ........................ 7
    D.  Testing of Defendant's Chinese-Made Laminates.................................. 10
    E.  Plaintiffs' Experiences with Defendant's Chinese-Made Laminates .................. 10

III. STANDARD FOR RULE 56 SUMMARY JUDGMENT ............................................. 14

IV. ARGUMENT ...................................................................................................... 15
    A.  ███████████████████████████████████████████████████
        ██████████████████████████████████████ ................................. 15
    B.  Defendant Has Not Moved for Summary Judgment on All of Plaintiffs'
        Claims .................................................................................................... 16
    C.  A Reasonable Jury Could Find That the Defendant Failed to Disclose
        Material Information from the Plaintiffs, Causing Injury (Counts II, IV, V,
        VI, VII) ................................................................................................... 18
    D.  A Reasonably Jury Could Find Defendant Fraudulently Concealed
        Material Information From the Plaintiffs (Count I)............................ 22
    E.  Extensive Evidence Shows that Defendant Did Not Comply With the
        ATCM, Supporting All of Plaintiffs' Claims ....................................... 23
        1.  Defendant Failed to Exercise Reasonable Prudent Precautions ............... 24
        2.  Plaintiffs' Test Results Also Shows CARB Non-Compliance ................. 25
        3.  Because Plaintiffs' Flooring was Not Compliant with CARB
            Regulations, the California Plaintiffs Can Proceed with UCL
            "Unlawful Prong" Claims. .............................................................. 26
        4.  Defendant Cannot Show Entitlement to Summary Judgment on
            Declaratory Relief.......................................................................... 28
        5.  Because the Flooring Did Not Comport with its Labeling, a
            Reasonable Jury Can Find Defendant Liable on the Implied
            Warranty, MMWA, and DTPA Claims ....................................... 28
        6.  Because Her Flooring Did Not Comport with the Representation,
            the Brandt's Negligent Misrepresentation Claim May Proceed to
            Trial.............................................................................................. 30

V.  CONCLUSION.................................................................................................. 30

# TABLE OF AUTHORITIES

Page

CASES

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)...........................................................................................15, 20, 31

*Benjamin v. CitiMortgage, Inc.*,
2013 WL 1891284 (S.D. Fla. May 6, 2013) ...........................................................23

*Brown v. City of Charleston*,
2013 WL 4499138 (D.S.C. Aug. 20, 2013)............................................................18

*Campbell v. Am. Int'l Grp., Inc.*,
86 F. Supp. 3d 464, 469 (E.D. Va. 2015) ..............................................................22

*Carbo Indus., Inc. v. Becker Chevrolet, Inc.*,
112 A.D.2d 336 (N.Y. App. Div. 1985) .................................................................30

*Carriuolo v. General Motors Corp.*,
823 F.3d 977 (11th Cir. 2016) .........................................................................17, 22

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
973 P.2d 527 (Cal. 1999).......................................................................................28

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)...........................................................................................15, 18

*Citizens for a Better Env't v. Union Oil*,
996 F. Supp. 934 (N.D. Cal. 1997).......................................................................28

*Connick v. Suzuki Motor Co.*,
675 N.E.2d 584 (Ill. 1996)....................................................................................23

*Daniel v. Ford Motor Co.*,
806 F.3d 1217, 1225 (9th Cir. 2015) ................................................................16, 20

*Direct Auto Ins. Co. v. Beltran*,
998 N.E.2d 892 (Ill. App. Ct. 2013) .....................................................................20

*Ebin v. Kangadis Food Inc.*,
297 F.R.D. 561 (S.D.N.Y. 2014) ..........................................................................22

*Engalla v. Permanente Med. Grp., Inc.*,
976, 938 P.2d 903 (Cal. 1997) ..............................................................................20

# TABLE OF AUTHORITIES

Page

*Estrada v. Johnson & Johnson*,
  2015 WL 1440466 (E.D. Cal. Mar. 27, 2015) ....................................................22

*Hauter v. Zogarts*,
  534 P.2d 377 (Cal. 1975) .................................................................................30

*Highland Capital Mgmt., L.P. v. Ryder Scott Co.*,
  402 S.W.3d 719 (Tex. App. 2012) ......................................................................20

*Hoffman v. AmericaHomeKey, Inc.*,
  23 F. Supp. 3d 734, 744-45 (N.D. Tex. 2014) .......................................................23

*Khoday v. Symantec Corp.*,
  2014 WL 1281600 (D. Minn. Mar. 31, 2014), and GBL....................................22

*Khoday v. Symantec Corp.*,
  93 F. Supp. 3d 1067, 1089-90 (D. Minn. 2015)...................................................21

*Kwikset Corp. v. Superior Court*,
  246 P.3d 877 (Cal. 2011) .................................................................................17

*Makaeff v. Trump Univ., LLC*,
  145 F. Supp. 3d 962, 978, 983, 985 (S.D. Cal. 2015)............................................20

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986)........................................................................................15

*Matthews v. Am. Honda Motor Co .*,
  2012 WL 2520675 (S.D. Fla. June 6, 2012) .........................................................21

*McCormick Machinery, Inc. v. Julian E. Johnson & Sons, Inc.*,
  523 So.2d 651 (Fla. Dist. Ct. App.1988) .............................................................30

*McKell v. Washington Mutual, Inc.*,
  49 Cal. Rptr. 3d 227 (Cal. Ct. App. 2006) ...........................................................18

*Mui Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. 2013) .................................................................23

*Native Am. Arts, Inc. v. Bundy-Howard, Inc.*,
  2002 WL 1488861 (N.D. Ill. July 11, 2002)........................................................29

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
  287 F.R.D. 590 (C.D. Cal. 2012)........................................................................22

# TABLE OF AUTHORITIES

Page

*Oliveira v. Amoco Oil Co.,*
 776 N.E.2d 151 (Ill. 2002) ...................................................................22

*Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.,*
 647 N.E.2d 741 (N.Y. 1995) ...........................................................21, 23

*Parkway Co. v. Woodruff,*
 901 S.W.2d 434 (Tex. 1995) ..............................................................17

*Paulus v. Bob Lynch Ford, Inc.,*
 43 Cal. Rptr. 3d 148 (Cal. Ct. App. 2006) ..............................................28

*Pirozzi v. Apple Inc.,*
 913 F. Supp. 2d 840 (N.D. Cal. 2012) ...................................................22

*Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.,*
 53 A.D.2d 214 (N.Y. App. Div. 1976) ................................................20

*Schultz v. Jackson,*
 385 N.E.2d 162 (Ill. App. Ct. 1979) .....................................................30

*Smith v. Ford Motor Co.,*
 749 F. Supp. 2d 980 (N.D. Cal. 2010) ...................................................21

*Stutman v. Chem. Bank,*
 731 N.E.2d 608 (N.Y. 2000) ..............................................................17

*In re Tobacco II Cases,*
 207 P.3d 20 (Cal. 2009) ...............................................................19, 20

*Two Rivers Co. v. Curtiss Breeding Serv.,*
 624 F.2d 1242 (5th Cir. 1980) ...........................................................30

*Tylka v. Gerber Prods. Co.,*
 178 F.R.D. 493 (N.D. Ill. 1998) ...........................................................17

*United States ex rel. DRC, Inc. v. Custer Battles, LLC,*
 415 F. Supp. 2d 628 (E.D. Va. 2006) ...................................................16

**STATUTES**

815 ILCS § 505/2 ...............................................................................17, 21

Cal. Bus. & Prof. Code § 17200 ...........................................................26, 28

## TABLE OF AUTHORITIES

Page

Cal. Code Regs. tit. 17, § 93120.8(a) .........................................................................24, 25

California False Advertising Law ..................................................................................17

Florida Deceptive Unfair Trade Practices Act ..............................................................17

Fed. R. Civ. P. 56 .................................................................................................. passim

Magnusson Moss Warranty Act....................................................................................24

Texas Deceptive Trade Practice Act .............................................................................17

U.C.C. § 2-314(2)(f) ............................................................................................... 29-30

U.C.C. § 2-316(2) .........................................................................................................30

**OTHER AUTHORITIES**

http://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=1099
    9371&type=HTML&symbol=LL&companyName=Lumber+Liquidators+Hol
    dings+Inc&formType=8-K&dateFiled=2016-06-17 .............................................10

http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-
    at-lumber-liquidators...........................................................................................5, 6

http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-
    violations-2/ ............................................................................................................2

http://www.cdc.gov/nceh/laminateflooring/ .........................................................2, 10

## I.      INTRODUCTION

Defendant claims to be a victim of media-generated and lawyer-driven litigation. But the media did not generate the Chinese suppliers that Defendant knew to be providing non-compliant cores and fake CARB certifications for use in Defendant's flooring. Lawyers did not invent the failed supplier audits, failed test results, and Defendant's non-disclosures of formaldehyde problems. Lumber Liquidators is not a victim. It chose profits over people, and cheaper materials over safe and compliant materials. And it cannot escape the legal consequences of its actions on a motion for summary judgment.

Defendant fails to acknowledge both the evidence against it, and all of the claims the Representative Plaintiffs assert. Defendant argues that Plaintiffs must prove that they all relied on explicit and narrow affirmative misrepresentations that Defendant's laminate flooring was CARB-compliant, and that non-compliance can only be shown through deconstructive testing—which, it claims, is both scientifically inadmissible and solely within CARB's provenance. This is incorrect. First, Plaintiffs' claims do not all hinge on proving an actual ATCM violation or on showing reliance upon affirmative misrepresentations. Plaintiffs' consumer protection and fraudulent concealment claims are also based on Defendant's deliberate omissions of material information. Actual, individual reliance need not be shown to prove these claims.

Second, Plaintiffs can establish CARB non-compliance for their warranty claims through Lumber Liquidators' failure to exercise reasonable prudent precautions over its Chinese laminate suppliers. Defendant allowed its suppliers to use fake CARB certifications, ignored the failed audits, and accepted fabricated invoices. Defendant was told by its suppliers that its flooring would likely not meet CARB formaldehyde standards unless they were paid more. Test results confirmed the flooring had excess formaldehyde. For all of these reasons, Defendant has not met its burden under Rule 56, and its motion for summary judgment must be denied.

## II.   PLAINTIFFS' STATEMENT OF MATERIAL FACTS IN DISPUTE

### A.   Defendant Knew Its Chinese Vendors Used Cheaper Non-CARB Compliant Cores

1.     In March of 2015, *60 Minutes* aired a segment on Lumber Liquidators. The episode showed test results on Defendant's Chinese laminates that exceeded the formaldehyde standards of the California Air Resources Board (CARB).[1] The segment also included hidden camera footage of Defendant's Chinese suppliers admitting that flooring bound for Defendant were falsely labeled as compliant with CARB's Phase 2 standards for formaldehyde.[2]

2.     Formaldehyde is a known carcinogen. Exposure to formaldehyde has been linked with increased risks of cancer. Chronic exposure to low levels of formaldehyde have been shown to cause gastrointestinal, musculoskeletal, and cardiovascular problems, increased sensitization to asthma and exacerbation of asthma symptoms, and to decreased respiratory function – particularly to children.[3] Formaldehyde is contained in the resins used to create the cores that are part of laminate flooring.

3.     In 2011, Defendant bought flooring from China via Sequoia Floorings, Inc. Defendant acquired Sequoia in September 2011 and operated Sequoia as a subsidiary. Danny Wu and Rocky Yang worked at Sequoia, identifying potential flooring sources,[4] and worked in Lumber Liquidators' Shanghai Regional Office through 2015.[5] They reported to David Chau.[6]

---

[1] Tab 1, PX 152, Mar. 3 2015 email from Cotton re Urgent 60 Minutes Update - Benchmark (LLMDL00373409 and LLMDL00373412).
[2] http://www.cbsnews.com/news/lumber-liquidators-linked-to-health-and-safety-violations-2/.
[3] *See* Tab 2, Expert Report of David E. Jacobs, Ph.D., CIH at 23; *see also, e.g.*, http://www.cdc.gov/nceh/laminateflooring/, last accessed Aug. 7, 2016.
[4] Tab 3, PX 77, Apr. 28, 2011 email from Wu to Char (LLMDL00173912); Tab 4, PX 78, Mar. 8, 2011 email re One Shot deal from Senhong (LLMDL00097496).
[5] Tab 5, PX 76 (LLMDL00392666) (org. chart for the Shanghai Regional Office as of 2015).
[6] *Id.* at p. 3.





Defendant's Quality Assurance personnel knew that its Chinese vendors were not CARB compliant.

---

[14] Tab 10, Quickel Dep. at 24:10-18; Tab 13, July 12, 2016 Dep. of W. Schlegel at 26:10-19, 29:3-12.

[15] Tab 14, PX 84, Aug. 5, 2014 email re rejected CARB Tracker (LLMDL00178507).

[16] Tab 15, PX 44, LL CARB Compliance Timeline (LLMDL00284756) at 3-6.

[17] Tab 16, PX 87, Dec. 23, 2014 email re Senhong Audit Report (LLMDL00021539).

[18] Tab 17, PX 89, Feb. 4, 2015 email re Senhong Audit Report (LLMDL00022253 at '255-56, '258).

[19] Tab 18, PX 86, Nov. 17, 2014 email re LL Corrective Action Request (LLMDL00064361); Tab 19, PX 88, Aug.-Sept. 2014 Supplier Final Audit Report (LLMDL00022262); Tab 20, PX 91, Jan. 8, 2015 Supplier Site Visit Report (LLMDL00021799).

[20] Tab 21, PX 85, Oct. 21, 2014 email re Senhong Formaldehyde Emission Test Result (LLMDL00109163).



**B.      Defendant Knew That Formaldehyde Levels in Flooring Could Impact Sales**

          In June of 2013, an article on a website called Seeking Alpha asserted that an

engineering flooring product sold by Lumber Liquidators had excess formaldehyde.[24] The article

prompted Defendant to revise its website to include information about formaldehyde and

compliance with CARB regulations.[25]

13.      In September of 2013, CARB issued a standard operating procedure ("SOP") for

the method to prepare finished goods (like laminate flooring) for formaldehyde testing. The SOP

called for third party certifiers who test Composite Wood products to remove the laminate layer

with a planer or sander so that the core may be tested for its formaldehyde content.[27]

14.      Defendant asserts as undisputed fact that "Only CARB can determine ATCM

compliance." Defendant's Mem. in Support of Summary Judgment, ECF No. 1000 ("Def. Mem.

---

[21] Tab 22, July 12, 2016 Dep. of C. Battin at 29:3-31:12.
[22] Tab 23, PX 94, Mar. 2, 2015 Schlegel email to Lynch re *60 Minutes* segment and compliance
(LLDML00257858).
Tab 24, July 12, 2016 Dep. of R. Lynch at 26:8-17.
[23] Tab 25, PX 90, Dec. 19, 2014 Lynch email to Cotton (LLMDL00372662).

[24] http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-at-lumber-liquidators, as accessed, Aug. 7, 2016.
[25] *See, e.g.*, Tab 26, PX 116, June 27, 2013 Pescara email to Lynch re CARB info
(LLMDL00372436); Tab 27, PX 117 Internet Archives' screenshot of
www.lumberliquidators.com ("What are the California Air Resources Board Regulations?) (June
30, 2013).
[26] Tab 28, PX 120, July 18, 2014 Battin email to Pescara re final approved statements
(LLMDL00142912 at '913)
[27] Tab 29, PX 39 (LLMDL00081335).

SJ") at 3, ¶ 3. Actually, CARB is aware that third-party certifiers work with suppliers and resellers to test the products for compliance with CARB standards, so the resellers can self-correct.[28]



---

[28] Tab 30, Mar. 15, 2016 Dep. of Lynton Baker ("Baker Dep.") at 50:15-51:13.
[29] Tab 31, PX 101, Sept. 24, 2013 email re Q4 Gross Margin (LLMDL00047209).
[30] *Id.* at '210

[31] Schlegel Dep. at 26:10-19; Lynch Dep. at 18:18-19:

[32] Tab 32, PX 102 (LLMDL00169270-278)

*See also* Tab 6, Wait Ex. 11 at 5

[33] Tab 33, PX 103, Mar. 17, 2014 email re Senhong Laminate Orders CARB issue (LLMDL00075643); Tab 34, PX 104, Mar. 25, 2014 email re Kentier CARB deconstruction test (LLMDL00075715). *See also* Tab 6, Wait Ex. 11 at 6.



**C.     Defendant Did Not Disclose CARB Investigation to Customers**

---

[34] Tab 35, July 5, 2014 email from Quickel to Terrell re Laminate Collusion Color
(LLMDL000093441) and Tab 36, Mar. 2014 Asia Trip Recap (LLMDL00093443).
[35] Tab 9,

[36] Tab 37, PX 105, July 31, 2014 email re Aug. 2014 Vendor Training (LLMDL00114982).
[37] Tab 38, PX 119, May 9, 2014 email re Formaldehyde in Wood Flooring Research
(LLMDL00428541) and attachment (LLMDL00428597).
[38] Tab 39, PX 37 (LLMDL00305874).



22. ███████████████████████████████████████████████

████████████████████████████████ Defendant suspended sales of all of its

Chinese-made laminate flooring. A resolution before Defendant's corporate board expressed

---

[39] Tab 15, PX 44 at 7-8.
[40] Tab 40, PX 99 (Mar. 4, 2015 email from Nunez to Nichols (LLMDL00373680) at '683.
████████████████████████████████████████████████

████████████████████████ Lynch Dep. at 14:2-16:4; Schlegel Dep. at 18:8-21:10; Quickel
Dep. 12:18-13:22; Battin Dep. at 37:20-38:6.
[41] Tab 8, Crowe Dep. at 316:12-22███████████████████████

███████████████████████████████████████████████

[42] Tab 41, PX 112, Internet Archives screenshot of www.lumberliquidators.com, Aug. 22, 2014.
[43] See, e.g., Tab 42, PX 123 (LLMDL00047283)█████████████████████████

███████████████████████████████████████████ "); Tab 43,
PX 131 (LLMDL00390459███████████████████████████████████

████████████████████████████████ Tab 44, PX 106, Morrison & Foerster
letter to ARB re Test Results (LLMDL00553374)██████████████████

[44] Lynch Dep. at 18:8-23:13; Battin Dep. at 42:7-44:25; Schlegel Dep. at 18:2-15, 25:1-19;
Quickel Dep. at 12:7-14:5.
[45] Tab 45, PX 100 (LLMDL00026754).

████████████████████████████████████████████ ███████████████

██████████████████████████████████████████████████████

████████████████████

23.     The CARB investigation concluded in March of 2016. As part of the settlement,

Defendant agreed to abide by the deconstructive preparation method, as CARB requires. *See*

Def. Ex. 3 (Settlement) at 5, ¶ 6. *Compare with* Def. Mem. SJ 6, ¶ 4 (denying CARB requires

retailers to use deconstructive protocol). In announcing the settlement, CARB wrote:

> Hardwood flooring retailer Lumber Liquidators Inc., has paid [CARB] $2.5
> million to settle ARB claims that Lumber Liquidators sold, supplied, or offered
> for sale in California composite wood products that ARB testing showed
> ***exceeded state formaldehyde limits***, and that Lumber Liquidators ***failed to take***
> ***reasonable prudent precautions*** to ensure those products met such limits
> designed to protect public health. (emphasis added)[48]

████████████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████

████  Defendant also resolved an investigation initiated by the Consumer Product

Safety Commission into the Chinese laminates. The agency, supported by studies done with the

Centers for Disease Control, concluded that Defendant's Chinese laminates could contribute to 6

---

[46] Tab 46, PX 96 (LLMDL00053478 at '379) ███████████████████████

██████████████████████████████████████████████████████

[47] *Compare* Tab 47, PX 140 (LLMDL00484434 at '435) █████████████

██████████ *and* Tab 48 (LLMDL00484383 at '384) █████████████████

████████████████████ ; Tab 49, Mar. 25, 2016 Dep. of M. Pescara at
249:19-259:13.
[48] Tab 50, PX 146, Mar. 22, 2016 CARB Press Release (emphasis added).
[49] Tab 51, Wait Ex. 14 (020 CARB 001972) █████████████████████████
████████████████████████████████

to 30 cases of cancer a year for every 100,000 people exposed to the products.[50] ████████

████████████████████████████████████████████████████████████████████

26.     The CPSC did not demand a product recall, but Defendant agreed to forgo selling the Chinese laminates it had sold to the Plaintiffs and the putative classes – about 22 million board feet of lumber.[52]

**D.     Testing of Defendant's Chinese-Made Laminates**

27.     Defendant had internal testing results on its products showing excessive formaldehyde. This concerned Defendant's compliance personnel.[53]

28.     Other testing done on the Chinese laminates and Defendant's other laminate flooring, including testing done by Benchmark for *60 Minutes*, showed the Defendant's Chinese laminates consistently exceed the .11 ppm formaldehyde levels set by CARB.[54]



████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████

**E.     Plaintiffs' Experiences with Defendant's Chinese-Made Laminates**

30.     Mike Balero bought Chinese-made laminate from Defendant in March of 2013 in

---

[50] http://www.cdc.gov/nceh/laminateflooring/.
[51] Tab 52, PX 109 (LLMDL00513382).
[52] *See* Lumber Liquidators Form 8-K, June 17, 2016, available at http://app.quotemedia.com/data/downloadFiling?webmasterId=101533&ref=10999371&type=HTML&symbol=LL&companyName=Lumber+Liquidators+Holdings+Inc&formType=8-K&dateFiled=2016-06-17, last accessed Aug. 20, 2016.
[53] Tab 53, PX 82 (LLMDL00105929) ████████████████████████████████

[54] *See, e.g.,* Tab 1, PX 152 (LLMDL00373409-3470) ████████████████████████

[55] Tab 54, Expert Report of F. Offermann, at 84-95.

California.[56] In October of 2014, Mr. Balero's flooring was tested by TECO labs and shown to emit formaldehyde at .29 ppm.[57]

31.    Mr. Balero was looking to purchase a "top quality product."[58] He installed the flooring in his son's room – a child with health disabilities.[59] Mr. Balero testified that he was seeking to purchase something safe and views CARB compliance as synonymous with safe.[60] He testified that when he was loading the product in his truck he understood the label to mean the formaldehyde levels were compliant.[61] If the flooring was not CARB compliant, or if he knew the formaldehyde levels exceeded a legal limit, he would not have bought it.[62]

32.    Ryan and Kristin Brandt bought Chinese laminate at a Lumber Liquidators store in Florida in August of 2014.[63] On September 15, 2015, the Brandts had their flooring tested for formaldehyde by Professional Testing Laboratory, Inc. The results showed .18 ppm of formaldehyde.[64] The Brandts further had air testing conducted by Environmental Safety Consultants. That testing showed that the air in the nursery contained formaldehyde at 0.10 ppm – a level known to cause cancer and a host of other ailments.[65]

33.    Ms. Brandt testified that low levels of formaldehyde were important to her as she was pregnant at the time and they were buying flooring for a nursery they were preparing for the

---

[56] Def. Mem. SJ at 6.
[57] Tab 55 (PLAINTIFFS0006308) at '312. Plaintiffs note that all TECO test reports were provided to Defendant before June of 2016 and should not be subject of Judge Jones' recent order limiting the rebuttal testimony of TECO proprietor Steven Verhey. ECF No. 1015.
[58] Tab 56, Mar. 15, 2016 Dep. of M. Balero at 25:4-25:17.
[59] *Id*. at 25:21-26:2, 59:24-60:5.
[60] *Id.* at 57:16-59:4.
[61] *Id.* at 44:8-47:3.
[62] *Id*. at 43:22-47:3; 55:21-56:6; 145:6-146:12. *See also* Tab 57, Balero Fact Sheet at Nos. 6 &7.
[63] Def. Mem. SJ at 7.
[64] Tab 58 (PLAINTIFFS0002161).
[65] Tab 59 (PLAINTIFFS0002145).

child she and her husband were expecting.[66] She researched the flooring on the Defendant's website, and was "satisfied to know the floors were safe with formaldehyde levels."[67] Ryan Brandt testified he was told the flooring was compliant with all state laws and was safe.[68]

34.     On October 10, 2014, Shawn and Tanya Burke purchased Chinese laminate flooring at Lumber Liquidators in Illinois.[69] On May 6, 2015, the Burkes had their flooring tested by TECO Labs. The test results showed formaldehyde levels at .30 ppm.[70]

35.     Mr. Burke testified that had he reason to believe his flooring was emitting toxic substances, he would have investigated further.[71] He believes that large American retailers like Defendant would only sell products that were safe and legal.[72] Tanya Burke testified that had she known the flooring had excessive amounts of formaldehyde, she would not have bought it.[73]

36.     On January 22, 2013, Plaintiffs Devin and Sara Clouden purchased Chinese-made laminate flooring at a Lumber Liquidators store in New York.[74] On August 9, 2015, the Cloudens learned from EMSL Analytical that formaldehyde results of their floor were .18 ppm.[75]

37.     Ms. Clouden testified that she bought her floors based on the belief it was going to be safe to put in her house.[76]

38.     On December 5, 2013, Kevin and Julie Parnella purchased Chinese-made

---

[66] Tab 60, Mar. 2, 2016 Dep. of K. Brandt at 114:2-7.
[67] *Id.* at 48:1-5, 108:17-119:5, 114:16-115:8.
[68] Tab 61, Mar. 2, 2016 Dep. of R. Brandt at 46:9-15, 117:16-118:13.
[69] Def. Mem. SJ at 11.
[70] Tab 62 (PLAINTIFFS0010948) at '952.
[71] Tab 63, Mar. 2, 2016 Dep. of S. Burke at 236:21-24.
[72] *Id.* at 114:2-7.
[73] Tab 64, Mar. 3, 2016 Dep. of T. Burke at 176:1-10.
[74] Def. Mem. SJ at 9.
[75] Tab 65 (PLAINTIFFS0002309).
[76] Tab 66, Mar. 24, 2016 Dep. of S. Clouden at 83:13-15, 85:4-5; Tab 67, Clouden Fact Sheet at No. 6 ("We became satisfied that the flooring would be suitable and safe for our home.").

laminate flooring at a Lumber Liquidators store in Plano, Texas.[77] On May 6, 2015, the Parnellas

had their floor tested by TECO labs. The formaldehyde results were .25 ppm.[78]

39.     Mr. Parnella testified that he purchased the flooring with the belief that it

complied with all laws.[79] While he did not know what CARB was by name, he expected

Defendant would adhere to any and all formaldehyde standards.[80] If he had known that in

October of 2013, the California Air Resources Board had told Defendant that some of its Chinese

laminate products failed formaldehyde emission standards, but that its non-Chinese laminates did

not, he would not have bought a Chinese-made laminate from the Defendant.[81]

40.     On August 19, 2014, Maria and Romualdo Ronquillo purchased Chinese-made

laminate flooring at a Lumber Liquidators store in San Leandro, California.[82] On September 2,

2015, the Ronquillos had their flooring tested for formaldehyde by Benchmark International. The

formaldehyde levels were .232 ppm.[83]

41.     Mr. Ronquillo testified that had he known about the formaldehyde levels in his

flooring, he would not have bought it.[84] Ms. Ronquillo testified that she is acutely aware of

California's stringent environmental and safety standards and therefore trusts that anything sold

in California must meet California's very stringent standards.[85] If she knew any of the statements

about the flooring were untrue, she would not have purchased it.[86]

---

[77] Def. Mem. SJ at 10.
[78] Tab 68 (PLAINTIFFS0011027) at '031.
[79] Tab 69, Feb. 9, 2016 Dep. of K. Parnella at 69:17-21.
[80] Id. at 69:22-70:4, 70:22-71:7.
[81] Id. at 270:19-271:9.
[82] Def. Mem. SJ at 6.
[83] Tab 70 (PLAINTIFFS0004105).
[84] Tab 71, Feb. 25, 2016 Dep. of R. Ronquillo at 18:2-12, 21:4-7, 58:2-16.
[85] Tab 72, Feb. 25, 2016 Dep. of M. Ronquillo at 24:14-19, 27:8-28:4.
[86] Id. at 31:12-24; see also Tab 73, Ronquillo Fact Sheet at No. 10 (recalling "various statements that all the products would be appropriate to be in our home in terms of quality and safety ….").

42.     On October 23, 2014, Plaintiffs Lila and Laura Washington bought Chinese-made laminate flooring at a Lumber Liquidators store in California.[87] On September 2, 2015, Benchmark tested the Washington's floor and found formaldehyde levels at .149 ppm.[88]

43.     Lila Washington purchased flooring for her daughter, Laura, in whose home the flooring was installed and where they both live.[89] Lila, a cancer survivor, testified that she looks at product labels and tries to avoid purchasing products that may exacerbate respiratory issues.[90] Laura Washington similarly seeks to avoid products that may have harmful health effects.[91]

## III.     STANDARD FOR RULE 56 SUMMARY JUDGMENT

Summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The party seeking summary judgment has the initial burden to show the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Such a dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The facts are to be viewed, and all reasonable inferences to be drawn, in the light most favorable to the non-moving party. *Id*. at 255. The court does not engage in credibility determinations or weighing the evidence as that is for the trier of fact. *Id.*

---

[87] Def. Mem. SJ at 4.
[88] Tab 74 (PLAINTIFFS0004598).
[89] Tab 75, Mar. 29, 2016 Dep. of Lila Washington at 33:3-5.
[90] *Id.* at 56:2-25.
[91] Tab 76, Mar. 29, 2016 Dep. of Laura Washington at 42:8-17; Tab 77 Washingtons Fact Sheet No. 10 ("Recall being satisfied that the products were appropriate to have in our house.").

## IV.   ARGUMENT



**B.      Defendant Failed to Move for Summary Judgment on All of Plaintiffs' Claims**

Defendant wrongly avers that *all* of the Plaintiffs' causes of action require proof of individual reliance – *i.e.*, that each Plaintiff must show that he or she saw, understood, and relied upon the specific CARB compliance statement before making his or her purchase. Def. Mem. SJ at 1; *see also id.* at 14 (stating that for the California consumer protection claims, "each [statute] contains a reliance requirement"); *id.* at 19 (stating that the Illinois CFDBPA (sic) and the New York GBL require "personal deception"). Defendant is incorrect. Actual reliance on an affirmative misrepresentation is only essential for claims under the Texas Deceptive Trade Practice Act ("DTPA") (Count VII) and the California False Advertising Law ("FAL") (Count III). The other state consumer protection claims (Counts I, II, IV, V, VI, VIII) and the fraudulent concealment claim (Count I) can be established based upon Defendant's omissions of material information that caused an injury. *See, e.g.*, *Carriuolo v. General Motors Corp.*, 823 F.3d 977, 984 (11th Cir. 2016) (restating that "[a] party asserting a [Florida Deceptive Unfair Trade Practices Act] claim need not show actual reliance on the representation or omission at issue") (citation omitted); *Stutman v. Chem. Bank*, 731 N.E.2d 608, 612 (N.Y. 2000) ("[A]s we have repeatedly stated, reliance is not an element of a section 349 claim."); *Tylka v. Gerber Prods. Co.*, 178 F.R.D. 493, 499 (N.D. Ill. 1998) ("[P]roof of actual reliance on the part of each plaintiff is not required under the [Illinois Consumer Fraud Act]."). California's Unfair Competition Law and Consumer Legal Remedies Act require reliance, but for an omissions-based claim, that only means showing that the defendants' nondisclosure was an immediate cause of the plaintiff's injury. *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015).[92] Plaintiffs do not need

---

[92] While the DTPA does not include omissions, it does include breach of implied warranty as an enumerated violation. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 438 (Tex. 1995). As explained below, the Parnellas have warranty claims that suffice for their DTPA claim. *See* First Amended

to show they saw the CARB compliance labeling or website to prove their all of their fraud claims.

In addition to overstating the ubiquity of a reliance element, Defendant wrongly asserts that all of Plaintiffs claims hinge on a finding of a violation of the Airborne Toxic Control Measures (ATCM). Def. Mem. SJ at 12. This is also wrong. While hiding an ATCM violation would suffice as a deceptive act, it is not necessary for Plaintiffs' consumer fraud claims. Those claims can be established by showing Defendant's failure to inform Plaintiffs that its Chinese laminate products contained more formaldehyde than other flooring that the Plaintiffs could have purchased. *See, e.g.*, FARC ¶¶ 1, 51, 54, 159, 172, 197, 208. As discussed further below, in Part IV(C), Defendant failed to disclose material information ██████████████████ ████████████████████████████████████████ ████████████████████████████████████ This omitted information supports the consumer fraud and fraudulent concealment claims, regardless of whether an ATCM violation is proven.

Rather than address all of the claims it faces, Defendant recasts this case as solely an affirmative misrepresentation case based on CARB compliance. Defendant picks excerpts of Plaintiffs' testimony where the witness states he or she did not rely upon the specific assertion of "CARB compliance," or did not understand what the term CARB meant. Def. Mem. SJ at 5-11. This cherry-picking ignores Plaintiffs' testimony confirming that each would not have purchased the flooring had they known of safety risks, high formaldehyde levels, or state agency investigations. *See* Part II, ¶¶ 32-44, *supra*.

Defendant failed to move for summary judgment regarding Plaintiffs' consumer

---

Representative Complaint ("FARC") ¶ 219 (asserting DTPA § 17.50(a)(2) violation based upon Lumber Liquidators' breach of warranties). *See* Part IV(E)(5), below.

protection and fraudulent concealment claims based upon omissions. As such, Defendant has failed to meet its initial burden to show no genuine dispute on these claims. *Celotex Corp.*, 477 U.S. at 325. Defendant has waived that opportunity, and cannot try to correct this oversight in its reply brief. *Brown v. City of Charleston*, 2013 WL 4499138, at \*5 (D.S.C. Aug. 20, 2013).

**C.   A Reasonable Jury Could Find That the Defendant Failed to Disclose Material Information from the Plaintiffs, Causing Injury (Counts II, IV, V, VI, VII)**

For the consumer protection statutes, Plaintiffs must show that Defendant engaged in a deceptive practice (omitting material information it had to disclose) that caused them injury. *See, e.g., McKell v. Washington Mutual, Inc.*, 49 Cal. Rptr. 3d 227, 239 (Cal. Ct. App. 2006) (noting a "fraudulent business practice" under UCL is one that will "tend to mislead or deceive.... A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under the UCL.") (citation and quotation marks omitted).

The evidence shows that Defendant hid material information it was obliged to disclose:



- ██████████████████████████████████████ *See, e.g.*, Tab 3, PX 77; Tab 4, PX 78; Tab 7, PX 79; Tab 6,Wait Ex. 11.
  ████████████████████████████████████████████ Tab 39, PX 37.
  ████████████████████████
  █████████████████████ Tab 15, PX 44 at 7-8.
  ███████████████████████████████████████████ Tab 32, PX 102; Tab 33, PX 103; Tab 346, PX 104; Tab 6, Wait Ex. 11 at 5-6; Tab 36, Yang Notes at 12.

Defendant did not disclose what it knew about its Chinese suppliers and the test results, either on its website (Tab 41, PX 112); to the press (Tab 42, PX 123; Tab 43, PX 131); to CARB (Tab 44, PX 106); or even to some of its own executives (Tab 8, Crowe Dep. at 316:12-22). Defendant hid this information because it made more money selling the cheaper Chinese laminates than if it

switched to higher quality flooring with lower formaldehyde emissions. Tab 25, PX 90; Tab 31, PX 101; Tab 37, PX 105; Tab 12, PX 110; Tab 36, Yang Notes at 3; Tab 35, Trip Recap at '443.

The above information is material, as it impacts a reasonable consumer in making the transaction. *See, e.g.*, *In re Tobacco II Cases*, 207 P.3d 20, 39-40 (Cal. 2009). This is generally a question of fact; and the omitted information need not be the sole or even the decisive reason for the transaction. *Id*. Here, Defendant knew formaldehyde levels and compliance mattered to customers. It represented that it voluntarily complied with CARB's formaldehyde requirements even outside of California. Tab 26, PX 116; Tab 27, PX 117. Defendant sought to highlight on its website that products without formaldehyde be described as "NO formaldehyde." ▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Moreover, the inability for these products to comply with CARB's formaldehyde standards led to them being pulled from the market – even outside of California. Tab 46, PX 96; Tab 47, PX 140.[93] Defendant has had to scrap 22 million board feet; to pretend that the formaldehyde issues surrounding this flooring are not material is not believable.

The Plaintiffs' testimony further supports the materiality of the omitted information. Each Plaintiff noted that formaldehyde levels, product safety, and compliance with regulations were matters that would have impacted their purchase decisions. *See* Part II, ¶¶ 30-43, *supra*.

---

[93] Defendant maintains that it is so obvious that no material information was withheld, that a jury should not even consider the question. Def. Mem. SJ at 22. But it fails to cite a single case where a court applied the rule it states. *Id*. at 22 n.4 (citing *Engalla v. Permanente Med. Grp., Inc.*, 976, 938 P.2d 903, 919 (Cal. 1997) (finding arbitration clause in health insurance contract was not so unimportant that it could not factor into employer's HMO decision); *Direct Auto Ins. Co. v. Beltran*, 998 N.E.2d 892 (Ill. App. Ct. 2013) (finding jury could determine whether insured's failure to include information about other drivers in household was a material omission); *Highland Capital Mgmt., L.P. v. Ryder Scott Co.*, 402 S.W.3d 719 (Tex. App. 2012) (rejecting argument that presence of cautionary language in prospectus made it impossible for reasonable jury to find misrepresentations about defendant's proved reserves was material); *Process Plants Corp. v. Beneficial Nat'l Life Ins. Co.*, 53 A.D.2d 214 (N.Y. App. Div. 1976) (holding jury could conclude insured made material misrepresentation in its insurance forms)).

Materiality does not require that each Plaintiff knew exactly what the acronym "CARB" means; the fact that a state agency found that flooring they were to install in their home emitted formaldehyde at levels that exceeded regulatory limits would have dissuaded them. *See, e.g.*, Tab 69, K. Parnella Dep. at 270:19-271:9. Defendant minimizes the Plaintiffs' concerns by citing to their testimony about other products in their daily lives that contain formaldehyde. Def. Mem. SJ at 18. This ignores that chronic exposure Plaintiffs would face from their home flooring, as opposed to a paint can in their garage.[94] Defendant cannot show indisputable evidence the Plaintiffs would not have learned of the safety-related information and acted differently. *Daniel*, 806 F.3d at 1226 (reversing summary judgment; genuine dispute plaintiffs would not have bought vehicle if Ford disclosed premature tire wear). Defendant invites the Court to assess the credibility of the Plaintiffs, which is the sole province of the jury. *Anderson*, 477 U.S. at 255. *Accord Makaeff v. Trump Univ., LLC*, 145 F. Supp. 3d 962, 978, 983, 985 (S.D. Cal. 2015) (denying summary judgment on UCL, CLRA, FDUTPA, and GBL claims where plaintiffs had testified Trump name and reputation mattered and influenced decision to purchase seminars; up to jury to decide materiality); *Khoday v. Symantec Corp.*, 93 F. Supp. 3d 1067, 1089-90 (D. Minn. 2015), as amended Apr. 15, 2015 (rejecting summary judgment on UCL and CLRA claims, finding plaintiff's equivocal answers on whether defendant's conduct impacted her purchase decision "best determined by a jury").

Defendant also had a duty to disclose the information cited above that pertains to the risk of high formaldehyde emissions from its flooring. *See, e.g.*, ICFA, 815 ILCS § 505/2; *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 647 N.E.2d 741, 745 (N.Y. 1995) (holding GBL § 349 requires disclosure "where the business alone possesses material

---

[94] See Tab 2, Report of David E. Jacobs at 23-28.

information that is relevant to the consumer and fails to provide this information"); *Matthews v. Am. Honda Motor Co.*, 2012 WL 2520675, at \*3 (S.D. Fla. June 6, 2012) (finding FDUTPA claim exists where "the defendant knowingly fails to disclose a material defect that diminishes a product's value"); *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 987 (N.D. Cal. 2010) (recognizing duty to disclose under UCL and CLRA where defendant had exclusive knowledge of material facts, actively concealed such facts, or made a partial representation).

Defendant, but not Plaintiffs, knew that its vendors were using fake CARB certificates, that the vendors informed it that they could not meet standards unless paid more, and that a state environmental agency was investigating Defendant after inspections revealed excessive formaldehyde levels. Also, Defendant voluntarily represented that its laminate flooring was CARB compliant, regardless of where sold. Tab 27, PX 117. Defendant's representations obliged it to disclose when it learned that CARB had found some of its Chinese (and only its Chinese) laminates exceeded formaldehyde emissions limits▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮Tab 39, PX 37; Tab 15, PX 44 at 7-8. Instead, Defendant actively concealed this information. Tab 40, PX 99; Tab 41, PX 112; Tab 43, PX 131; Tab 44, PX 106.

Finally, Plaintiffs can show a causal relationship between the Defendant's omissions and injury. First, the Plaintiffs testified that had they known the truth, they would not have bought Defendant's products. Second, Plaintiffs can establish the causal relationship by demonstrating that they overpaid: that if Defendant had told the truth about its Chinese-made laminates, it could not have sustained the prices it charged. Defendant argues that this "price-distorting theory" is not available in this Circuit, yet only cites to one decision in the Eastern District of Virginia that never discussed the theory. Def. Mem. SJ at 19. *Campbell v. Am. Int'l Grp., Inc.*, 86 F. Supp. 3d 464, 469 (E.D. Va. 2015) does not discuss a price inflation theory, nor a consumer fraud statute

with the "as a result of" language. Defendant also cites two California cases that dealt with Article III requirements, and both courts agreed that overpaying for goods could support standing. Def. Mem. SJ at 19 (citing *Estrada v. Johnson & Johnson*, 2015 WL 1440466, at *2 (E.D. Cal. Mar. 27, 2015); *Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 846-47 (N.D. Cal. 2012)). In fact, federal courts have recognized an overcharge theory to prove causation for the FDUTPA. *See, e.g.*, *Carriuolo v. Gen. Motors Corp.*, 823 F.3d 977 (11th Cir. 2016) (affirming certification of FDUTPA class based upon defendant's misrepresentation about the crash-worthiness of their cars because whether or not all purchasers saw and relied upon the representation, the safety claim allowed Cadillac to charge more). The overcharge theory has also been recognized with UCLA and CLRA claims, *Negrete v. Allianz Life Ins. Co. of N. Am.*, 287 F.R.D. 590, 607 (C.D. Cal. 2012); *Khoday v. Symantec Corp.*, 2014 WL 1281600, at *33 (D. Minn. Mar. 31, 2014), and GBL § 349. *Ebin v. Kangadis Food Inc.*, 297 F.R.D. 561, 568-69 (S.D.N.Y. 2014).[95] Plaintiffs can each show that they overpaid. Once the truth came out about the dubious reliability of the CARB certifications, the products' value plummeted to zero, as it was pulled from the market, never to be sold again.[96] Plaintiffs have ample evidence to sustain all elements of the consumer protection claims. Summary judgment is therefore not warranted or appropriate.

**D.    A Reasonably Jury Could Find Defendant Fraudulently Concealed Material Information From the Plaintiffs (Count I)**

Defendant asserts that Plaintiffs cannot show actual reliance caused injury "to any Plaintiff other than, arguably, the Brandts." Def. Mem. SJ at 24. That concession precludes summary judgment on the Brandts' fraudulent concealment count. But again, Defendant mistakenly limits this cause of action to a claim that requires reliance upon a misrepresentation,

---

[95] Plaintiffs concede that presently a price inflation theory cannot support causation for an ICFA claim. *See, e.g.*, *Oliveira v. Amoco Oil Co.*, 776 N.E.2d 151, 155 (Ill. 2002).
[96] Damage discovery has been stayed. Plaintiffs intend to provide a damage model at class certification that can establish the amount of the overcharge for class members.

as opposed to omission of material fact. Def. Mem. SJ at 20. Fraudulent concealment also

includes claims based upon the omission of material information regarding which the defendant

had a duty to disclose. *See, e.g.*, *Benjamin v. CitiMortgage, Inc.*, 2013 WL 1891284, at *4 (S.D.

Fla. May 6, 2013); *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 595 (Ill. 1996). New York

requires a seller to disclose material information that is in the seller's exclusive possession.

*Oswego Laborers' Local 214 Pension Fund*, 647 N.E.2d at 745. California and Texas require

disclosure where the seller has exclusive knowledge, or where a partial representation was made,

or if a safety issue exists. *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 995-96 (N.D.

Cal. 2013); *Hoffman v. AmericaHomeKey, Inc.*, 23 F. Supp. 3d 734, 744-45 (N.D. Tex. 2014).

Again, Defendant had exclusive knowledge of fake certificates, failed inspections and audits, and

high formaldehyde test results. Defendant cannot obtain summary judgment on the common law

fraudulent concealment claims for the same reasons as the consumer fraud counts.

**E.      Extensive Evidence Shows That Defendant Did Not Comply with the ATCM, Supporting All of Plaintiffs' Claims**

All of the claims discussed above are triable disputes whether or not the jury concludes

that Defendant's flooring contradicted the labeling on the box claiming CARB compliance for

formaldehyde. Those fraud claims—and additional counts—may also proceed based on the

ample evidence that Defendant's flooring was not in fact CARB compliant. The Plaintiffs can

demonstrate non-compliance based upon the failure of the Defendant to exercise the "reasonable

prudent precautions" required by a reseller with respect to its suppliers. In addition, compliance

testing done on Defendant's Chinese laminates, including testing done on Plaintiffs' flooring by

third-party certifiers, shows emissions levels far above CARB's limits. This evidence supports

all of Plaintiffs' claims, including implied warranty and the Magnusson Moss Warranty Act

("MMWA") (Counts IX and X), the Parnellas' Texas DTPA claim (Count VII), and the Brandts'

negligent misrepresentation claim (Count XI).

         *1.*        *Defendant Failed to Exercise Reasonable Prudent Precautions*

California Code of Regulations provides, "Retailers must take reasonable prudent precautions to ensure that the composite wood products and composite wood products contained in finished goods that they purchase comply with the emission standards specified in section 93120.2(a)."[97] "Reasonable prudent precautions" includes, "at a minimum, instructing each supplier that the goods they supply to the retailer must comply with the applicable emission standards, and obtaining written documentation from each supplier that this is so."[98] Here, a reasonable jury could find that the Defendant failed to properly instruct its Chinese suppliers, and, in fact, condoned the suppliers' disregard for CARB's standards. For example:



- ██████████████████████████████████████████████ ███████████████ Tab 3, PX 77; Tab 4, PX 78; Tab 7, PX 79; Tab 6, Wait Ex. 11 at 3.

- ██████████████████████████████████████████████. Tab 14, PX 84; Tab 18, PX 86; Tab 16, PX 87; Tab 19, PX 88; Tab 17, PX 89; Tab 20, PX 91.

- ██████████████████████████████████████████████ ███████████████████████████████████Tab 33, PX 103; Tab 34, PX 104.

████████████████████████████████████Tab 23, PX 94.

Defendant tries to minimize CARB's investigation by focusing on only nine individual purchases and suggesting that is incapable of reflecting upon whether any of the Plaintiffs' flooring was compliant. Def. Mem. SJ at 3. But Defendant treated all of the Chinese-made laminates

---

[97] Cal. Code Regs. tit. 17, § 93120.8(b).
[98] *Id.* (emphasis added).

similarly. It pulled all of the Chinese laminates in May of 2015, without regard to different vendors or past CARB inspections, because ███████████████████████████████Tab 46, PX 96; Tab 47, PX 140█ CARB's press release stated that Defendant failed to exercise reasonable prudent precautions, Tab 50, PX 146, ███████████████████████████████████

████████████████████████████████████████████████████████████████

███████Tab 51, Wait. Ex. 14. Finally, Defendant agreed to never sell any of the Chinese laminates as part of its resolution of the CPSC's investigation. Def. Mem. SJ at 29 n.6. The reasonable inference to draw from this evidence is that all of Defendant's Chinese laminates, including that purchased by the Plaintiffs, are not CARB compliant.

    2.    *Plaintiffs' Test Results Also Show CARB Non-Compliance*

Under the ATCM, it is unlawful to sell finished goods containing MDF that emits more than 0.11 ppm of formaldehyde. Cal. Code Regs. tit. 17, § 93120.8(a). All retailers must comply with the requirements of § 93120.2(a) for all composite wood products and finished goods containing these materials that are offered for sale in California. An MDF core is non-compliant if it is tested at any time after it is manufactured, using the compliance test method specified in § 93120.9(a) and found to exceed the applicable emission standard. *Id.* § 93120.2(a)(3)-(5). While the enforcement test method is to be "conducted by ARB" the compliance method contains no restriction on who may conduct the test other than that it must be conducted using a specified method and verified by third party certification. *Cf. id.* § 93120.9(b) (enforcement method) *with id.* § 93120.9(a) (compliance method).

The test results for the Plaintiffs all exceeded .11 ppm. *See* Part II, ¶¶ 30-43, *supra.* The results ranged from 40% over (the Washingtons) to nearly 300% (the Burkes). Benchmark, who tested the laminate flooring of the Ronquillos and the Washingtons, is owned by Travis Snapp – who Defendant offers as an expert███████████████████████████████████████

█████████████████████████████████████ *See, e.g.*, Tab 15, PX 44, and Tab 1,

PX 152. *See also* Tab 54, Expert Report of F. Offermann at 90.

That Defendant's Chinese laminates repeatedly exceed CARB 2 limits should not be

surprising███████████████████████████████████████████████

████████████████████████████Tab 32, PX 102; Tab 6, Wait Ex. 11 at 6. A

reasonable jury can review both the testing results and the documentary evidence to conclude

that neither the Defendant's conduct nor Plaintiffs' flooring was CARB compliant.

3.    *Because Plaintiffs' Flooring Was Not Compliant with CARB Regulations, the California Plaintiffs Can Proceed with UCL "Unlawful Prong" Claims*

The UCL proscribes conduct that is unlawful. Cal. Bus. & Prof. Code § 17200. Plaintiffs

can establish this through their CLRA claims. The California Plaintiffs also have a triable dispute

that the Defendant's flooring could not lawfully be sold in California, because it did not meet

CARB standards. Defendant argues that only CARB can use the deconstructive preparation to

enforce CARB regulations, and only CARB can determine an ATCM violation. Def. Mem. SJ at

12-13. Defendant essentially repackages its argument from its dismissal motion that only CARB

may do enforcement testing. *See* ECF No. 598 at 8; ECF No. 644 at 6-7. This Court rejected that

argument. ECF No. 722 at 12-13. The only new aspect is the appearance of an FAQ on CARB's

website, and snippets of testimony of a "CARB scientist." Def. Mem. SJ at 3, Def. Ex. 2.[99]

This new evidence does not support a new decision by the Court. Mr. Baker testified that

the FAQ merely means, "we are the only entity *that can issue a violation* for a composite wood

product material contained in a finished good." *Id.* at 52:2-4. (emphasis added). Mr. Baker did

---

[99] Thus, at the same time Defendant demands that the Court defer to an FAQ and a non-policy person at CARB for decisions on the scope of the ATCM, Defendant tells this Court to disregard CARB's SOP on the deconstruction preparation to determine ATCM violations as junk science unfit for a courtroom. *Cf.* Def. Mem. in Support of Excluding Expert Reports as Related to Deconstructive Testing, ECF No. 1006.

not testify that a TPC could not assess compliance with CARB's formaldehyde limits; he merely

noted a .11 ppm finding might not suffice for non-compliance:

> So can a third party certifier determine whether or not [flooring] was compliant or
> whether we would think it was compliant? If it's just slightly above the emission
> standard, it may be in that gray area. If it's way above, or in the highway
> patrolman radar gun situation, if it's 75 in the 65 zone, then all the radar guns will
> agree, you're definitely in excess of the speed limit. They can't issue a ticket for
> 66, but they can certainly issue it well above 10 miles above the standard this is
> very similar.
>
> So if it's -- if it's within, again, the small chamber test method has uncertainty of
> within one -- .01 or .02 parts per million, so if a third party certifier were to
> deconstruct this or to prepare it, test it in a small chamber, and the result was very
> close to the standard, but maybe a tiny bit above it, they might be slightly cautious,
> but not overly alarmed. If it came back drastically over the emission standard, then
> they would tell -- ***I would hope the third party certifier would tell their client they
> didn't use compliant platform material to make this piece of flooring***.

Tab 30, Baker Dep. at 50:15-51:13 (emphasis added). While CARB has not been willing to

disclose the exact level it would use to determine a violation, the formaldehyde levels here are

not a "tiny bit above" .11 ppm, but 40%-300% over.

Defendant argues that allowing Plaintiffs to proceed on the UCL unlawful prong would

defy California law by grafting a private right of action onto the ATCM. Def. Mem. SJ at 13. Not

true. Under California law, "virtually any law or regulation—federal or state, statutory or

common law—can serve as a predicate for a [UCL] 'unlawful' violation." *Paulus v. Bob Lynch*

*Ford, Inc.*, 43 Cal. Rptr. 3d 148, 152 (Cal. Ct. App. 2006). *Accord Cel-Tech Commc'ns, Inc. v.*

*L.A. Cellular Tel. Co.*, 973 P.2d 527, 540 (Cal. 1999) ("By proscribing 'any unlawful' business

practice, section 17200 borrows violations of other laws and treats them as unlawful practices

that the [UCL] makes independently actionable.") (citation omitted). Defendant cites to no

statutory language or legislative history indicating that California never intended to permit

violations of the ATCM to support a UCL claim. That the ATCM is a "highly complex and

technical state scheme," Def. Mem. SJ at 13, is not enough – so is the Clean Water Act, but

violating it may support a UCL claim. *Citizens for a Better Env't v. Union Oil*, 996 F. Supp. 934

(N.D. Cal. 1997). Defendant's argument lacks merit.

4.     *Defendant Cannot Show Entitlement to Summary Judgment on Declaratory Relief*

Defendant argues for summary judgment on declaratory relief claims because only

CARB can determine ATCM compliance. Def. Mem SJ at 28. This argument has been addressed

above. *See* Part IV(E)(3). Moreover, CARB already has passed judgment on Defendant's

Chinese laminates, and declared them as non-compliant. Tab 39, PX 37; Tab 45, PX 100; Tab

50, PX 146. Defendant accepted the deconstructive SOP as part of its settlement with CARB.

Def. Ex. 3 (Settlement) at 5, ¶ 6. The declaratory relief may also be moot as Defendant has

agreed not sell the Chinese laminate. Def. Mem. SJ at 29 n.6. Nevertheless, Defendant has not

shown they are entitled to summary judgment on Count XII.

5.     *Because the Flooring Did Not Comport with Its Labeling, a Reasonable Jury Can Find Defendant Liable on the Implied Warranty, MMWA, and DTPA Claims*

Defendant seeks summary judgment on the two types of MMWA claims available to

Plaintiffs – breach of a written warranty, and the implied warranty that incorporates state law.

Def. Mem. SJ at 25-27. Plaintiffs are not advancing a claim premised upon a written warranty for

the reasons noted by Defendant. Def. Mem. SJ at 27 n.5. However, Plaintiffs may proceed on the

implied warranty claims under state law and the MMWA claims incorporating them.

Defendant's implied warranty argument focuses on the wrong section of the U.C.C.

Defendant argues that because none of the Plaintiffs testified that their floor failed to function as

a floor, and was therefore fit for its ordinary use, there can be no breach of warranty. Def. Mem.

SJ at 24-25. But Defendant cites to sections of the statutes and U.C.C. that only discuss fitness

for ordinary use. Defendant ignores the specific provision cited by Plaintiffs that focus on the

product comporting with labeling. FARC ¶ 244. U.C.C. § 2-314(2)(f) defines unmerchantable as

not complying with labeling, not that it fails its ordinary use. *See, e.g.*, *Native Am. Arts, Inc. v. Bundy-Howard, Inc.*, 2002 WL 1488861, at *2 (N.D. Ill. July 11, 2002) (permitting breach of implied warranty claim against sellers based on label suggesting products were made by Native Americans; fitness of product for is ordinary use not relevant).

The label here asserted, "CARB No. [ ] California 93120 Phase 2 Compliant for Formaldehyde." Def. Mem. SJ at 26. Plaintiffs can present the evidence recited above showing that floor did not comport with CARB 2 as to formaldehyde. Plaintiffs present a triable dispute on Counts IX and X. Also, the Parnellas' DTPA claim is based upon § 17.50(a)(2), which treats a breach of the implied warranty as a deceptive practice. Count VII should also advance.[100]

Defendant takes a tentative stab at a disclaimer defense to the implied warranty claims. First, Defendant notes that, "like all plaintiffs, Lila Washington's invoice included a warranty disclaimer." Def. Mem. SJ at 5, Ex. 6. But Defendant does not spell out the language. Later, buried in a footnote, Defendant states that "the warranty disclaimer on the invoice to which all plaintiffs agreed **would bar some** or all plaintiffs warranty claims." Def. Mem. SJ at 27 n.5. Defendant provides no case citations for this point, nor identifies which plaintiffs might have their warranty claims disclaimed. Defendant has failed to meet their burden under Rule 56 to establish the absence of a genuine dispute as to a disclaimer, waiving the argument.

In any event, the disclaimer on Ms. Washington's invoice referenced by Defendant states as follows: "All other warranties are disclaimed, except to the extent that such warranties cannot be validly disclaimed under applicable law." Def. Ex. 6. This language cannot disclaim the

---

[100] This implied warranty claim does not require proof of reliance, so Defendant's assertions that no Plaintiff saw or understood the CARB label is irrelevant. The Law of Prod. Warranties, § 5:11 (Dec. 2014); 1 White & Summers, Uniform Commercial Code, § 9-13 at 523 (5th ed.) (U.C.C. § 2-314(2)(f) "is simply a restatement of the express warranty under § 2-313, although there is no necessity of showing any reliance or other 'basis of the bargain' when the buyer uses the implied warranty theory."). *See also Hauter v. Zogarts*, 534 P.2d 377 (Cal. 1975).

implied warranty of merchantability, because it fails to mention that warranty by name. *See, e.g.*, U.C.C. § 2-316(2) ("[T]o exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability….").[101]

> 6. *Because Her Flooring Did Not Comport with the Representation, the Brandt's Negligent Misrepresentation Claim May Proceed to Trial*

Defendant argues that all of the Plaintiffs "other than, arguably, the Brandts (Florida)", lack standing. Def. Mem. SJ at 14. They note her testimony regarding reliance on the CARB representations, but seek to challenge her credibility. Def. Mem. SJ at 8, ¶ 24. But Ms. Brandt's credibility is an issue for the jury. *Anderson*, 477 U.S. at 255.

Defendant also argues the absence of evidence of CARB non-compliance dooms the Brandts' negligent misrepresentation claim. Def. Mem. SJ at 24. However, as noted above, ample evidence supports a triable dispute as to whether Defendant's flooring complied with CARB.

## V.    CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment should be denied.

DATED:  August 22, 2016                      Respectfully submitted,

                                             */s/ Steven J. Toll*
                                             Steven J. Toll (VSB No. 15300)
                                             E-mail: stoll@cohenmilstein.com
                                             Douglas J. McNamara (*Pro Hac Vice*)
                                             E-mail: dmcnamara@cohenmilstein.com
                                             Cohen Milstein Sellers & Toll, PLLC
                                             1100 New York Ave NW, Suite 500
                                             Washington, DC 20005
                                             202.408.4600 (Telephone)

---

[101] The pertinent states follow this rule. *Two Rivers Co. v. Curtiss Breeding Serv.*, 624 F.2d 1242 (5th Cir. 1980) (applying Texas law); *Carbo Indus., Inc. v. Becker Chevrolet, Inc.*, 112 A.D.2d 336 (N.Y. App. Div. 1985); *Schultz v. Jackson*, 385 N.E.2d 162 (Ill. App. Ct. 1979); *McCormick Machinery, Inc. v. Julian E. Johnson & Sons, Inc.*, 523 So.2d 651 (Fla. Dist. Ct. App.1988).

202.408.4699 (Facsimile)

_/s/ Steve W. Berman_ _____
Steve W. Berman (_Pro Hac Vice_)
E-mail: steve@hbsslaw.com
Ari Y. Brown (_Pro Hac Vice_)
E-mail: ari@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA  98101
206.623.7292 (Telephone)
206.623.0594 (Facsimile)

_/s/ Nancy Fineman_ _____
Nancy Fineman (_Pro Hac Vice_)
E-mail: nfineman@cpmlegal.com
Matthew K. Edling (_Pro Hac Vice_)
E-mail: medling@cpmlegal.com
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
650.697.6000 (Telephone)
650.697.0577 (Facsimile)

_Plaintiffs' Co-Lead Counsel_

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 22, 2016, a true and correct copy of the foregoing was filed electronically with the clerk of this Court using the CM/ECF system, and in accordance with Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A. This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record in this matter who has consented to electronic service.

*/s/ Nancy Fineman*
Nancy Fineman (*Pro Hac Vice*)
E-mail: nfineman@cpmlegal.com
Matthew K. Edling (*Pro Hac Vice*)
E-mail: medling@cpmlegal.com
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
650.697.6000 (Telephone)
650.697.0577 (Facsimile)
