**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION,** | **MDL No. l:15-md-02627 (AJT/TRJ)** |
| **This Document Relates to ALL Cases** | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT LUMBER LIQUIDATORS, INC.'S MOTION TO AMEND STIPULATED PROTECTIVE ORDER FOR PRESERVATION OF EVIDENCE**

## I. INTRODUCTION

Defendant provided a bare-bones motion requesting that the Court permit them to destroy millions of square feet of Chinese-laminate flooring in two weeks. Defendant had pulled this flooring from the market in May of 2015, and has been storing it in Tennessee. The meet and confer process—which mostly post-dated the motion—demonstrates that the Defendant is bearing considerable burden, which can justify an alteration of the preservation order. The Formaldehyde Plaintiffs oppose the motion, only so far as to address the form of the modification, and the date of its institution. Plaintiffs seek to be heard on these points at the hearing, originally set for July 14, 2017, but which date has been vacated.

## II. BACKGROUND

In August 2015, this Court entered Pre-Trial Order No. 3, the "Stipulated Order for Preservation of Evidence" ("Preservation Order"). ECF No. 498. The Preservation Order was entered "[t]o reduce the costs and burdens of preservation and to ensure proper evidence is preserved . . ." *Id*. at 1. It required, among other things, that Defendant Lumber Liquidators "preserve and not destroy until plaintiffs' experts have had a reasonable opportunity to inspect or test, any Chinese-made laminated flooring that is currently warehoused or stored by Lumber Liquidators." *Id*. at 3.

During the status conference on June 12, 2017, Defendant Lumber Liquidators informed the Court (and Plaintiffs) for the first time that it wanted to destroy the Chinese-manufactured laminate flooring being stored in a warehouse in Tennessee. Doing so would require modification of the Preservation Order entered in this case, and Magistrate Judge Jones set a hearing for July 14, 2017 to address this issue, among others, if the parties could not reach

agreement. At the July 11, 2017 Status Conference, Magistrate Judge Jones vacated this July 14 date.

Defendant contacted Plaintiffs via email on June 15, 2017 with a proposed motion to amend the Preservation Order, and Plaintiffs asked to arrange a phone call to discuss further. During this phone call, Plaintiffs asked Defendant to identify, among other things, the burden to continue storing the relevant flooring, and whether and to what extent Defendant could match plaintiffs' purchases to the lots/batches of pulled flooring in storage.

On June 30, 2017, without responding to Plaintiffs' questions, Defendant filed its Motion to Amend Stipulated Order for Preservation of Evidence (the "Motion"). In its Motion, Defendant asserted that because fact discovery is closed in the MDL, it should be permitted "to destroy any remaining Chinese-made laminated flooring pursuant to its agreement with the Consumer Product Safety Commission." ECF No. 1137 at 2. The motion failed to contain facts demonstrating the costs of retaining the flooring or other evidence showing burden.[1]

Plaintiffs were surprised by the Motion, as they believed the meet and confer process was not completed. Plaintiffs' counsel contacted defense counsel who disclosed the burden Defendant faced in keeping the pulled flooring in the Tennessee warehouse (a $1.2 million annual lease). Plaintiffs also learned from defense counsel that the issue was not merely renewing a lease, but relocating the flooring to a new location – which also carried a heavy financial burden ($600,000).

[1] On the same day Defendant filed the Motion, Defendant filed a Motion to Amend Stipulated Order for Preservation of Evidence and Testing Protocol in the Durability case. Case 1:16-md-02743-AJT-TRJ, ECF No. 81. Defendant attached as an exhibit to that filing a 259-page, non-searchable PDF inventory of the Chinese-manufactured laminate flooring being stored in its Tennessee facility that was provided to the Durability Plaintiffs in March 2017. ECF No. 82-2. This information was never provided to Lead Counsel for the Formaldehyde Plaintiffs.

On the same call, Defendant represented that it was not possible to match a customer invoice to a purchase order. Defendant repeated this representation to the Court during the July 11, 2017 status conference. Following the status conference, Defendant contacted Plaintiffs to "correct/clarify" this representation and confirm that, "[i]f a customer still has the box [with a P.O. number] . . . a P.O. number can potentially be matched to the inventory list provided." *See*, **Ex. 1,** July 12, 2017 email from D. Flannery. Upon receiving the motion, Lead Counsel reached out to MDL plaintiffs' counsel for their views and requests on how to handle this matter, and have heard diverse opinions on how the Court should proceed.

## III. STANDARD OF REVIEW

"Federal courts have long recognized a duty of the parties to preserve relevant evidence for litigation." *AAB Joint Venture v. U.S.*, 75 Fed. Cl. 432, 440 (Fed. Cl. 2007). The broad scope of evidence preservation requires "taking reasonable steps to prevent the partial or full destruction, alteration, testing, deletion, shredding, incineration, wiping, relocation, migration, theft, or mutation" of discoverable items. *RMS Servs., USA, Inc. v. Houston*, No. 06-15585, 2007 WL 1058923, at *1, 2 (E.D. Mich. 2007).

Defendant does not articulate the standard for modifying a preservation order, instead referring to the fact that "[a] court may modify a *protective* order for good cause." ECF No. 1137 at 2 (emphasis added). Plaintiffs respectfully assert that it is more appropriate for this Court to consider the same factors weighed in entering an initial preservation order in deciding whether modification of that order is appropriate. Factors to be considered in a preservation motion include:

> (1) the level of concern the court has for the continuing existence and maintenance of the evidence; (2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and (3) the capability of an individual,

> entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition, or contents, but also the physical, spatial and financial burdens created by ordering the evidence preservation.

*In re: Am. Med. Sys., Inc. Pelvic Repair Sys. Prod. Liab. Litig.*, MDL No. 2325, 2016 WL 6666890, at *4 (S.D.W.Va. Nov. 10, 2016); *Capricorn Power Co. v. Siemens Westinghouse Power Corp.*, 220 F.R.D. 429, 433-34 (W.D. Pa. 2004). Though this is a balancing test, "one factor may be so crucial that the presence of just that one factor may provide a sufficient justification for an order of preservation." *Capricorn Power Co.*, 220 F.R.D. at 435.

## IV. ARGUMENT

### A. Defendant's Assertion About the Close of Fact Discovery Does Not Support its Demand to Swiftly Destroy Potentially Relevant Evidence.

Defendant concedes that "[l]itigants generally have a duty to preserve relevant evidence," but asserts that it can demonstrate good cause to modify the protective order to permit destruction of this evidence because of the "significant burden" of continuing to preserve the flooring and "the lack of countervailing prejudice to Plaintiffs . . ." given that discovery in the litigation is closed. ECF No. 1137 at 3.

First, it does not appear that discovery has been completed in the personal injury actions. While discovery is closed vis-à-vis the economic loss claims in the First Amended Representative Complaint ("FARC") (which covers five states and other states similarly situated), since Pre-Trial Order No. 5 (ECF No. 528), this litigation has proceeded with a representative complaint that does not include personal injury claims. Pre-Trial Order No. 7, which established the discovery schedule in this action, related to Pre-Trial Order No. 5, and did not include personal injury claims. ECF No. 603. This Court specifically stayed a motion to strike personal injury claims made at the class level in October 2015, placing litigation of those

claims on a separate track from those in the FARC. ECF No. 592. A fair reading of this Court's orders supports that the existing personal injury claimants are not foreclosed from seeking to inspect the flooring to determine whether and how much flooring they would like to take to be tested.

Also, other consumer fraud plaintiffs have asserted that they wish to preserve the flooring in case they need it to prove their claims. These plaintiffs want the ability to use the preserved flooring if the cases are remanded to establish their claims. They, too, wish an opportunity to secure some of the pulled flooring that the present request by Defendant would not allow. Those plaintiffs do not ask that Defendant preserve all of the pulled flooring, but either (1) that they be provided an opportunity to inspect the batches/lots relevant to their claims to determine what, if any, they will test or (2) that they be permitted to take possession of a representative sample agreed-upon by the parties at their own expense.

Under either scenario, once the inspection and removal is complete, the rest of the Chinese-manufactured laminate flooring could be destroyed. Defendant has represented that matching permitting such inspection and segregation is possible. Plaintiffs are entitled to at least the opportunity to inspect this relevant evidence under the cases Defendant itself cites.

**B. Destroying the Evidence Prior to Inspection Would Cause Irreparable Harm.**

In addition to being improper under precedent Defendant itself cites, failure to permit Plaintiffs to inspect the relevant flooring before it is destroyed would cause irreparable harm. Here, this factor is "so crucial that [its] presence . . . provide[s] a sufficient justification" to warrant protection under the existing Preservation Order. *Capricorn Power Co.*, 220 F.R.D. at 435.

In considering what constitutes irreparable harm, courts have required that a party demonstrate "a showing . . . beyond the risk of spoliation of evidence that exists in all cases." *Artec Grp., Inc. v. Klimov*, No. 15-cv-03449-RMW, 2016 WL 4474614, at *3 (N.D. Cal. Aug. 25, 2016). Such courts have noted that, in the prototypical case, "[if] defendants fail to comply with their preservation obligations, plaintiff may pursue sanctions or other remedies." *Id*. Courts have also found irreparable harm where the "entire case is premised around" an item of evidence and therefore "preservation of the evidence is critical." *Zaccone v. Ford Motor Co.*, No. 2:15-cv-287-FtM-38CM, 2016 WL 2744837, at *2 (M.D. Fla. May 11, 2016) (granting a preservation order regarding a vehicle in a case where plaintiff claimed the vehicle's airbags were faulty).

Here, Defendant has specifically asked the Court for permission to destroy evidence previously deemed so important to the litigation that it became the subject of a rarely-granted preservation order. If this evidence is destroyed, Plaintiffs will have no ability to pursue sanctions or other remedies. Nor will plaintiffs alleging claims different from those in the Representative Complaint, or aiming to prove those claims in a manner different from those in the Representative Complaint. For example, the personal injury claimants may seek to show high levels of formaldehyde in flooring manufactured on the same date, and from the same seller, to support their claims that Defendant's products was the source of elevated formaldehyde levels in their home. Without sufficient opportunity to identify and test the pulled flooring, those plaintiffs may suffer irreparable harm.

Even if the relevant factors regarding the entry and continued enforcement of preservation orders are considered together, Defendant cannot demonstrate that its burden (in essence, its "good cause" argument) outweighs the possibility of irreparable harm to the personal injury and other claimants' request to preserve material, for a *de minimus* period of time, which

are the crux of their claims. Defendant's rush to destroy all Chinese-manufactured laminate flooring effective August 1, 2017 is unjustified, particularly when considered against the importance of the evidence and the viable alternatives articulated herein. Furthermore, the Defendant has known of the circumstances surrounding its request for some time now. It could and should have given notice much sooner, which would have allowed these matters to be determined in a manner that could take account of these interests without the press of its suggested August 1 deadline.

**C. The Court Should Provide the Parties A Change to More Equitably and Carefully Dispense with the Pulled Flooring.**

While Plaintiffs are sympathetic to the costs involved in storing the Chinese-manufactured laminate flooring, Defendant has not articulated a need to amend the preservation order so as to permit destruction of the flooring upon the short schedule suggested. Plaintiffs seek an additional few weeks' delay so those plaintiffs that wish access to samples of similar flooring may make arrangements with Defendant to test or relocate at their own costs the pulled product. Plaintiffs ask that they be permitted thirty (30) days from the date of this Court's Order to inspect Defendant's inventory to determine if they want to collect any of the flooring samples and, if so, how much of the flooring they want to collect. This timeframe would leave plenty of time for Defendant to destroy the Chinese-manufactured flooring in storage before its lease expires. Plaintiffs propose two forms that this inspection and collection could take.

In the first scenario, Plaintiffs could inspect flooring with the same make, manufacturer, and production date as the flooring they purchased to determine whether and how much material they would like to remove for potential testing. Defendant has itself represented that such matching is possible in at least some circumstances and, given the evolving nature of Defendant's position and Plaintiffs' own research, Plaintiffs have reason to believe matching

may be possible in additional circumstances as well. While the parties may be able to informally resolve these issues, a hearing will probably be necessary to clarify what exactly can be done in terms of matching and in what timeframe, but that the purchases can be matched to inventory is not disputed. Plaintiffs would then remove any flooring it wishes to test at their own expense and provide for its continued storage as needed.

In the second scenario, Plaintiffs could be provided a searchable index of the Chinese-manufactured laminate inventory stored by Defendant and meet and confer with Defendant to reach agreement regarding what would constitute a small but representative sample of the flooring. At least one Plaintiffs' counsel has offered to ship and store the agreed-upon representative sample of the flooring at their own expense insofar as these samples were sold in or destined for sale in California.[2]

But regardless of whether the Court might approve either of these exact these protocols, the burden is on Defendant, as the party seeking to amend the Preservation Order, to demonstrate why inspection, with a clear deadline, could not be made before destroying all of its stored Chinese-made laminate flooring. Defendant cannot meet that burden. Destroying all the stored flooring is not a proportionate solution to the burden Defendant asserts. Moreover, it would be improper under precedent Defendant itself cites requiring plaintiffs to have a reasonable opportunity to inspect evidence, and the relief Defendant requests could cause irreparable harm to a number of plaintiffs. Plaintiffs, therefore, propose that if the Court is inclined to modify the Preservation Order, it order the interim step of permitting the inspection described above and the removal of any materials sought to be tested by Plaintiffs before the flooring is destroyed.

[2] To the extent it is not possible to trace products by where they were sold or intended to be offered for sale, Plaintiffs would meet and confer with Defendant regarding the preservation of representative samples of the pulled flooring based on mills and production date.

## V. CONCLUSION

For the reasons above, Plaintiffs respectfully request that the Court deny the request to modify the Preservation Order to the extent it seeks to permit destruction of all Chinese-manufactured laminate flooring without providing Plaintiffs time to inspect and, if necessary, segregate for testing, certain batches/lots relevant to their claims. Following the inspection, Plaintiffs should be entitled to remove any batches/lots they desire for testing.

DATED: July 14, 2017

Respectfully submitted,

*/s/ Steven J. Toll*
Steven J. Toll (VSB No. 15300)
E-mail: stoll@cohenmilstein.com
Douglas J. McNamara (*Pro Hac Vice*)
E-mail: dmcnamara@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
202.408.4600 (Telephone)
202.408.4699 (Facsimile)

*Plaintiffs' Co-Lead Counsel*

*/s/ Steve W. Berman*
Steve W. Berman (*Pro Hac Vice*)
E-mail: steve@hbsslaw.com
Robert F. Lopez (*Pro Hac Vice*)
E-mail: robl@hbsslaw.com
Hagens Berman Sobol Shapiro LLP
1918 Eighth Avenue, Suite 3300
Seattle, WA 98101
206.623.7292 (Telephone)
206.623.0594 (Facsimile)

*Plaintiffs' Co-Lead Counsel*

*/s/ Nancy Fineman*
Nancy Fineman (*Pro Hac Vice*)
E-mail: nfineman@cpmlegal.com
Alexander Barnett (*Pro Hac Vice*)
E-mail: abarnett@cpmlegal.com

Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
650.697.6000 (Telephone)
650.697.0577 (Facsimile)

*Plaintiffs' Co-Lead Counsel*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 14, 2017, a true and correct copy of the foregoing was filed electronically with the clerk of this Court using the CM/ECF system, and in accordance with Local Rules and the procedures adopted in the Initial Order and Pretrial Order No. 1A. This filing will cause a copy of the same to be served, via a Notice of Electronic Filing, upon counsel of record in this matter who has consented to electronic service.

*/s/ Steven J. Toll*
Steven J. Toll (VSB No. 15300)
E-mail: stoll@cohenmilstein.com
Cohen Milstein Sellers & Toll, PLLC
1100 New York Ave NW, Suite 500
Washington, DC 20005
202.408.4600 (Telephone)
202.408.4699 (Facsimile)