**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 20-2036**

---

IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION (1:15-md-02627-AJT-TRJ)

IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING DURABILITY MARKETING AND SALES PRACTICES LITIGATION (1:16-md-02743-AJT-TRJ)

----------------------------------------------

DIANA CANTU-GUERRERO,

Party-in-Interest – Appellant,

v.

LUMBER LIQUIDATORS, INC., a Delaware corporation,

Defendant – Appellee,

and

LAURA WASHINGTON, LILA WASHINGTON, MARIA RONQUILLO, ROMUALDO RONQUILLO, JOSEPH MICHAEL BALERO, RYAN BRANDT, KRISTIN BRANDT, DEVIN CLOUDEN, SARA CLOUDEN, KEVIN PARNELLA, SHAWN BURKE, and TANYA BURKE, on behalf of themselves and all others similarly situated,

Formaldehyde MDL Plaintiffs – Appellees,

and

ERIN FLOREZ, JIM MOYLEN, KELLY RYAN, KAREN HOTALING, and LOGAN PEREL, on behalf of themselves and all others similarly situated,

Durability MDL Plaintiffs – Appellees.

**No. 20-2037**

IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING PRODUCTS MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION (1:15-md-02627-AJT-TRJ)

IN RE: LUMBER LIQUIDATORS CHINESE-MANUFACTURED FLOORING DURABILITY MARKETING AND SALES PRACTICES LITIGATION (1:16-md--02743-AJT-TRJ)

----------------------------------------------

BRICE M. JOHNSTON,

Party-in-Interest – Appellant,

v.

LUMBER LIQUIDATORS, INC., a Delaware Corporation,

Defendant – Appellee,

and

LAURA WASHINGTON, LILA WASHINGTON, MARIA RONQUILLO, ROMUALDO RONQUILLO, JOSEPH MICHAEL BALERO, RYAN BRANDT, KRISTIN BRANDT, DEVIN CLOUDEN, SARA CLOUDEN, KEVIN PARNELLA, JULIE PARNELLA, SHAWN BURKE, and TANYA BURKE, on behalf of themselves and all others similarly situated,

Formaldehyde MDL Plaintiffs – Appellees,

and

ERIN FLOREZ, JIM MOYLEN, KELLY RYAN, KAREN HOTALING, and LOGAN PEREL, on behalf of themselves and all others similarly situated,

Durability MDL Plaintiffs – Appellees.

---

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, Senior District Judge. (1:15-md-02627-AJT-MSN; 1:16-md-02743-AJT-MSN)

---

Argued: January 26, 2022 Decided: March 3, 2022

---

Before GREGORY, Chief Judge, and KING and HEYTENS, Circuit Judges.

---

Affirmed by published opinion. Judge King wrote the opinion, in which Chief Judge Gregory and Judge Heytens joined.

---

**ARGUED:** N. Albert Bacharach, Jr., N. ALBERT BACHARACH, JR. P.A., Gainesville, Florida, for Appellant Brice M. Johnston. Robert William Clore, BANDAS LAW FIRM, PC, Corpus Christi, Texas, for Appellant Diana Cantu-Guerrero. Steven J. Toll, COHEN MILSTEIN SELLERS & TOLL, PLLC, Washington, D.C., for Appellees. **ON BRIEF:** Alexander Robertson, IV, Mark Uyeno, ROBERTSON & ASSOCIATES, LLP, Westlake Village, California; Daniel K. Bryson, Patrick M. Wallace, MILBERG COLEMAN BRYSON PHILLIPS & GROSSMAN, PLLC, Raleigh, North Carolina, for Durability Plaintiffs-Appellees. Douglas J. McNamara, COHEN MILSTEIN SELLERS & TOLL, PLLC, Washington, D.C.; Steve W. Berman, Robert F. Lopez, HAGENS BERMAN SOBOL SHAPIRO LLP, Seattle, Washington; Niall McCarthy, Burlingame, California, Alexander E. Barnett, COTCHETT, PITRE & MCCARTHY, LLP, New York, New York, for Formaldehyde Plaintiffs-Appellees.

---

KING, Circuit Judge:

In these consolidated appeals, Diana Cantu-Guerrero and Brice M. Johnston (the "Objectors") challenge — for the second time — the district court's award of attorney's fees in association with a class-action settlement. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, No. 1:15-md-02627 (E.D. Va. Sept. 4, 2020), ECF No. 1898 (the "Attorney's Fees Order"). The underlying 2018 settlement resolved two multidistrict litigation ("MDL") proceedings related to Lumber Liquidators, Inc.'s sale of defective laminate flooring products, providing class members with $22 million in cash relief as well as store vouchers with a defined face value of $14 million. Following its approval of the settlement, the district court awarded the lawyers for the MDL class members ("Class Counsel") $10.08 million in attorney's fees, to be paid from the $22 million cash fund.

The Objectors first appealed to this Court in 2020, at which time we affirmed the district court's approval of the settlement. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Practices & Prods. Liab. Litig.*, 952 F.3d 471 (4th Cir. 2020). We vacated the court's order awarding attorney's fees, however, as the court had failed to calculate the attorney's fees in accord with the "coupon" settlement provisions of the Class Action Fairness Act of 2005 ("CAFA"). *Id.* at 488. On remand, the court applied those provisions and, in keeping with their terms, again awarded Class Counsel $10.08 million in fees. The Objectors now return for a second appeal, this time contesting the court's application of CAFA and its use of the lodestar method in calculating the attorney's fees. As explained herein, we are satisfied that the court correctly applied

the relevant CAFA settlement provisions and did not abuse its discretion in approving the $10.08 million fee award as reasonable. Accordingly, we affirm the Attorney's Fees Order.

I.

A.

1.

The claims at the root of these proceedings concerned Lumber Liquidators' sale of certain Chinese-manufactured laminate flooring products between 2009 and 2015. Purchasers of the flooring began filing suit against Lumber Liquidators in various state and federal courts in March 2015, principally alleging that the company had falsely represented that its flooring products complied with the California Air Resource Board's ("CARB") limits on formaldehyde emissions. The plaintiffs maintained that the flooring released unsafe levels of formaldehyde gas, and that short-term exposure to such gas exacerbated a variety of medical conditions and increased the plaintiffs' risks of developing cancer. In June 2015, the Judicial Panel on Multidistrict Litigation consolidated and transferred the pending federal actions to the Eastern District of Virginia, where they proceeded as an MDL under case number 1:15-md-02627 (the "Formaldehyde MDL"). Extensive discovery ensued and, in June 2017, the district court granted in part and denied in part Lumber Liquidators' motion for summary judgment in the Formaldehyde MDL.

In May 2015, following the initiation of the actions that became the Formaldehyde MDL, a similar proposed class action was filed against Lumber Liquidators in the Central District of California, alleging that the company had also falsely asserted that its flooring

products complied with certain industry durability standards. The district court in that proceeding ordered that all non-California plaintiffs refile their claims in their home federal districts, and those plaintiffs then filed suit against Lumber Liquidators in 31 separate district courts. In October 2016, those lawsuits were consolidated into a second MDL and transferred to the Eastern District of Virginia, where they proceeded under case number 1:16-md-02743 (the "Durability MDL").

2.

Following extensive negotiations, the parties in both MDLs agreed to settlement terms in October 2017. The parties thereafter submitted their proposed settlement agreement to the district court for preliminary approval in March 2018. The settlement agreement provided that, in exchange for the release of all claims by the MDL plaintiff class members, Lumber Liquidators would create a non-reversionary "common fund" consisting of (1) $22 million in cash and (2) "store-credit vouchers" for use in purchasing Lumber Liquidators products, with the vouchers having a defined face value of $14 million. *See* J.A. 407.16.[1]

The settlement agreement split the MDL plaintiffs into two classes: a "CARB1 Class" consisting of customers who purchased the Lumber Liquidators flooring between 2009 and 2011 and allegedly were exposed to lower formaldehyde emissions; and a

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in the prior consolidated *Lumber Liquidators* appeal, which Appendix was adopted in this matter on the motion of Objector Diana Cantu-Guerrero. Citations to "S.A. __" refer to the Supplemental Appendix filed by the parties in the current consolidated appeals, and that Appendix includes filings in the district court following our remand.

"CARB2/Durability Class" consisting of customers who purchased the flooring between 2011 and 2015 and allegedly suffered greater rates of exposure. *See* Attorney's Fees Order 4. Members of the CARB1 Class were entitled to claim a pro rata share of a $1 million cash fund, to be set aside from the larger $22 million fund. Members of the CARB2/Durability Class, meanwhile, could elect to receive either a share of the $22 million fund or a voucher representing a share of the $14 million in Lumber Liquidators store credit. According to calculations supplied to the district court by Class Counsel, class members electing to receive a cash award would collect approximately 5.5% of their original flooring purchase price, while those members opting to receive a voucher would recover approximately 59% of the average flooring purchase price.

Relative to the payment of Class Counsel's attorney's fees and costs, the settlement agreement authorized an award of fees of no more than 33.33% of the "Settlement Fund," which the settlement agreement defined as "a total of $22 million dollars in cash and $14 million dollars in Store-credit Vouchers." *See* J.A. 407.14, 407.33. Accordingly, the settlement permitted a maximum of $11,998,800 in attorney's fees, or one-third of $36 million. The settlement agreement further provided for payment of Class Counsel's costs and expenses, notice and administrative expenses, and twelve service awards of $5,000 payable to the representative plaintiffs in each MDL.

On June 15, 2018, the district court preliminarily approved the proposed settlement agreement, conditionally certified the two proposed classes, and approved the parties' notice plan. A court-appointed claims administrator oversaw that plan, which, by way of

emails, postcards, and online banner advertisements, reached approximately 73% of the class members with information about the terms of the settlement.

3.

On August 18, 2018, prior to the district court's final approval of the settlement agreement, Class Counsel moved for an award of attorney's fees, costs, and expenses. Class Counsel specifically requested fees in the amount of $11.16 million (representing a permissible 31% of the defined $36 million Settlement Fund), costs and expenses totalling $797,397.45, and the authorized $60,000 in service awards, all to be paid from the $22 million cash fund.

Following that request, CARB2/Durability Class members Diana Cantu-Guerrero and Brice M. Johnston — the Objectors herein and in the prior *Lumber Liquidators* appeal — filed various objections to the proposed settlement. Objector Johnston specifically contended that the Lumber Liquidators store vouchers qualified as "coupons" within the meaning of CAFA, and that CAFA "requires greater judicial scrutiny for the review of proposed class action settlements wherein the defendant provide[s] coupons in lieu of cash." *See* J.A. 653. According to Johnston, the vouchers were not worth their stated $14 million face value when held as "coupons," and should not be valued as such in calculating attorney's fees for Class Counsel.

The district court conducted a settlement approval hearing on October 3, 2018, and thereafter certified the proposed CARB1 and CARB2/Durability classes and approved the settlement agreement as fair, reasonable, and adequate. The court overruled objections to

the settlement's adequacy, but reserved ruling on the Objectors' claims pertaining to Class Counsel's attorney's fees request.

By its order of November 15, 2018, the district court awarded Class Counsel $10.08 million in attorney's fees, representing 28% of the Settlement Fund.[2] In so doing, the court employed the "percentage-of-recovery" method for calculating attorney's fees, determining that an award of 28% of the $36 million Settlement Fund was reasonable in view of the "satisfactory results" obtained for the plaintiff class members and also the "significant questions remain[ing] . . . that could have potentially foreclosed recovery for the classes." *See* J.A. 924-25.[3] The court also performed a "lodestar cross-check," concluding that the "aggregate lodestar" — calculated by multiplying 24,000 hours expended between the two MDLs by a billing rate of $524 per hour — was nearly $12.5 million in attorney's fees, more than the $11.16 million requested by Class Counsel. *Id.* at

---

[2] The court also awarded the requested $797,397.45 in costs and expenses, an additional $1,194,500 to pay the costs of notice and administration, and the authorized $60,000 in service awards to be paid to the representative MDL plaintiffs.

[3] Also known as the "percentage-of-fund" method, the percentage-of-recovery method for calculating attorney's fees involves awarding class counsel a variable percentage of the amount recovered for the class in a given case, and is often used in cases involving a common fund. *See In re Cendant Corp. PRIDES Litig.*, 243 F.3d 722, 732 & n.10 (3d Cir. 2001). Courts utilizing this method will consider numerous factors related to the outcome of the case, and here, the district court based its $10.08 million fee award on the litigation's complexity, Lumber Liquidators' poor financial condition, the low number of objections to the requested fee award, and Class Counsel's having "consistently performed to a high standard." *See* J.A. 7-14.

932.[4] While the court observed that the "lodestar cross-check supports the reasonableness of [Class Counsel's] requested fee award of 31%," it concluded that "a reasonable award of 25 to 30 percent is [more] appropriate," and that "[i]n light of the negative lodestar multiplier, an award toward the high end of this range is warranted." *Id.* at 933-34.

Considering the Objectors' CAFA contentions in its order, the district court explained that the Objectors insisted that the Lumber Liquidators vouchers were "coupons" under CAFA and that CAFA's provisions for calculating attorney's fees in a "coupon" settlement required "the portion of an attorney's fee award to class counsel that is attributable to the award of the coupons [to] be based on the value to class members of the coupons that are redeemed." *See* J.A. at 927 (quoting 28 U.S.C. § 1712(a)). The court overruled those objections, however, declining to apply CAFA's "coupon" settlement provisions because it deemed the vouchers to be "more akin to gift cards." *Id.* Following its approval of the settlement and award of attorney's fees, the court dismissed with prejudice all claims in the Formaldehyde and Durability MDLs.

[4] As relevant in these appeals, a "lodestar" in the attorney's fees context means "[a] reasonable amount of attorney's fees in a given case, usu[ally] calculated by multiplying a reasonable number of hours worked by the prevailing hourly rate in the community for similar work." *See* Black's Law Dictionary (11th ed. 2019); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 546, 551 (2010). The so-called "lodestar cross-check" involves comparing a percentage-of-recovery fee calculation to an approximated lodestar calculation, and is intended to ensure that the percentage-of-recovery award is reasonable. *See In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305-06 (3d Cir. 2005).

B.

The Objectors timely noted separate appeals from the district court's three orders approving the settlement agreement, awarding attorney's fees and costs, and dismissing the MDL claims. In their consolidated appeals, both Objectors contested the fairness and adequacy of the settlement, as well as the district court's use of the percentage-of-recovery method in calculating Class Counsel's attorney's fees without consulting CAFA's "coupon" settlement provisions. By our opinion of March 10, 2020, we determined that the district court did not abuse its discretion in ruling that the MDL settlement was "fair, reasonable, and adequate" as contemplated by Federal Rule of Civil Procedure 23(e)(2), and we therefore affirmed the court's approval of the settlement. *See Lumber Liquidators*, 952 F.3d at 483-84. We vacated the court's order awarding attorney's fees, however, as we concluded that the Lumber Liquidators vouchers are indeed "coupons" within the meaning of CAFA and that the court should have applied that statute's pertinent settlement provisions. *Id.* at 488.

In vacating the district court's attorney's fees order, we explained that, in enacting CAFA in 2005, Congress sought "to address abuses of the class action device," including the growth of "the coupon settlement, by which the defendant gives class members coupons or vouchers but pays the lawyers in cash." *See Lumber Liquidators*, 952 F.3d at 488 (quoting *Johnson v. Advance Am.*, 549 F.3d 932, 935 (4th Cir. 2008)). CAFA regulates "coupon settlements" in part by setting forth specific rules for use in calculating attorney's fees where a class action settlement includes "coupon" relief. Attorney's fees awards in "coupon settlements" were targeted by CAFA "out of a concern that such awards had been

regularly inflated by courts' unreasonable acceptance of the face value of nonmonetary relief . . . [where] lawyers for the class might 'reap the lion's share of the [settlement] benefits' while leaving the class members with little reward." *Id.* (quoting *In re Easysaver Rewards Litig.*, 906 F.3d 747, 755 (9th Cir. 2018)).

We concluded in *Lumber Liquidators* that, although CAFA does not define "coupon," the function of the Lumber Liquidators vouchers — requiring class members to do business with the company again in the future, and stopping short of permitting each class member to replace entirely their purchased flooring products — aligned with the sort of "coupon" relief that Congress sought to regulate by enacting the statute. *See* 952 F.3d at 488-91. Moreover, the vouchers fit within standards developed by other courts of appeals for classifying "coupons" — as well as contemporary dictionary definitions of that term — thereby undercutting the district court's determination that the vouchers were "more akin to gift cards." *See* J.A. 297.

Accordingly, we remanded for a recalculation of Class Counsel's attorney's fees consistent with the relevant CAFA provisions. In so doing, however, we observed that "if the district court were to award the same amount of attorney's fees after applying CAFA's 'coupon' settlement provisions, that would not render the Settlement Approval Order infirm in light of our deferential standard for reviewing such decisions." *See Lumber Liquidators*, 952 F.3d at 486. We also recognized that CAFA's "coupon" settlement provisions "have been universally criticized as 'badly drafted,'" and that on remand, the district court may find itself confronted with "competing interpretations" of those provisions, specifically with respect to whether they permit a court to use the lodestar

method in calculating attorney's fees where "coupon" relief is involved. *Id.* at 488, 491 n.14. We ultimately resolved that "our distinguished colleague on the district court will be permitted to decide [that] issue in the first instance." *Id.* at 491 n.14.

C.

1.

On remand, Class Counsel petitioned the district court for the same sum of attorney's fees previously awarded — $10.08 million. Class Counsel suggested that the court comply with the CAFA "coupon" settlement provisions simply by calculating fees using the lodestar method, rather than by using the percentage-of-recovery method and relying on either the $14 million face value or some redemption value of the Lumber Liquidators vouchers in performing a percentage calculation.

The Objectors opposed reinstatement of the same fee award, arguing that because Class Counsel had declined to submit any evidence of the expected rates at which class members would redeem the vouchers, the vouchers should be considered worthless and should not factor into a lodestar analysis in any regard.[5] According to the Objectors, considering the vouchers as part of the settlement in a lodestar fee calculation would "puff the value of the settlement with the face value of the coupons." *See* S.A. 899. The Objectors also asserted that the requested $10.08 million award was "untenable" because that amount exceeded the total recovery by the class members (at least relative to cash

[5] CAFA permits a district court to "receive expert testimony from a witness qualified to provide information on the actual value to the class members of the coupons that are redeemed." *See* 28 U.S.C. § 1712(d).

recovery, setting aside any value contained in the vouchers) and represented 45.8% of the $22 million cash settlement fund (once more disregarding the vouchers as making up any part of the defined $36 million Settlement Fund). *Id.* at 895.

2.

After considering the Objectors' contentions during two motions hearings in July and August 2020, the district court entered its 27-page Attorney's Fees Order on September 4, 2020. That Order awarded the requested $10.08 million in attorney's fees, alongside costs and expenses in the amount of $797,397.45, costs of notice and administration totalling $1,194,500, and $60,000 in service awards, precisely as the court's earlier order of November 18, 2018, had done. *See* Attorney's Fees Order 26.

In explaining its award, the district court first determined that, under CAFA's "coupon" settlement provisions, it was permitted to calculate attorney's fees using the lodestar method requested by Class Counsel. Those sections of the statute provide, in relevant part, as follows:

> (a) **Contingent Fees in Coupon Settlements**. — If a proposed settlement in a class action provides for a recovery of coupons to a class member, the portion of any attorney's fee award to class counsel that is attributable to the award of the coupons shall be based on the value to class members of the coupons that are redeemed.
>
> (b) **Other Attorney's Fee Awards in Coupon Settlements**. —
>
> > (1) In general. — If a proposed settlement in a class action provides for a recovery of coupons to class members, and a portion of the recovery of the coupons is not used to determine the attorney's fee to be paid to class counsel, any attorney's fee award shall be based upon the amount of time class counsel reasonably expended working on the action.

> (2) Court approval. — Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's fees.
>
> (c) **Attorney's Fee Awards Calculated on a Mixed Basis in Coupon Settlements**. — If a proposed settlement in a class action provides for an award of coupons to class members and also provides for equitable relief, including injunctive relief—
>
> (1) that portion of the attorney's fee to be paid to class counsel that is based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (a); and
>
> (2) that portion of the attorney's fee to be paid to class counsel that is not based upon a portion of the recovery of the coupons shall be calculated in accordance with subsection (b).

*See* 28 U.S.C. § 1712.

The district court resolved that, by virtue of its reference to "the amount of time class counsel reasonably expended working on the action," § 1712(b) "clearly authorizes" use of the lodestar method so long as "a portion of the recovery of the coupons is not used to determine the attorney's fee." *See* Attorney's Fees Order 9. And the court observed that its determination followed those of "courts [that] have concluded in settlements with a coupon component that class counsel may be compensated under the lodestar method." *Id.* at 9-10. Accordingly, the court declined to apply the percentage-of-recovery method provided for in § 1712(a), whereby attorney's fees must be calculated using the value of those "coupons" actually redeemed by customers. The court explained that it would use the lodestar method to calculate attorney's fees "with respect to [Class Counsel's] entire

effort in these MDLs, without attributing any value (face value or redemption value) to the coupon portion of the Settlement," while also "bear[ing] in mind the potential for abuse posed by coupon settlements." *Id.* at 10 (internal quotation marks omitted).

In applying the lodestar method, the district court adhered to our three-part standard governing that approach, which generally requires (1) calculating a lodestar figure by multiplying the number of hours worked by a reasonable billing rate; (2) deducting fees for hours worked on unsuccessful and unrelated claims; and (3) awarding a percentage of the remaining amount, in consideration of "the degree of success enjoyed by the plaintiff." *See* Attorney's Fees Order 10 (quoting *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013)). The court calculated the initial lodestar figure by multiplying Class Counsel's billing estimate of 24,000 hours expended by an average billing rate of $524 per hour, yielding an aggregate lodestar of nearly $12.2 million. Held in contrast to the requested fees of $10.08 million, that figure resulted in a negative multiplier of 0.82.[6] The court then rejected the Objectors' contentions that an award of $10.08 million was excessive in view of allegedly vague time entries and billing for clerical tasks.

Next, finding that the MDL plaintiffs' unsuccessful claims were not "inextricably intertwined" with the successful claims, the district court determined that no reduction in Class Counsel's lodestar was necessary. *See* Attorney's Fees Order 16-17. The court then

[6] Once a district court has calculated an initial lodestar figure, the court may increase or decrease that figure by using a "multiplier," which may be "derived from a number of factors, such as the benefit achieved for the class and the complexity of the case." *See* *Berry v. Schulman*, 807 F.3d 600, 617 n.9 (4th Cir. 2015) (internal quotation marks omitted).

scrutinized the "success obtained" by Class Counsel, approving of "the Settlement as a whole" as having provided meaningful alternate classes of relief in the form of cash awards or vouchers that could "subsidize a significant portion" of class members' losses in purchasing Lumber Liquidators flooring. *Id.* at 18. The court gave further consideration to Class Counsel having overcome various "legal and practical realities" — including Lumber Liquidators' poor financial situation — in constructing the settlement; the settlement's inclusion of "an effective notice program that reached a large percentage of prospective class members"; and this Court's approval of the terms of the settlement agreement as fair and adequate. *Id.* at 18-19 & n.8. In brief, the district court resolved that "given the degree of success obtained for the class . . . the lodestar award [of $10.08 million] (reduced by a negative multiplier of 0.82x) is appropriate." *Id.* at 18.

D.

Following the district court's entry of its Attorney's Fees Order, the Objectors timely noted these separate appeals contesting the court's application of the CAFA "coupon" settlement provisions and the lodestar fee calculation method. Those appeals have now been consolidated, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

II.

Notwithstanding the district court having abided by our request that it apply CAFA's "coupon" settlement provisions in recalculating Class Counsel's attorney's fees, the Objectors once again challenge the court's fee award. This time, they contend that the court misapplied the CAFA provisions and that the $10.08 million award represents an

excessive and unreasonable sum. The Objectors specifically argue that the court erred in three respects: (1) by failing to consider the redemption value of the Lumber Liquidators vouchers while assessing the "success obtained" during its lodestar analysis; (2) by awarding a fee exceeding the net cash sum received by the two MDL plaintiff classes; and (3) by awarding a fee supposedly violative of the settlement agreement's 33.33% cap on attorney's fees.

We review a district court's award of attorney's fees for an abuse of discretion. *See Berry v. Schulman*, 807 F.3d 600, 617 (4th Cir. 2015) (explaining that our review of an attorney's fees award is "sharply circumscribed" and that a fee award should not be overturned unless it is "clearly wrong" (internal quotation marks omitted)). That standard is informed by the "ringside view" enjoyed by district courts of the conduct of the parties and the quality of the lawyers' work in the case, giving rise to an inherent advantage in formulating appropriate fee awards. *See Carroll v. Wolpoff & Abramson*, 53 F.3d 626, 628 (4th Cir. 1995). And protracted disputes over the finer points of fee calculations promote only "appellate second-guessing of . . . what essentially are factual matters," thereby serving a limited purpose at best. *Id.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983)). In these appeals, especially in light of the "sharply circumscribed" deference we afford the district court, we are satisfied to affirm the Attorney's Fees Order.

A.

As a preliminary matter, because the Objectors contest the district court's application of the lodestar method, we assess whether the court was correct in the first instance that § 1712(b) of CAFA permits use of that method in a settlement that includes

"coupon" relief. Our review of questions of statutory interpretation is de novo and, in these circumstances, we agree with the district court's construction of CAFA's settlement provisions. *See Roe v. Howard*, 917 F.3d 229, 239 (4th Cir. 2019).

We previously observed a split of authority in our *Lumber Liquidators* decision regarding whether CAFA authorizes use of the lodestar method in calculating attorney's fees where "coupon" relief makes up part of a class action settlement. *See* 952 F.3d at 491 n.14. On remand, the district court concluded that the statute does sanction that approach. And the court's determination on that point is well supported by the text of CAFA and decisions of several of our sister courts of appeals.

Although CAFA's settlement provisions may not represent the height of artful drafting, a fair reading of § 1712 reveals that the statute is permissive in nature. By its terms, a district court may choose to "attribute" attorney's fees to a settlement's provision of "coupons" using the percentage-of-recovery method under subsection (a), in which case the fee calculation must be based on the value of any "coupons" actually redeemed by class members — not a defined face value. *See* 28 U.S.C. § 1712(a). On the other hand, subsection (b) provides that if a court does *not* use "a portion of the recovery of the coupons" in determining its attorney's fees award, the award "shall be based upon the amount of time class counsel reasonably expended working on the action" — in other words, the statute approves the lodestar approach. *Id.* § 1712(b)(1). For its part, subsection (c) simply extends the discretion afforded to the district court, providing that if a "coupon" settlement also provides for equitable relief, the court may use a combination of the

percentage-of-recovery and lodestar methods, depending on what portions of the fee award (if any) are "based upon a portion of the recovery of the coupons." *Id.* § 1712(c)(1)-(2).

Only a divided panel of the Ninth Circuit has read CAFA in a contrary fashion, deciding in its 2013 *In re HP Inkjet Printer Litigation* decision that § 1712 only permits use of the lodestar method in a "coupon" settlement to compensate class counsel for obtaining injunctive relief. *See* 716 F.3d 1173, 1181-84 (9th Cir. 2013). Since the *HP Inkjet* decision, however, the courts of appeals have uniformly acknowledged the permissive structure of CAFA's settlement provisions. *See, e.g.*, *In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 707 (7th Cir. 2015) ("[Section] 1712 allows a district court discretion to use the lodestar method to calculate attorney fees even where those fees are intended to compensate class counsel for the coupon relief he or she obtained for the class."); *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 974-75 (8th Cir. 2016) (adopting Seventh Circuit's *Southwest Airlines* interpretation as more consistent with broad discretion afforded to district courts in calculating attorney's fees); *Linneman v. Vita-Mix Corp.*, 970 F.3d 621, 627 (6th Cir. 2020) (CAFA settlement provisions permit use of lodestar method in calculating attorney's fees in "coupon" settlements, without regard for "coupon" redemption rates). We agree with that prevailing interpretation of CAFA and thus approve the district court's determination that § 1712(b) allowed it to apply the lodestar method in this litigation.

B.

1.

a.

The Objectors focus their challenge to the Attorney's Fees Order on the district court's lodestar analysis, specifically with respect to the court's appraisal of the "success obtained" by Class Counsel. Our Court has endorsed a three-part standard for use in calculating attorney's fees under the lodestar approach:

> First, the court must determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974).[[7]] Next, the court must subtract fees for hours spent on unsuccessful claims unrelated to successful ones. Finally, the court should award some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.

*See McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013) (internal citations and quotation marks omitted). The only part of the district court's lodestar's application challenged by the Objectors on appeal is the third *McAfee* factor — the "degree of success" obtained by

[7] The *Johnson* factors include (1) the time and labor expended by counsel; (2) the novelty and difficulty of the questions presented; (3) the skill required to properly perform the legal services rendered; (4) the lawyer's opportunity costs in pressing the instant litigation; (5) the customary fee for similar work; (6) the lawyer's expectations at the outset of the litigation; (7) any time limitations imposed by the client or the circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation, and ability of the lawyer; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between the lawyer and the client; and (12) attorney's fees awards in similar cases. *See Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226 & n.28 (4th Cir. 1978). The district court applied the *Johnson* factors as part of its lodestar analysis, and that application is not at issue in these appeals. *See* Attorney's Fees Order 10-22.

counsel for the plaintiff, which we have described as "the most critical factor" in determining what fee is reasonable. *See Doe v. Chao*, 435 F.3d 492, 505 (4th Cir. 2006) (quoting *Hensley*, 461 U.S. at 440). That step in the analysis inquires whether "the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award," *see Hensley*, 461 U.S. at 434, thereby fitting well with the congressional intent underpinning CAFA — that is, to mandate more careful scrutiny of "coupon" class action settlements so as to ensure that the benefits conferred on the class reasonably support the award of attorney's fees, *see Galloway*, 833 F.3d at 975.

b.

In setting forth its lodestar analysis, the district court determined that "the degree of success obtained for the class, as reflected in the Settlement as a whole, which includes both cash and voucher relief, and when considered in light of the legal and practical realities that needed to be overcome," justified the award of $10.08 million in fees to Class Counsel. *See* Attorney's Fees Order 18. The Objectors assert that the court erred by considering the Lumber Liquidators vouchers as part of the "success obtained" for the plaintiff classes without "looking behind" the vouchers to determine their actual value, based on "coupon" redemption rates — and the Objectors submit that value is $0, insofar as Class Counsel declined to present evidence regarding voucher redemption rates. *See* Br. of Appellants 15-17. According to the Objectors, the court assumed the full $14 million face value of the vouchers in assessing the settlement, in contravention of CAFA's purpose of "target[ing] attorney's fees awards in 'coupon' settlements out of a concern that such

awards [are] regularly inflated by the courts' unreasonable acceptance of the face value of nonmonetary relief." *See Lumber Liquidators*, 952 F.3d at 488.

Our review of a district court's award of attorney's fees is, as stated, for an abuse of discretion. *See Berry*, 807 F.3d at 617. The Objectors, however, seek to downplay the deference that we are obliged to afford a district court's fee calculation, including with respect to the court's scrutiny of the "success obtained" by plaintiff's counsel. *See Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (recognizing that deferential review of a district court's fee award is warranted in view of the court's "close and intimate knowledge of the efforts expended and the value of the services rendered"); *Jones v. Southpeak Interactive Corp.*, 777 F.3d 658, 676 (4th Cir. 2015) ("To be sure, it can be challenging to put a number on 'success.' There is no 'precise rule or formula' to aid the court in determining just how successful a plaintiff may have been." (quoting *Hensley*, 461 U.S. at 436)).[8] In any event, the Objectors' contention that district courts are bound to consider the redemption rates of any "coupons" as part of a lodestar degree-of-success analysis is without merit.

---

[8] The Objectors attempt to conflate the standards of review for questions of statutory interpretation and an award of attorney's fees, suggesting that we should review de novo the district court's application of the CAFA lodestar approach instead of for an abuse of discretion. *See* Reply Br. of Appellants 3-4 ("The district court had no discretion to misapply CAFA."). As previously detailed, our de novo review of the court's CAFA interpretation reveals that the court was correct to apply the lodestar method under § 1712(b). After that point, the court is afforded broad discretion in conducting its lodestar fee calculation.

It is plain that the text of CAFA does not call for consultation of "coupon" redemption rates in undertaking any part of a lodestar analysis. Certainly, § 1712(a) of the statute explicitly requires that, when a court opts to "attribute" — in whole or in part — its award of attorney's fees to "coupon" relief provided in a settlement by using the percentage-of-recovery method, the fee calculation must be based on "the value to class members of the coupons that are redeemed." *See* 28 U.S.C. § 1712(a). The alternative allowance of the lodestar method in § 1712(b), however, contains no such directive.

Moreover, the Objectors overread the decisions that they rely on in support of their position, and those cases also stand apart from this one by virtue of the type of settlement relief involved. In *Linneman v. Vita-Mix Corp.*, the Sixth Circuit examined CAFA's "coupon" settlement provisions and determined that "[Section] 1712 requires a district court to use the redemption rate only when the court calculates fees based on the percentage method; it doesn't prohibit the court from using the lodestar method instead." *See* 970 F.3d at 627. With respect to measuring the "success obtained" in a lodestar analysis, *Linneman* did advise that "coupon" redemption rates will often play "a crucial role in assessing the reasonableness of a fee award" — as in that case, where the class action settlement provided only for vouchers or replacement products, and not any form of a cash award, thereby calling for a closer evaluation of the vouchers' value. *Id.* at 634.[9] The *Linneman* court

[9] The *Linneman* decision further determined that consideration of the redemption rates of the vouchers offered in that case was necessary in assessing the "success obtained" because, after "enhancing" class counsel's attorney's fees by applying a 75% multiplier to its calculated lodestar figure, the district court had declined to make any specific findings about the value of the settlement or to consider evidence of redemption rates that had been (Continued)

went on to acknowledge, however, that "a court might be able to determine the reasonableness of an award — and specifically the 'success obtained' — without reference to the redemption rates." *Id.* Put simply, the nature of the settlement in that situation counseled a more direct assessment of the vouchers by the district court.

The Objectors also direct our attention to the Seventh Circuit's decisions in *Redman v. RadioShack Corp.* and *In re Southwest Airlines Voucher Litigation*, but those cases are similar to *Linneman* in that they considered settlements comprised solely of "coupon" relief, without a cash component. In *Redman*, the court of appeals faulted a magistrate judge and the district court for awarding class action attorney's fees — using a modified percentage-of-recovery method — based on the face value of $10 RadioShack "coupons" instead of "coupon" redemption rates. *See* 768 F.3d 622, 628-29, 634 (7th Cir. 2014). *Redman* did not involve a lodestar fee calculation under CAFA, and therefore did not pass upon whether "coupon" redemption rates should factor into a degree-of-success analysis, despite the Objectors' contrary assertion.

For its part, the *Southwest Airlines* decision assessed whether CAFA permitted the district court to calculate attorney's fees using the lodestar approach in connection with a settlement that provided solely airline drink coupons. *See* 799 F.3d 701, 710 (7th Cir.

presented by the parties. *See* 970 F.3d at 623, 633. Instead, the district court simply determined that the value of the settlement was "very good" — and the Sixth Circuit accordingly ruled that the district court abused its discretion in awarding the "enhanced" fees and remanded for a more judicious analysis. *Id.* at 633. The circumstances at issue in *Linneman* — ranging from the non-cash settlement to the district court's limited analysis — do not present themselves in this case.

2015). After answering that question in the affirmative, the Seventh Circuit only counseled that, in applying the lodestar method, district courts should "bear in mind the potential for abuse posed by coupon settlements and should evaluate critically the claims of success on behalf of a class receiving coupons." *Id.* As in *Redman*, the court did not speak to whether an evaluation of the "success obtained" should take stock of "coupon" redemption rates.

2.

There is accordingly no express requirement — in this circuit or elsewhere — to consider "coupon" redemption rates in assessing the "success obtained" by class counsel as part of a lodestar analysis under CAFA. Rather, a district court applying the lodestar approach must carefully contemplate the makeup of the settlement at hand in deciding whether the calculated lodestar award is reasonable, and that judgment is committed to the court's discretion. *See Hensley*, 461 U.S. at 435-37.

In these circumstances, the district court made a sufficiently perceptive assessment of "the Settlement as a whole" in determining that the "success obtained for the class" justified the reduced lodestar award of $10.08 million in fees. *See* Attorney's Fees Order 18. At the outset of its lodestar analysis, the court indicated that, "while bear[ing] in mind the potential for abuse posed by coupon settlements," it would "award attorney's fees . . . without attributing any value (face value or redemption value) to the coupon portion of the Settlement." *Id.* at 10 (internal quotation marks omitted). Rather than assigning any particular value to the Lumber Liquidators vouchers, the court considered the "coupons" as an alternative avenue for relief supplied by the settlement, in addition to the $22 million cash fund. The court recognized that the vouchers could "subsidize a significant portion

of [the class members'] replacement costs," and the Objectors now focus on that observation as a purported indication that the court did assign the full $14 million face value to the vouchers. *Id.* at 18. We understand the court, however, simply to have acknowledged that — given the structure of the settlement — the vouchers would likely offer more substantial relief to the CARB2/Durability Class members than would the cash payments, and that the vouchers were not the sort of valueless trifle that CAFA primarily concerns itself with. Indeed, no specific monetary valuation is ascribed to the vouchers, expressly or impliedly, anywhere in the court's "success obtained" analysis.

With respect to the remainder of the settlement agreement, the district court appreciated the scope of the settlement notwithstanding the "significant issues [that] existed in both [MDLs] that could have potentially foreclosed all recovery for the classes," as well as the constraints that Lumber Liquidators' precarious financial condition placed on developing a consequential settlement. *See* Attorney's Fees Order 18-19. That is, despite the uphill battle faced in both MDLs in achieving a litigated recovery, Class Counsel negotiated a "positive result" — including a multi-million-dollar cash award — for the classes. *Id.* The court also considered the "success [Class Counsel] achieved in constructing an effective notice program," which "ensure[d] that a broad segment of the population who purchased the flooring products at issue will obtain some relief." *Id.* at 18 n.8. Finally, the court concluded that its positive assessment of the "success obtained" by Class Counsel was underscored by our prior approval of the settlement as being fair, reasonable, and adequate.

We recognize that, to the extent the district court wished to consider the scope of the monetary benefit conferred on the MDL class members, some assessment of the rate at which the vouchers were likely to be redeemed would have been beneficial. Nevertheless, we are confident that the court possessed sufficient information to evaluate "the Settlement as a whole" and whether the value thereof to the class members justified the $10.08 million award of attorney's fees. Clearly, the court had more to take into account than just the presence of the voucher relief — including the $22 million cash fund, a distinct settlement feature lacking in the *Linneman*, *Redman*, and *Southwest Airlines* decisions relied upon by the Objectors. The court granted meaningful consideration to all of the settlement's attributes, not solely the significance of the vouchers, and the Objectors do not contest the strength or merits of those parts of the court's "success obtained" analysis. Furthermore, if the court's prudent estimation of the settlement was not evident from the course of its discussion, the court expressly acknowledged CAFA's direction that it actively guard against "the potential for abuse posed by coupon settlements." *See* Attorney's Fees Order 10 (internal quotation marks omitted).

In brief, the district court's lodestar attorney's fees award is not "clearly wrong." *See Berry*, 807 F.3d at 617. Especially in consideration of the court's intimate familiarity with the litigation that proceeded before it and its unique advantage in determining what fee award is reasonable, we approve of the court's lodestar analysis and its assessment of the "success obtained" by Class Counsel.

C.

1.

The Objectors also argue that, even if the district court did not err in its lodestar application, the court's $10.08 million attorney's fees award is excessive and violative of CAFA insofar as it represents 45.8% of the $22 million cash fund and exceeds the $9.9 million in cash remaining for distribution to the MDL class members.[10] We previously considered and rejected substantially this very position, however. In the Objectors' first appeal, they maintained that the settlement was unfair and inadequate because it allowed for the $10.08 million award, thereby permitting Class Counsel to "secure[] much of the cash from the settlement for themselves." *See Lumber Liquidators*, 952 F.3d at 486. We explained that while the proportion of fees relative to the amount of the cash fund gave us "some pause," the amount alone "does not mandate vacatur of the district court's decision to approve the settlement" given our review of that decision for an abuse of discretion. *Id.* Indeed, we observed that "if the district court were to award the same amount of attorney's fees after applying CAFA's 'coupon' settlement provisions, that would not render the Settlement Approval Order infirm in light of our deferential standard for reviewing such decisions." *Id.* That same "deferential standard," of course, now guides our review of the district court's independent Order awarding the same $10.08 million in attorney's fees.

[10] The Objectors calculate the $9.9 million figure by subtracting the district court's award of $10.08 million in fees, $797,397.45 in costs and expenses, $1,194,500 in notice and administration costs, and $60,000 in service awards from the $22 million balance.

Regardless, the Objectors fail in these proceedings to demonstrate that the district court's award of fees is unreasonable or runs afoul of CAFA in any respect. The Objectors assert that the court should have conducted a percentage-of-recovery "cross-check" to ensure the reasonableness of its lodestar award, as though the $22 million cash fund constituted the entirety of the settlement. CAFA, however, does not require such a practice. *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) ("[W]e do not require courts employing the lodestar method to perform a 'crosscheck' using the percentage method. This would make little logical sense, because the lodestar method yields a fee that is presumptively reasonable."). According to the Objectors, the Lumber Liquidators vouchers have a "$0 coupon value" and therefore must be disregarded as part of the settlement. *See* Br. of Appellants 22. The Objectors assert that by failing to ignore the vouchers in that respect, the district court permitted Class Counsel to "reap the lion's share of the [settlement] benefits while leaving the class members with little reward." *Id.* at 23 (quoting *Lumber Liquidators*, 952 F.3d at 488 (internal quotation marks omitted)). But the Objectors are wrong to compare the attorney's fees to the $22 million cash fund in isolation; it certainly is not the case that, by classifying the vouchers as "coupons," our prior *Lumber Liquidators* opinion severed the vouchers from the settlement entirely. To the contrary, the vouchers remain a fully valuable part of the underlying settlement agreement, and the district court's award of fees does not leave the class members with only "little reward." Simply put, the Objectors' claim that the awarded fees are excessive pretends that a sizable portion of the settlement negotiated by Class Counsel does not exist.

Once more, we discern no error in the district court's application of the CAFA "coupon" settlement provisions in this case. In view of the court's inherent expertise in determining the sum of attorney's fees that is appropriate, we are satisfied that the Attorney's Fees Order does not reflect an abuse of discretion.

2.

Finally, the Objectors extend their prior argument by maintaining that the district court erred in awarding $10.08 million in attorney's fees because that amount is more than 33.33% of $22 million (as noted, it is instead 45.8% of that figure). More specifically, the Objectors again assert that, following our classification of the Lumber Liquidators vouchers as "coupons" within the meaning of CAFA, the Settlement Fund — defined by the settlement agreement as including "a total of $22 million dollars in cash and $14 million dollars in Store-credit Vouchers" — can be considered only to consist of the $22 million cash fund. *See* J.A. 407.14. Because the settlement agreement limits an award of attorney's fees to 33.33% of the Settlement Fund, *see id.* at 407.33, the settlement is said to now authorize a maximum fee award of $7.3 million (that is, 33.33% of $22 million).

Neither party disputes the proposition that the settlement agreement is a binding contract subject to basic principles of contract interpretation. The Objectors' arithmetic argument of last resort depends on an understanding that our earlier *Lumber Liquidators* decision "blue penciled" the settlement agreement to redefine the term "Settlement Fund," such that it no longer includes "$14 million dollars in Store-credit Vouchers." But our *Lumber Liquidators* opinion did no such thing — nor could it have, even if we desired to refashion the settlement in some way. *See Officers for Just. v. Serv. Comm'n of City &*

*Cty. of S.F.*, 688 F.2d 615, 630 (9th Cir. 1982) ("Neither the district court nor this court is empowered to rewrite the settlement agreed upon by the parties."). The text of the settlement agreement was — and remains — plain and unambiguous: attorney's fees may not exceed 33.33% of the sum of $22 million and $14 million, or $36 million in total. The district court's award of $10.08 million in fees constitutes 28% of the $36 million Settlement Fund, as it has since the court first awarded that amount in 2018. Accordingly, we reemphasize that the Objectors are unable to demonstrate any reversible error or abuse of discretion on the district court's part in connection with its Attorney's Fees Order.

III.

Pursuant to the foregoing, we reject each of the Objectors' appellate contentions and affirm the district court's Attorney's Fees Order.

*AFFIRMED*